**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | |
|---|---|
| SOUTH CAROLINA FREEDOM CAUCUS, <br><br> *Plaintiff*, <br><br> v. <br><br> WALLACE H. JORDAN, JR., J. DAVID WEEKS, BETH E. BERNSTEIN, PAULA RAWL CALHOON, MICAJAH P. CASKEY, IV, NEAL A. COLLINS, JOHN RICHARD C. KING, ROBBY ROBBINS, J. TODD RUTHERFORD, AND LEONIDAS E. STAVRINAKIS, in their official capacities as members of the HOUSE OF REPRESENTATIVES LEGISLATIVE ETHICS COMMITTEE, <br><br> *Defendants*. | Civil Action No. 3:23-cv-00795-CMC <br><br><br> **DECLARATION OF CHRISTOPHER MILLS** |

I, Christopher Mills, hereby declare as follows:

1.  I am an attorney at Spero Law LLC and represent Plaintiff in the above case. I am over the age of 21 and am capable of making this unsworn declaration pursuant to 28 U.S.C. § 1746. I have not been convicted of a felony or crime involving dishonesty, and the facts contained herein are within my personal knowledge.

2.  Attached as **Exhibit 1** is a true and correct copy of the South Carolina House of Representatives Ethics Committee's Advisory Opinion 93-30, as obtained from the Committee's website (https://www.scstatehouse.gov/CommitteeInfo/houseethics.php) on March 6, 2023.

3.  Attached as **Exhibit 2** is a true and correct copy of the South Carolina House of Representatives Ethics Committee's Advisory Opinion 2006-1 (June 16, 2006), as obtained from the Committee's website (https://www.scstatehouse.gov/CommitteeInfo/houseethics.php) on March 6, 2023.

4. Attached as **Exhibit 3** is a true and correct copy of the South Carolina Senate Ethics Committee's Advisory Opinion 2016-1 (Feb. 5, 2016), as obtained from the Committee's website (https://www.scstatehouse.gov/CommitteeInfo/SenateEthics Committee/AdvisoryOpinions.php) on March 6, 2023.

5. Attached as **Exhibit 4** is a true and correct copy of the South Carolina House of Representatives Ethics Committee's Advisory Opinion 2017-13 (August 14, 2017), as obtained from the Committee's website (https://www.scstatehouse.gov/ CommitteeInfo/houseethics.php) on March 6, 2023.

6. Attached as **Exhibit 5** is a true and correct copy of an article published on March 6, 2023, by Defendant Representative Micajah P. Caskey, on FITSNews entitled "South Carolina's 'Freedom Caucus' Tilting at Windmills," as obtained from https://www.fitsnews.com/2023/03/06/guest-column-south-carolinas-freedom-caucus-tilting-at-windmills/ on March 9, 2023. A permanent version can be found at https://perma.cc/X57Q-YZPC.

7. Attached as **Exhibit 6** is a true and correct copy of a tweet from Defendant Representative Micajah P. Caskey's Verified Twitter account posted on March 6, 2023, confirming authorship of the article attached as Exhibit 5. The tweet can be accessed at https://twitter.com/MicahCaskey/status/1632867309868990464.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 15, 2023.

_/s/ Christopher Mills_
Christopher Mills

**EXHIBIT 1**

Opinion 93-30

Pursuant to House Rule 4.16(a)(2), the House Legislative Ethics Committee has enclosed for your information a brief synopsis of this opinion.

Issue: Can the members of the House Freshman Caucus accept an invitation to a breakfast sponsored by a college affiliated group?

If the group is not a lobbyist or lobbyist's principal, then legislators may be invited to attend. If the members are invited because of their elective office, then Section 8-13-710 states that the members must report any items received on their Statement of Economic Interests if the value is over $25 per day or $200 per year in the aggregate.

If the group is a lobbyist's principal, then only recognized groups of members, pursuant to Section 2-17-90, may be invited. For purposes of the 1991 Ethics Act, the "Freshman Caucus" is not a recognized legislative caucus. That does not mean that the freshman House members cannot organize and meet; it only means that the group is not included in the list of identifiable groups which may be invited to functions sponsored by lobbyist's principals. Section 2-17-90 of the S.C. Code allows for lobbyists to entertain legislative members when invited as part of the entire membership of either or both houses, a committee, subcommittee, county legislative delegation, or legislative caucus. Section 2-17-10(11) recognizes as a "legislative caucus" only those caucuses based on racial or ethnic affinity, gender, or political party. Therefore, if the group is a lobbyist's principal, the freshman caucus members would not be allowed to accept the invitation under Section 2-17-90.

**EXHIBIT 2**

**OPINION 2006-1**

TO:          **The Honorable Robert William Harrell, Jr.**
             **Speaker of the House of Representatives**

FROM:        **J. Roland Smith**
             **Chairman, House Legislative Ethics Committee**

DATE:        **JUNE 16, 2006**

RE:          **OPINION 2006-1**

**ISSUE**

It has been brought to the attention of the House Legislative Ethics Committee that there may be some confusion surrounding the interpretation of South Carolina Code Section 8-13-1300(7) and (31), which has been referred to as the "45-Day Rule". The "45-Day Rule" provides that certain communications made within the final 45 days before an election must be reported as "expenditures" but are not "contributions" and, therefore, are not subject to the contribution limitations of the Ethics Act. Those communications are defined in South Carolina Code Section 8-13-1300(31)(c) and are referred to as "(31)(c) communications" throughout this Opinion.

The Committee held a public meeting on June 1, 2006 and issued the following Formal Advisory Opinion. In this meeting the Committee considered the following questions:

1.  What are (31)(c) communications as defined by 8-13-1300(31)(c)?
2.  Are there any restrictions on how much a legislative caucus committee can spend on (31)(c) communications?
3.  Where should a legislative caucus committee deposit funds to be used on (31)(c) communications? Must those funds be reported?
4.  Must a legislative caucus committee report expenditures on (31)(c) communications?

**SUMMARY**

**Essentially, if a House legislative caucus committee makes a communication within 45 days of an election that promotes or supports a candidate or attacks or opposes a candidate, regardless of whether the communication expressly advocates a vote for or against a candidate, the committee must deposit the funds used to pay for that communication in a separate account and must report those funds as expenditures. A House legislative caucus committee does not have to report as contributions the funds it receives that are used to pay for such communications and there is no limit on how much a House legislative caucus committee can spend on such communications.**

**DISCUSSION**

(31)(c) communications are defined by South Carolina Code Section 8-13-1300(31)(c). That Section provides:

> (31) "Influence the outcome of an elective office" means:
> (c) any communication made, **not more than forty-five days before an election,** which promotes or supports a candidate or attacks or opposes a candidate, regardless of whether

the communication expressly advocates a vote for or against a candidate. For purposes of this paragraph, "communication" means (i) any paid advertisement or purchased program time broadcast over television or radio; (ii) any paid message conveyed through telephone banks, direct mail, or electronic mail; or (iii) any paid advertisement that costs more than five thousand dollars that is conveyed through a communication medium other than those set forth in subsections (i) or (ii) of this paragraph. "Communication" does not include news, commentary, or editorial programming or article, or communication to an organization's own members.

The statute addresses only those communications made within 45 days of an election. During those critical days before an election, the statute expands the definition of communications that are characterized as influencing the outcome of an elective office to include those (31)(c) communications. **(31)(c) communications, by definition, are only made within the 45 days before an election**.

South Carolina Code Section 8-13-1300(7) defines the term "contribution". That Section provides in part:

"Contribution" does not include . . . (b) a gift, subscription, loan, guarantee upon which collection is made, forgiveness of a loan, an advance, in-kind contribution or expenditure, a deposit of money, or anything of value made to a committee, other than a candidate committee, and is used to pay for communications made not more than forty-five days before the election to influence the outcome of an elective office as defined in Section 8-13-1300(31)(c). These funds must be deposited in an account separate from a campaign account as required in Section 8-13-1312.

8-13-1300(7) exempts from the definition of "contribution" anything of value made to a committee used to pay for communications defined in 8-13-1300(31)(c) made within 45 days of an election. This language makes it clear that even though a communication made within 45 days of an election falls within the definition of (31)(c) as influencing the outcome of an elective office, that communication is not a contribution.

Because (31)(c) communications are specifically exempted from the definition of contribution, legislative caucus committees are not restricted by the $5,000 contribution limit found in South Carolina Code Section 8-13-1316. Therefore, **a legislative caucus committee may spend any amount on (31)(c) communications within 45 days of an election.**

Legislative caucus committees must **deposit funds used for (31)(c) communications in a separate account** pursuant to the last sentence of 8-13-1300(7). However, they do **NOT have to report the receipt of funds to be used for (31)(c) communications within 45 days of an election.** 8-13-1308(G) provides in part:

Notwithstanding any other reporting requirements in this chapter, a political party, legislative caucus committee, and a party committee must file a certified campaign report upon the receipt of anything of value which totals in the aggregate five hundred dollars or more. For purposes of this section, "anything of value" includes *contributions* received which may be used for the payment of operation expenses of a political party, legislative caucus committee, or a party committee.

This section requires legislative caucus committees to report all contributions over $500, whether used for operating expenses or campaign purposes. **Because funds to be used for (31)(c) communications within 45 days of an election are not "contributions", they do not have to be reported like operating funds and campaign funds.**

Funds used to pay for (31)(c) communications within 45 days of an election are "expenditures" as defined by the Ethics Act. South Carolina Code Section 8-13-1300(12) defines "expenditure" as a purchase, payment, loan, forgiveness of a loan, an advance, in-kind contribution or expenditure, a deposit, transfer of funds, gift of money, or anything of value for any purpose. Therefore, a **legislative caucus committee must report money spent on (31)(c) communications.**

Legislative caucus committees making expenditures on (31)(c) communications within 45 days of an election must maintain an account of their expenditures; the name and address of each person to whom an expenditure is made including the date, amount, purpose, and beneficiary of the expenditure; and any proof of payment for each expenditure. See 8-13-1302. Pursuant to Section 8-13-1308(D)[1], legislative caucus committees making (31)(c) communications within 45 days of an election **must file a preelection report showing expenditures to or by the committee for the period ending twenty days before the election.**
[2]

Legislative caucus committees making (31)(c) communications within 45 days of an election are required to immediately **file a campaign report upon incurring expenditures in excess of $10,000 in the case of a candidate for statewide office and $2,000 in the case of a candidate for any other office** within the calendar quarter in which the election is conducted or twenty days before the election (whichever period is greater). The expenditure does not have to be made, only incurred, to trigger this section's reporting requirements. See 8-13-1308(D)(2). Certified campaign reports must contain the total expenditures made by or on behalf of the committee and the name and address of each person to whom an expenditure (from campaign funds) is made including the date, amount, purpose, and beneficiary of the expenditure.

Legislative caucus committees making (31)(c) communications within 45 days of an election must **identify the caucus in the communication.** 8-13-1354 requires committees or persons making expenditures on communications "supporting or opposing a public official, a candidate, or a ballot measure" to identify their name and address. By definition, a (31)(c) communication is a communication made within 45 days of an election "which promotes or supports a candidate or attacks or opposes a candidate."

---

[1] Section 8-13-1308(d)(2) provides:

(2) A committee immediately shall file a campaign report listing expenditures if it makes an independent expenditure or an **incurred expenditure within the calendar quarter in which the election is conducted or twenty days before the election,** whichever period of time is greater, in excess of:

(a) ten thousand dollars in the case of a candidate for statewide office; or

(b) two thousand dollars in the case of a candidate for any other office.

[2] Legislative caucus committees do **not have to file an initial certified campaign report upon spending over $500 on (31)(c) communications within 45 days before an election.** 8-13-1308(A) states: "Upon the receipt or expenditure of campaign contributions or the making of independent expenditures totaling an accumulated aggregate of five hundred dollars or more, a candidate or committee required to file a statement of organization pursuant to Section 8-13-1304(A) must file an initial certified campaign report within ten days of these initial receipts or expenditures." Because (31)(c) communications are not considered contributions, and because legislative caucus committees making expenditures based upon party affiliation do not qualify as independent expenditures, this requirement is not applicable.

**EXHIBIT 3**

# Senate Ethics Committee



**LUKE A. RANKIN**
CHAIRMAN

SUITE 205
GRESSETTE OFFICE BUILDING
TELEPHONE: (803) 212-6410
FAX: (803) 212-6499

**LEONARD P. ODOM**
RESEARCH DIRECTOR

**LAURIE TRAYWICK**
ADMINISTRATIVE ASSISTANT

THE SENATE OF SOUTH CAROLINA
P. O. BOX 142
COLUMBIA, SOUTH CAROLINA 29202

## ADVISORY OPINION 2016-1

**TO:**     Members of the South Carolina Senate

**FROM:**   Luke A. Rankin, Chairman

**RE:**     Rules Governing Legislative Special Interest Caucuses

**DATE:**   February 5, 2016

Recently, some Senate Members have expressed an interest in joining and participating in one or more newly-formed legislative special interest caucuses within the South Carolina Senate. While legislative special interest caucuses are permissible in the Senate, given the numerous statutory restrictions imposed thereon, I find it necessary to make you aware of the governing rules to ensure compliance with South Carolina's ethics laws.

The term "legislative special interest caucus" is defined in S.C. Code Ann. Section 2-17-10(21) (Supp. 2014) as follows:

> 'Legislative special interest caucus' means two or more legislators who seek to be affiliated based upon a special interest. <u>Under no circumstances may a legislative special interest caucus engage in any activity that would influence the outcome of an election or ballot measure.</u> Each legislative special interest caucus must register with the Clerk's Office of the Senate . . . in a manner mandated by the Clerk's Office. However, each legislative special interest caucus must provide, and the Clerk's Office must maintain a record of:
>
> (a) the name and purpose of the caucus;
> (b) the names of all caucus members; and
> (c) the date of creation, and dissolution, if applicable.
>
> The Clerk's Office must maintain these records for at least four years following the dissolution of the caucus. A legislative special interest caucus may include, but is not limited to, a representation of sportsmen and women desiring to enhance and protect hunting, fishing, and shooting sports.

(Emphasis added)

S.C. Code Ann. Section 8-13-1333(C)(1) (Supp. 2014) further states:

> A legislative special interest caucus must <u>not</u> solicit contributions as defined in Section 8-13-100(9), however, it may solicit funds from the general public for the limited purpose of defraying mailing expenses, including cost of materials and postage, and for members of the legislative special interest caucus to attend regional and national conferences. Legislative special interest caucus members may attend a regional or national conference <u>only if</u> the conference is <u>exclusively comprised</u> of legislative special interest caucus counterparts <u>and</u> convenes for the purpose of interacting and exchanging ideas among caucus members <u>and</u> the conference is sponsored by a national organization with which the legislative special interest caucus is affiliated. Attendance at any conference is prohibited if the conference is sponsored by any lobbying group or extends an invitation to persons other than legislators. <u>Under no circumstances may a legislative special interest caucus accept funds from a lobbyist</u>. Each special interest caucus must submit a financial statement to the [Senate Ethics Committee] by January first and July first of each year showing the total amount of funds received and total amount of funds paid out. It must also maintain the following records, for not less than four years, which must be available to the [Senate Ethics Committee] for inspection:
>
> (a) the total amount of funds received by the legislative special interest caucus;
> (b) the name and address of each person or entity making a donation and the amount and date of receipt of each donation;
> (c) all receipted bills, canceled checks, or other proof of payment for any expenses paid by the legislative special interest caucus.

(Emphasis added)  Additionally, Section 1333(C)(2) states that a legislative special interest caucus "may not accept a gift, loan, or anything of value, except for funds permitted in subsection(C)(1) above."

These statutes specifically and expressly limit the activities of a legislative special interest caucus and its members.  Participating in activities that influence the outcome of an election or ballot measure, such as soliciting or making campaign contributions, is prohibited.  Members of a legislative special interest caucus are permitted to attend a regional or national conference, but <u>only if</u> the following conditions are met: (1) the conference is <u>exclusively</u> comprised of legislative special interest caucus counterparts; (2) the members convene for the purpose of interacting and exchanging ideas among caucus members; (3) the conference is sponsored by a national

organization with which the legislative special interest caucus is affiliated; (4) the conference is not sponsored by any lobbying group; and (5) invitations to the conference are extended only to legislators. Attendance is prohibited if the conference is sponsored by any lobbyists' principal or an invitation is extended to persons other than legislators.  Other than accepting funds for the limited purpose of covering mailing materials/postage and attending a qualified national or regional conference, a legislative special interest caucus is prohibited from accepting gifts, loans, or anything of value.  Under no circumstances may a legislative special interest caucus accept funds from a lobbyist.

If you decide to join and participate in a legislative special interest caucus, please be mindful of these rules to avoid a potential violation of South Carolina's ethics laws.  Violations of these rules are subject to the penalty provisions of Senate Rules 44 and 44.1 and S.C. Code Ann. Section 8-13-1520 (Supp. 2014).

**EXHIBIT 4**

J. David Weeks
Vice-Chairman

Beth E. Bernstein
Heather Ammons Crawford
F. Gregory "Greg" Delleney, Jr.
John Richard C. King

Jane O. Shuler
Counsel

Michael A. Pitts
Chairman

Chandra E. Dillard
Secretary

Dennis Carroll Moss
G. Murrell Smith, Jr.
Leonidas E. "Leon" Stavrinakis

Lynne Short
Executive Assistant

## House Legislative Ethics Committee



P.O. BOX 11867
519 BLATT BUILDING
COLUMBIA, SC 29211
TELEPHONE: 803-734-3114
FAX: 803-734-8795

## ADVISORY OPINION 2017 - 13

The House Legislative Ethics Committee (HEC) received a request from a Member for an advisory opinion. The Member questioned whether a legislative special interest caucus (LSIC) is considered a "legislative caucus" for purposes of the exemption which allows a lobbyist's principal to provide lodging, transportation, entertainment, food, meals, beverages, or an invitation to a function to groups, such as a LSIC pursuant to S.C. Code Ann. § 2-17-90(A)(1). The Member further questioned whether a church or a 501(c)(3) organization could invite the LSIC for a meal in their Fellowship hall.

Pursuant to House Rule 4.16C.(4), the Committee renders the following advisory opinion.

### DISCUSSION

S.C. Code Ann. § 2-17-90(A)(1) provides:

(A) Except as otherwise provided under Section 2-17-100, no lobbyist's principal may offer, solicit, facilitate, or provide to a public official or public employee, and no public official or public employee may accept lodging, transportation, entertainment, food, meals, beverages, or an invitation to a function paid for by a lobbyist's principal, except for:

(1) as to members of the General Assembly, a function to which a member of the General Assembly is invited if the entire membership of the House, the Senate, or the General Assembly is invited, or one of the committees, subcommittees, joint committees, legislative caucuses, or their committees or subcommittees, or county legislative delegations of the General Assembly of which the legislator is a member is invited.

S.C. Code Ann. § 2-17-90(A)(1) (emphasis added). Further, S.C. Code Ann. § 2-17-10(11)(a)-(c), defines a "legislative caucus" as:

(a) a committee of either house of the General Assembly controlled by the caucus of a political party or a caucus based upon racial or ethnic affinity, or gender;

(b) a party or group of either house of the General Assembly based upon racial or ethnic affinity, or gender. However, each house may establish only one committee for racial, ethnic, or gender-based affinity.

(c) "legislative caucus" does not include a legislative special interest caucus as defined in Section 2-17-10(21).

S.C. Code Ann. § 2-17-10(11)(a)-(c), (emphasis added). Thus, a LSIC is not included in the groups denoted pursuant to Section 2-17-90(A)(1) who are permitted to receive invitations from a lobbyist principal. Accordingly, the LSIC must not accept an invitation from a lobbyist principal.

Moreover, the requirements for a LSIC are outlined in S.C. Code Ann. § 2-17-10(21) as follows:

'Legislative special interest caucus' means two or more legislators who seek to be affiliated based upon a special interest. Under no circumstances may a legislative special interest caucus engage in any activity that would influence the outcome of an election or ballot measure. Each legislative special interest caucus must register with the Clerk's Office of the Senate or the House of Representatives in a manner mandated by the Clerk's Office. However, each legislative special interest caucus must provide, and the Clerk's Office must maintain a record of:

(a) the name and purpose of the caucus;

(b) the names of all caucus members; and

(c) the date of creation, and dissolution, if applicable.

The Clerk's Office must maintain these records for at least four years following the dissolution of the caucus. A legislative special interest caucus may include, but is not limited to, a representation of sportsmen and women desiring to enhance and protect hunting, fishing, and shooting sports.

S.C. Code Ann. § 2-17-10(21) (emphasis added). Recently, the HEC verified with the House Clerk's office that there are several registered LSICs, including but not limited to, The S.C. Sportsman's Caucus[1] and The Family Caucus. While the statute provides registration requirements for a LSIC, there is not any language in the statute which provides the House Clerk's office with enforcement authority regarding these requirements for a LSIC.

Additional conditions for a LSIC are provided for in Section 8-13-1333(C)(1)-(2):

(C)(1) A legislative special interest must not solicit contributions as defined in Section 8-13-100(9); however, it may solicit funds from the general public for the limited purpose of defraying mailing expenses, including cost of materials and postage, and for members of the legislative special interest caucus to attend regional and national conferences. Legislative special interest caucus members may attend a regional or national conference

---

[1] In June 2017, The South Carolina Sportsmen's Caucus held a Shooting Classic event. It is the HEC's understanding that the Congressional Sportsmen's Foundation, a Section 501(c)(3) entity, was responsible for payment of the meals and any costs related to the afternoon shoot. No lobbyist principals sponsored the event.

only if the conference is exclusively comprised of legislative special interest caucus counterparts and convenes for the purpose of interacting and exchanging ideas among caucus members and the conference is sponsored by a national organization with which the legislative special interest caucus is affiliated. Attendance at any conference is prohibited if the conference is sponsored by any lobbying group or extends an invitation to persons other than legislators. Under no circumstances may a legislative special interest caucus accept funds from a lobbyist. Each special interest caucus must submit a financial statement to the appropriate supervisory office by January first and July first of each year showing the total amount of funds received and total amount of funds paid out. It must also maintain the following records, for not less than four years, which must be available to the appropriate advisory office for inspection:

(a) the total amount of funds received by the legislative special interest caucus;

(b) the name and address of each person or entity making a donation and the amount and date of receipt of each donation;

(c) all receipted bills, canceled checks, or other proofs of payment for any expenses paid by the legislative special interest caucus.

(2) A legislative special interest caucus may not accept a gift, loan, or anything of value, except for funds permitted in subsection (C)(1) above.

S.C. Code Ann. § 8-13-1333(C)(1)-(2) (emphasis added). Thus, there are detailed requirements regarding how a contribution can be used by a LSIC but no funds, including invitations, may be accepted from a lobbyist or lobbyist principal.

A recent Senate Ethics Advisory Opinion, 2016-1, provides additional guidance on this issue. Specifically, the Senate Ethics Committee found that "these statutes [S.C. Code Ann. §§ 2-17-10(21) and 8-13-1333(C)(1)] specifically and expressly limit the activities of a legislative special interest caucus and its members." The opinion explained:

members of a legislative special interest caucus are permitted to attend a regional or national conference, but only if the following conditions are met:

(1) the conference is exclusively comprised of legislative special interest caucus counterparts;

(2) the members convene for the purpose of interacting and exchanging ideas among caucus members;

(3) the conference is sponsored by a national organization with which the legislative special interest caucus is affiliated;

(4) the conference is not sponsored by any lobbying group; and

(5) invitations to the conference are extended only to legislators.

Senate Ethics Advisory Opinion, 2016-1, page 2. The Senate Ethics Advisory Opinion 2012-1 concluded: "under no circumstances may a legislative special interest caucus accept funds from a lobbyist." (emphasis added).

Again, it is the Committee's understanding that a LSIC is not considered a "legislative caucus" for purposes of qualifying under the exemption for lobbyist gifts for invitations to groups and caucuses under S.C. Code Ann. § 2-17-90(A)(1). Specifically, the clear language of § 2-17-

10(11)(c) provides that a legislative caucus does not include a legislative special interest caucus as defined in § 2-17-10(21).

Finally, the Member questions whether the LSIC may accept an invitation from a Section 501(C)(3) entity[2]. The Committee finds House Ethics Committee Advisory Opinion 92-48 instructive regarding this question. Specifically, House Ethics Committee Advisory Opinion 92-48 stated:

> Question: Can a member accept a gift from an organization that does not retain a lobbyist nor does it belong to an association which employs a lobbyist?
> Answer: There are no restrictions placed on a public official accepting a gift from an organization not involved in lobbying. If the gift is because of the member's elected position, then Section 8-13-710 (B) requires it to be reported, if it is in excess of $25 per day or $200 per year.

House Ethics Committee Advisory Opinion 92-48; see also House Ethics Committee Advisory Opinion No. 92-2. Thus, the Committee finds that a Member of the LSIC may accept an invitation from a Section 501(C)(3) entity which is not a registered lobbyist principal but the Member must report this gift on his or her Statement of Economic Interests if the fair market value of the event is $25.00 or more and if the donor would not have given the gift but for the Member's position. See Section 8-13-710(B).

## CONCLUSION

In summary, a Member of a LSIC may not accept an invitation to a function paid for by a lobbyist's principal because a legislative special interest caucus is not considered a legislative caucus and, therefore, is not entitled to the exemption under § 2-17-90. The LSIC may accept an invitation from a Section 501(C)(3) entity that it is not a registered lobbyist principal. However, the Member who belongs to a LSIC would need to report any gift received reasonably valued at $25.00 or more on his or her Statement of Economics Interests if the donor would not have given the gift but for the Member's position.

**Adopted August 14, 2017.**

---

[2] Organizations described in the IRS Code as 501(C) (3) are known as charitable organizations. See https://www.irs.gov/charities-non-profits/charitable-organizations/exemption-requirements-section-501-c-3-organizations.

**EXHIBIT 5**

⟟ Sign In / Subscribe



Murdaughs    Cheer Inc.    Crime & Courts    Politics ⌄    SC    Sports    Biz
Podcasts    US & World

**POLITICS**    **STATE HOUSE**

## Guest Column: South Carolina's 'Freedom Caucus' Tilting At Windmills

**Micah Caskey:** "The self-proclaimed constitutionalists are searching for an activist judge who will re-write our laws."

by FITSForum    🕑 March 6, 2023    💬 5

SHARE    👍 0    



> Listen to this article now
>
> 00:00                                    1.0x

**L**ast week, the South Carolina House "Freedom Caucus" filed a lawsuit against fellow Republicans on the S.C. House Ethics Committee in federal court. You could be forgiven for not noticing a gesticulation ripped from the pages of its Washington, D.C. playbook that seems to call for increasingly desperate attention-seeking stunts, but in this litigation, they've reached a new low that deserves condemnation.

Under our state's campaign finance laws, only certain groups are permitted to fundraise and campaign in coordination with a candidate for elected office. The only groups presently allowed to do that are called caucuses ([technically](#), a "legislative caucus committee"). For members of the S.C. House, the specific caucuses allowed to do it are the Republican Caucus, the Democratic Caucus, the Legislative Black Caucus, and the Women's Caucus.

You can read about it for yourself [here](#).

Why only those groups? I don't know, frankly. I wasn't in the legislature when those laws were passed. Should other groups/ caucuses be allowed to act just as those four caucuses are? I think that's a very worthy question. If caucuses clear some (yet-to-be-defined) threshold, should they then be allowed to fundraise and campaign in coordination with candidates? I can certainly see strong arguments for that.

*＊＊＊＊＊*



SUBSCRIBE . . .

*＊＊＊＊＊*

I've never heard the leaders of the Sportsmen's Caucus, the Family Caucus, the Freshman Caucus, the Military Caucus – or any other caucus – ask for what these gadflies are now demanding from a federal judge, but perhaps they should have that ability, perhaps not. I'm genuinely open to a discussion of new legislation on this front … even if it is only a small group of Radicals asking to change things for themselves.

However, instead of going about the legislative process to address this in state law (or even filing a bill!), the local franchisees of the national **Freedom Caucus Network** gave up on trying to do their job. They won't or can't legislate, so they chose to litigate. Think about that irony: The self-proclaimed constitutionalists have run away from the people's chamber in search of an activist judge who will re-write our laws.

And, as is their custom, they have employed their professional P.R. people to sell this [story](#) to the public. Their marketing campaign relies on career political operatives like FITSNews' author **Mark Powell** (who proudly touts his job at Freedom Caucuser Rep. **R.J. May III**'s Ivory Tusk Consulting on his Twitter [bio](#)) spin a tale of David taking on Goliath. The yarn here, of course, is being sold as a virtuous fight for constitutional rights. And, rather than asking questions, this website extends its brand name to the regurgitation of those disingenuous talking points. For shame.

The shame belongs on this website for helping to pull the wool over the eyes of South Carolinians. So, I urge readers to remember that this "news outlet" isn't interested in helping them sort the wheat from the chaff. This website is more TMZ, less Wall Street Journal.

*(Click to view)*



The South Carolina Statehouse (Travis Bell/STATEHOUSE CAROLINA)

Because this isn't David versus Goliath — this is Don Quixote tilting at windmills and telling townspeople that he's out there slaying dragons. The guys and gals of the Freedom Caucus abdicated their responsibilities to even *try* to craft a legislative solution. They saw a publicity stunt in the making and went all-in to sue their fellow Republicans. Unfortunately, this website – to its great discredit – has played a role in covering-up their dereliction of duty.

They'll fall over themselves to tell you about how they actually sued democrats, too! And that they sued the Ethics Committee because they *had to*! But watch how they dodge questions about why they didn't even file a bill on this. They had the time to file bills to nullify federal law and require the state to use gold as a currency, but not to address this? Of course they did. They obviously had time to draft and file a lawsuit in federal court.

So when their crocodile tears start flowing and they pivot to cast the blame on the big ole, meanie RINO-establishment, or whatever, don't forget that they didn't even try to solve this the way our Founding Fathers intended. Their excuse-ism is all about distracting you from their real goal: To make it easier for them to funnel out-of-state money into their campaigns. Their puppet masters want it to be even easier to infect our state with D.C.-style politics.

Caveat emptor, folks.

The Freedom Caucus isn't wrong about everything.  In fact, I find that I generally agree with their ideas (even if they're all poached from other places). Individually, I actually like most of the people in that group. But, collectively, I see its petulant approach as corrosive to the goal of actually enacting conservative legislation. My beef with them is that their tactics are unserious and myopic. And this episode is yet another example of it. Republicans deserve better. South Carolina deserves better.

Simply put, Republicans shouldn't be asking federal judges to legislate from the bench. Nobody committed to the conservative project should celebrate those who do.

Lastly, I extend my appreciation to **Will Folks**' invitation to use this website's "open mic policy" to highlight the absurdity of my colleagues' latest charade. These days I'm increasingly disheartened and frustrated by conservatives willing to abandon any commitment to rigorous analysis of ideas. Too many people are happy to extend a pass to anything that's wrapped-up in anti-establishment rhetoric. It's way past time for people to call out dumbassery for what it is.

Dum spiro spero.

*****

## ABOUT THE AUTHOR . . .



(Travis Bell/ STATEHOUSE CAROLINA)

[Micah Caskey](#) represents S.C. House District 89 in the Palmetto State's General Assembly.

*****

## WANNA SOUND OFF?

*Got something you'd like to say in response to one of our articles? Or an issue you'd like to address proactively? We have an open microphone policy here at FITSNews! Submit your letter to the editor (or guest column) via email* [HERE](#). *Got a tip for a story?* [CLICK HERE](#). *Got a technical question or a glitch to report?* [CLICK HERE](#).

*****

## SIGN UP . . .



*****

SHARE     0

## RELATED POSTS

**EXHIBIT 6**

← **Tweet**



**Micah Caskey** 🇺🇸 ✔
@MicahCaskey

···

My thoughts on Republicans suing Republicans instead of legislating below.

(Spoiler alert: I'm not impressed.)

> 🔥 **FITSNews** ✔ @fitsnews · Mar 6
>
> He and I disagree on this issue but I respect @MicahCaskey for engaging on our platform. Thank you, Micah for sending us this column to publish ... #SCStateHouse #SCPolitics fitsnews.com/2023/03/06/gue...

5:14 PM · Mar 6, 2023 · **1,581** Views

**2** Retweets   **2** Quote Tweets   **7** Likes

🗨   ⇄   ♡   ⬆



Q   Search Twitter

**Relevant people**

**Micah Caskey** 🇺🇸 ✔    [Follow]
@MicahCaskey
Sandlapper. Lawyer. State Legislator. USMC vet (Iraq&Afg). "Not as funny as [I] think." Tweets y RTs ≠ legal advice/endorsements.

**FITSNews** ✔    [Follow]
@fitsnews
"Independent. Unapologetic." THE new media in SC. Pro-freedom, pro-free markets. #NowOrNever. Open DMs or w@fitsnews.com.

**What's happening**