# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| SOUTH CAROLINA FREEDOM CAUCUS,<br>   *Plaintiff*,<br><br>  v.<br><br>WALLACE H. JORDAN, JR., J. DAVID WEEKS, BETH E. BERNSTEIN, PAULA RAWL CALHOON, MICAJAH P. CASKEY, IV, NEAL A. COLLINS, JOHN RICHARD C. KING, ROBBY ROBBINS, J. TODD RUTHERFORD, AND LEONIDAS E. STAVRINAKIS, in their official capacities as members of the HOUSE OF REPRESENTATIVES LEGISLATIVE ETHICS COMMITTEE,<br>   *Defendants*. | Civil Action No. 3:23-cv-00795-CMC<br><br>**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

Gene P. Hamilton*
Reed D. Rubinstein*
AMERICA FIRST LEGAL FOUNDATION
300 Independence Ave. SE
Washington, DC 20003
Tel: (202) 964-3721
reed.rubinstein@aflegal.org

*motion for admission
*pro hac vice* forthcoming

Christopher Mills (Fed. Bar No. 13432)
SPERO LAW LLC
557 East Bay St. #22251
Charleston, SC 29413
Tel: (843) 606-0640
cmills@spero.law

*Counsel for Plaintiff*

**TABLE OF CONTENTS**

Introduction ........................................................................................................................... 1
Rule 56(d) Standard ............................................................................................................. 2
Argument .............................................................................................................................. 3
    I.   The Defendants point to no material facts for which they need discovery. ......... 3
    II.  This case involves a facial challenge. .............................................................. 10
    III. *Greater Baltimore* does not help the Defendants. ............................................ 12
    IV. The summary judgment motion is procedurally proper. .................................... 14
Conclusion ......................................................................................................................... 15

## INTRODUCTION

The constitutional violation here is obvious. Thus, the Defendants make noises about standing. But standing is as easy as the merits. The Defendants concede that the Plaintiff is a legislative special interest caucus, rendering its speech facially restricted by South Carolina law. *See* Rule 56(d) Decl. of Wallace H. Jordan, Jr. ¶ 4, ECF No. 18-1 (stating that the Plaintiff "is a legislative special interest caucus as defined under S.C. Code Ann. [§] 2-17-10(11)"). Nothing else matters to standing: "[a] non-moribund statute that facially restricts expressive activity by the class to which the plaintiff belongs presents" "a credible threat" sufficient to confer "standing to mount a pre-enforcement challenge to that statute." *N.C. Right to Life, Inc. v. Bartlett*, 168 F.3d 705, 710 (4th Cir. 1999) (cleaned up).

Conspicuously missing from the Defendants' response is a single fact material to the resolution of this case that would be obtained through the Defendants' demanded discovery. Especially irrelevant are the "facts" that the Defendants claim to be most interested in: the *other* speech that the Plaintiff is able to engage in. South Carolina discriminatorily bans the Plaintiff from speaking about elections. This First Amendment injury exists no matter if the Plaintiff (or its members or associates) engages in other speech. The Defendants cite nothing for the proposition that a First Amendment injury dissipates if the government permits a person to engage in other, less-desired speech. And the Defendants articulate no fact that could affect the settled First Amendment legal analysis that applies to this discriminatory speech ban. This case presents a pure legal question that is ripe for adjudication.

Rather than identify discovery that could call into dispute any material fact, the Defendants' response proposes an intrusive fishing expedition for irrelevant information. Little could better illustrate the Defendants' ongoing harassment of the Plaintiff than their demand for

discovery into the private details of the little speech and association that the Defendants permit them. The Court should not sanction such a misuse of the judicial process. Because the Defendants identify no material fact that should be obtained through discovery, the Court should resolve this straightforward case and grant the Plaintiff judgment.

## RULE 56(D) STANDARD

As this Court has explained, "to substantiate a delay or denial of a motion for summary judgment" under Rule 56(d), the party opposing summary judgment "must submit an affidavit demonstrating specifically how additional discovery will rebut the movant's showing of the absence of a genuine issue of material fact." *Centennial LLC v. Becker*, No. 3:97-cv-1126, 2000 WL 35508748, at *6 n.5 (D.S.C. Nov. 14, 2000) (Currie, J.), *aff'd*, 23 F. App'x 181 (4th Cir. 2002). "An opposing party may not rely on vague assertions that additional discovery might produce needed but unspecified facts." *Id.* "A party must state with precision the materials it hopes to obtain with further discovery and exactly how it expects those materials to enhance its opposition to dispositive action." *Id.* "These strict requirements apply even where no discovery has been taken." *Id.* Thus, courts must "deny a Rule 56(d) motion when the information sought would not by itself create a genuine issue of material fact sufficient for the nonmovant to survive summary judgment." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).[1] Summary judgment before discovery is particularly appropriate when the question "is principally one of law, and there is a wealth of case law assessing similar challenges." *Id.* at 932; *e.g.*, *Carolina Pride, Inc. v. McMaster*, 654 F. Supp.

---

[1] The Fourth Circuit routinely applies this rule to affirm summary judgment despite Rule 56(d) demands for discovery. *E.g.*, *Hodgin v. UTC Fire & Sec. Ams. Corp.*, 885 F.3d 243, 249–50 (4th Cir. 2018); *Poindexter v. Mercedes-Benz Credit Corp.*, 792 F.3d 406, 411 (4th Cir. 2015); *Nader v. Blair*, 549 F.3d 953, 961–62 (4th Cir. 2008); *Strag v. Bd. of Trustees, Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *St. Paul Reinsurance Co. v. Ollie's Seafood Grille & Bar, LLC*, 242 F.R.D. 348, 352 (D.S.C. 2007), *aff'd*, 296 F. App'x 377 (4th Cir. 2008).

2

2d 406, 409–10 (D.S.C. 2009) (Currie, J.) (granting summary judgment on a First Amendment facial and as-applied claim before any apparent discovery was conducted).

**ARGUMENT**

**I. The Defendants point to no material facts for which they need discovery.**

The Plaintiff asserted undisputed facts in its motion. Mem. of Law in Supp. of Mot. for Summ. J. 4–5, ECF No. 17-1 ("Memo."). The Defendants' response and Rule 56(d) affidavit do not even refer to these facts, much less plausibly argue that discovery is necessary to rebut them. Thus, the Defendants falter out of the starting gate. As this Court has said, "the opposing party must submit an affidavit demonstrating specifically how additional discovery will rebut the movant's showing of the absence of a genuine issue of material fact." *Centennial*, 2000 WL 35508748, at *6 n.5. The Defendants' affidavit mostly recites irrelevant facts or contains legal arguments, and its paragraph of proposed discovery—lacking specific explanation of material facts—is addressed below.

Truth be told, the Plaintiff's listed undisputed facts are more than it needs to obtain summary judgment now. That is because binding precedent confers standing on a member of a class whose speech is facially restricted by the government. *See Bartlett*, 168 F.3d at 711 ("[T]he statute's mere existence risks chilling First Amendment rights."). And it is undisputed that the Plaintiff is a special interest caucus banned from speech "that would influence the outcome of an election"—speech that favored caucuses may engage in. S.C. Code Ann. § 2-17-10(21).

Likewise, under the Equal Protection Clause, "[d]iscriminatory treatment is a harm that is sufficiently particular to qualify as an actual injury for standing." *Planned Parenthood of S.C. Inc. v. Rose*, 361 F.3d 786, 790 (4th Cir. 2004) (lead opinion). Under both the Free Speech Clause and the Equal Protection Clause, the Plaintiff has standing. *See id.* ("[W]here, as here, plaintiffs challenge a law on the ground that it promotes an opposing political viewpoint above their own,

they suffer a cognizable injury that can be redressed by the invalidation of that law.").[2]

The Defendants' response ignores all this on-point circuit precedent, proposing a parade of pointless discovery inquiries with no bearing on any issue here. The Defendants' lead argument is that they need discovery into "the facts surrounding Plaintiff's current speech and fundraising efforts," which the Defendants say are "highly relevant" to "whether Plaintiff has standing." Defs.' Resp. in Opp'n to Pl.'s Mot. for Summ. J. 4, ECF No. 18 ("Resp."). For all the Defendants' discussion of the Plaintiff and its associations, the Defendants never articulate *why* the Plaintiff's other speech or associations would be relevant to standing. *Cf. Hodgin*, 885 F.3d at 250 (rejecting "generic statements" that "do not identify any specific evidence that [the party] might discover" "or explain how that evidence would create a triable issue").

First, the Defendants refuse to grapple with—or even acknowledge—the Fourth Circuit's settled First and Fourteenth Amendment standing doctrine that protects speakers like the Plaintiff. Under circuit precedent, the Plaintiff has standing because "the statute facially restricts expressive activity by the class to which [it] belongs." *Bartlett*, 168 F.3d at 710 (cleaned up). It also has standing because the statute "promotes [other] viewpoint[s] above [the Plaintiff's] own." *Rose*, 361 F.3d at 790. There is only one factual predicate of those conclusions, and Defendants concede it: that the Plaintiff is a legislative special interest caucus. Jordan Decl. ¶ 4; *see* Memo. 4. Thus, the Plaintiff "has standing to mount a pre-enforcement challenge to th[e] statute." *Bartlett*, 168 F.3d at 710. Even though the Plaintiff explained this circuit law on standing, Memo. 18–19, the

---

[2] A legion of circuit precedent confirms the Plaintiff's standing. *See Bryant v. Woodall*, 1 F.4th 280, 285 (4th Cir. 2021) ("A plaintiff faces a credible threat of future enforcement so long as the threat is not imaginary or wholly speculative, chimerical, or wholly conjectural." (cleaned up)); *Kenny v. Wilson*, 885 F.3d 280, 288 (4th Cir. 2018); *Cooksey v. Futrell*, 721 F.3d 226, 237–38 (4th Cir. 2013); *Preston v. Leake*, 660 F.3d 726, 735 (4th Cir. 2011); *accord Se. Booksellers Ass'n v. McMaster*, 282 F. Supp. 2d 389, 392 (D.S.C. 2003).

4

Defendants never address it, making general proclamations about injury, causation, and redressability untethered from the standards that apply here, *e.g.*, Resp. 5, 11.

Second, whether the Plaintiff engages in *other* speech that the State has not (yet) banned has no relevance at all. The First Amendment protects speech writ large—*especially* the election-related speech that these laws prohibit. *See* Memo. 6–7 (collecting cases). Indeed, "[t]he classic First Amendment violation" is "outright prohibition by the state of *certain speech*." *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt.*, 879 F.3d 101, 110–11 (4th Cir. 2018) (emphasis added). Yet the Defendants seem to suggest that a First Amendment injury from a discriminatory speech ban disappears if the claimant can engage in some other, less-desired type of speech. No precedent supports that strange suggestion. Was the First Amendment injury of the flag-burner in *Texas v. Johnson* rendered null because he could have used other speech to protest? No: "the remedy to be applied is more speech, not enforced silence." 491 U.S. 397, 419 (1989). Was the corporation's First Amendment injury in *Citizens United v. FEC* eliminated because it could speak in other ways, including through a PAC? Not at all: the Supreme Court rejected that argument in a pre-enforcement challenge. 558 U.S. 310, 337 (2010); *see id.* at 341 ("The First Amendment protects speech and speaker."). The Plaintiff cannot speak about elections, but the favored caucuses can. For both those reasons, the Plaintiff has standing. *See White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 461 (4th Cir. 2005) ("[T]hat other venues and opportunities are available" does not eliminate the injury from a "denial of a particular opportunity to express one's views." (cleaned up)).

Along the same lines, Defendants insist that "[t]he degree to which the State Freedom Caucus Network provides Plaintiff staff and what activities that staff conducts are clearly relevant." Resp. 4. Why? The Defendants do not explain. Whether the Plaintiff can exercise other

5

associational rights has no bearing on its standing to challenge this facial restriction.

The Defendants also rattle off other "topics" they say "require further exploration through discovery to determine if Plaintiff is entitled to relief as plead [sic] in its Complaint," including "Plaintiff's ability to exercise speech in person and on social media, Plaintiff's ability to fundraise, Plaintiff's paid staffing, and donations solicited on Plaintiff's behalf." Resp. 5. But once again, the Defendants do not bother to explain *how* those topics are relevant to any material question about standing, much less the merits. The State bans the Plaintiff from speaking in a way "that would influence the outcome of an election or ballot measure." S.C. Code Ann. § 2-17-10(21). The Plaintiff's injury comes from being unable to engage in such speech. And the Plaintiff is further injured because favored persons with other viewpoints *can* engage in that speech. Again, that the Plaintiff can engage in or support *other* speech does nothing to change these injuries.

Turning to the Defendants' five categories of supposedly "essential" discovery, Resp. 5-6; Jordan Decl. ¶ 18, each fails largely for the reasons above. Taking those categories in turn:

> A. Whether Plaintiff has actually been damaged or suffered an injury in fact by virtue of the statutes identified in the Complaint. For example, discovery is needed to explore whether Plaintiff's speech and the speech of its members have been inhibited as alleged in the Complaint and if so, in what respects and by what means.

This category again ignores circuit precedent that standing exists in cases like this if "the statute facially restricts expressive activity by the class to which the plaintiff belongs," *Bartlett*, 168 F.3d at 710 (cleaned up), or discriminates on viewpoint, *Rose*, 361 F.3d at 790. Thus, the facts that the Defendants purportedly think that they will gather from this category are irrelevant. Plus, the Defendants do not suggest that they will find facts showing that the Plaintiff has no desire to

6

engage in speech about elections. The suggestion is absurd.³ Last, whether the Plaintiff's "members" can otherwise speak is irrelevant. The law operates against caucuses like the Plaintiff, so it asserts an injury to *itself*. *See White Tail*, 413 F.3d at 459–61 ("it would be difficult to think of a more appropriate plaintiff" than the "organization[]" denied "its First Amendment right[s]"). Further, the Defendants do not contest the settled principle that banning speech via association is a First Amendment injury to the Plaintiff's members. "The First Amendment protects [individuals'] right not only to advocate their cause but also to select what they believe to be the most effective means for so doing." *Meyer v. Grant*, 486 U.S. 414, 424 (1988).⁴ So the Plaintiff has *both* direct and associational standing as a matter of law. *See White Tail*, 413 F.3d at 458.

> B. Whether any single member of Plaintiff has actually been damaged or suffered an injury in fact by virtue of the statutes identified in the Complaint. Discovery is needed to determine any individual member of the Freedom Caucus has been damaged as alleged in the Complaint. Defendants are entitled to require members of Plaintiff to testify under oath regarding their public statements and opportunities for speech, some of which are discussed above. If discovery answers this question in the negative, this evidence goes directly to the issue of standing.

This category fails for the same reasons. Whether "any single member" can otherwise speak does not affect this challenge. Likewise, whether the Plaintiff itself has other "opportunities

---

³ Indeed, a well-publicized dispute between the Plaintiff's members and the Republican Caucus's members—including some Defendants—pertains to the Republican Caucus's insistence on members signing a pledge *not* to engage in certain "campaign activities." Alexander Thompson, *SC Statehouse Republicans see their divides aired on full display in contentious day*, Post & Courier (Jan. 19, 2023), https://tinyurl.com/ybak8n27; *see also* Andy Brack, *S.C. Freedom Caucus squawks*, Charleston City Paper (Mar. 4, 2023), https://perma.cc/25VY-EG42 (Defendant Caskey: "These guys are a headache."); Rep. Neal Collins, Twitter (Mar. 9, 2023), https://twitter.com/collins_neal/status/1633995042250424320 (referring to the Plaintiff as "immature," "hypocritical[]," and "cowardly"). Relatedly, the Defendants' suggestion that the Plaintiff should have sought "change" "through the legislative process" (Resp. 10) misunderstands the point of constitutional protections for minority views—and is disingenuous given Defendant Caskey's statement that the Plaintiff "do[es]n't have the numbers to change the votes." Brack, *supra*.

⁴ *See also NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 459 (1958) (An association is "the medium through which its individual members seek to make more effective the expression of their own views."); Memo. 10 (collecting more cases).

for speech" that the State has not banned is irrelevant. The Plaintiff has standing because state law facially restricts its protected speech in a discriminatory way. The Defendants do not and cannot explain why the Plaintiff's and its members' "public statements" on other topics would be relevant.

> C. Whether, even assuming an individual member of Plaintiff suffered an injury in fact, that injury was caused by any conduct of Defendants. To satisfy the requirements of standing, Plaintiff's alleged injury must be the direct result of conduct by Defendants and only discovery from Plaintiff and its members can reveal this.

To start, the Defendants again seem to be confused about the distinction between the Plaintiff's direct injury as an association and the injury of "an[y] individual member of Plaintiff." The latter is irrelevant because the former is established under circuit precedent. As for causation, the Defendants do not contest that they have enforcement authority for the challenged provisions, nor could they. It is codified. *See* Memo. 4. No more is required here: "the statute's mere existence risks chilling First Amendment rights." *Bartlett*, 168 F.3d at 711. Indeed, even when defendants have promised to "refrain from enforcing the statute," precedent holds that causation and standing exist in First Amendment pre-enforcement challenges. *Id.*; *see Bryant*, 1 F.4th at 289 (collecting cases). And these Defendants have not even made any such assurance. To the contrary, they have recently issued advisory opinions threatening enforcement of the relevant provisions. ECF No. 17-2, Ex. 4. Finally, the Defendants do not explain how "discovery from Plaintiff and its members" could possibly be relevant to the legal question of the Defendants' enforcement authority.

> D. Whether, even assuming Plaintiff and/or any of its individual members suffered an injury in fact as a result of any conduct by Defendants, a favorable decision will redress the injury. Defendants require discovery to determine, through testimony by Plaintiff's members, exactly what relief Plaintiff desires so that this Court can determine whether the redressability prong of standing is satisfied.

The Defendants do not explain or cite anything for the proposition that individual "testimony" is needed through "discovery" to determine the appropriate scope of relief in a case.

8

The Plaintiff has already set forth exactly what relief it desires, in the complaint, the summary judgment motion, and the proposed order accompanying that motion. Compl. 9, ECF No. 1; Mot. Summ. J. 1–2, ECF No. 17 (asking for a declaratory judgment and for the Court "to permanently enjoin Defendants . . . from enforcing these discriminatory speech restrictions, including those found in S.C. Code Ann. §§ 2-17-10(21), 2-17-110(J), and 8-13-1333(C)"). There can be no confusion about "what relief Plaintiff desires"—much less confusion that would be appropriate to address through discovery rather than legal argument. And again, nothing more is needed for redressability and standing in this context: "[a] favorable decision . . . would mean the [Defendants] would be enjoined from enforcing the Act and/or the Act would be deemed unconstitutional," and the Plaintiff "would find full redress." *Cooksey*, 721 F.3d at 238.

> E. Whether the statutes at issue support sufficiently important government interests, including without limitation, preventing fraud, abuse by lobbyists and lobbying, and/or election abuse.

The Defendants offer this final category without elaboration or specification of any necessary discovery. For the reasons explained in the Plaintiff's memorandum—uncontested by the Defendants—the discriminatory speech ban is subject to at least strict scrutiny, and the Defendants cannot satisfy such scrutiny because (among other reasons) whatever interests they may assert would apply equally to caucuses formed around party, race, or gender. Memo. 12–18. The Defendants do not say how discovery could affect this legal conclusion. And they certainly do not explain why discovery *from the Plaintiff* would be relevant to the validity of whatever statutory interests the Defendants might assert. When strict scrutiny applies, it is a "nonnegotiable requirement in this Circuit" that "actual evidence in the legislative record [demonstrates] that lesser restrictions will not do." *PETA v. N.C. Farm Bureau Fed'n, In*c., 60 F.4th 815, 831 (4th Cir. 2023) (cleaned up). Either that public record exists—and the Defendants already have access to it—or it

9

does not. By seeking discovery, Defendants concede that they are grasping for post hoc justifications. That is not a discovery problem, but a merits one. *See Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt.*, 721 F.3d 264, 283 (4th Cir. 2013) ("[S]upplemental materials cannot sustain regulations where there is no evidence in the pre-enactment legislative record." (cleaned up)).

In short, because the Defendants' "Rule 56(d) declaration does not identify any specific information that would create a genuine dispute of material fact," summary judgment is warranted. *Hodgin*, 885 F.3d at 250. The Defendants offer nothing "more than a vague hope that discovery might produce additional" facts, but because they cannot explain how those facts are *material*, they provide no "basis for the court to license a fishing expedition." *Centennial*, 2000 WL 35508748, at *6 n.5 (cleaned up).

## II.    This case involves a facial challenge.

This action challenges South Carolina's discriminatory speech ban on its face, for "the law lacks any plainly legitimate sweep." *White Coat Waste Project v. Greater Richmond Transit Co.*, 35 F.4th 179, 203–04 (4th Cir. 2022) (cleaned up). The Defendants' assertion that including "a declaration" with several attachments "convert[s] any supposed facial challenge into an as-applied challenge" and requires discovery is deeply confused. Resp. 10. First, precedent holds that even an "as-applied pre-enforcement challenge" under the First Amendment can be adjudicated "based only on the status of the plaintiffs, despite the absence of exhibits or other evidence to 'ground [the] analysis.'" *Preston*, 660 F.3d at 736 (quoting *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 249 n.7 (2010)); *e.g.*, *Carolina Pride*, 654 F. Supp. 2d at 409–10.

Putting that aside, "[t]he line between facial and as-applied challenges goes to the breadth of the remedy employed by the Court," and "[a] facial challenge can be decided without regard to its impact on the plaintiff asserting the facial challenge." *White Coat*, 35 F.4th at 203–04 (cleaned

10

up). As the Fourth Circuit recently explained, "facial invalidity does not mean that no" related regulation "could ever be lawful"; "[i]t simply means that there is no circumstance in which *this particular* ban on [speech] could be lawfully applied." *Id.* at 204. That is the Plaintiff's claim here: the challenged provisions *only* operate as a discriminatory ban on speech, so they are facially invalid. Under this claim, the statute's actual "impact on the [P]laintiff" is irrelevant. *Id.*

Nothing in the Plaintiff's motion changes the nature of this claim. Applying strict scrutiny, the Plaintiff pointed out that even the Defendants "don't know" what compelling government interest could *ever* (not just here) justify the statute's facial discrimination. Memo. 15. That quote from a Defendant neither changes the relief sought nor is remotely necessary for the Plaintiff to prevail, as the Defendants have the burden of satisfying strict scrutiny. The Defendants cite nothing to support their novel theory that mentioning evidence in the application of strict scrutiny "convert[s]" a "facial challenge into an as-applied challenge." Resp. 10. If the Defendants want to offer a declaration explaining their statement, they do not need discovery for that. And whatever one Defendant said, the point would remain: the Defendants cannot satisfy strict scrutiny when favored caucuses organized around party, race, and gender may speak freely. The statute is facially unconstitutional: all it does is ban speech based on viewpoint. *See* Memo. 6–18.

Further, including affidavits is not "effectively engag[ing] in the discovery process." Resp. 10. Rather, it is standard summary judgment practice, Fed. R. Civ. P. 56(c)(4), and the Defendants could offer affidavits too. *See Carolina Pride*, 654 F. Supp. 2d at 409 & n.6 (this Court granting summary judgment on First Amendment facial invalidity grounds based on affidavits). The point is that the Defendants identify no material fact that could be obtained *through discovery* that could affect any legal issue before the Court. *Compare* Resp. 10 ("the statements and declaration included with Plaintiff's Motion are subject to further examination"), *with Hodgin*, 885 F.3d at

11

250 (rejecting "generic statements [that] merely parrot the potential benefits of any deposition" without "identify[ing] any specific evidence that [the party] might discover in the depositions" that "would create a triable issue"). The Defendants concede the only material fact: the Plaintiff's speech is facially restricted by state law.[5]

**III.     *Greater Baltimore* does not help the Defendants.**

Much of the Defendants' response dwells on one decision that only confirms that discovery is unnecessary here, *Greater Baltimore Center for Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore*, 721 F.3d 264 (4th Cir. 2013). Though the Defendants provide a lengthy (if selective) case summary, their only explanation of how the case is relevant here is that both cases involve "First and Fourteenth Amendment challenges" and a pre-answer motion for summary judgment. Resp. 9–10. But *Greater Baltimore* in no way changed the rule that the Rule 56(d) opposing party must "demonstrat[e] specifically how additional discovery will rebut the movant's showing of the absence of a genuine issue of material fact." *Centennial*, 2000 WL 35508748, at *6 n.5; *see Hodgin*, 885 F.3d at 250; *Pisano*, 743 F.3d at 931. Instead, *Greater Baltimore* applied that rule—which applied here, dooms the Defendants' fishing expedition.

*Greater Baltimore* involved a city ordinance requiring pregnancy centers to post certain disclaimers. 721 F.3d at 271. The plaintiffs sought summary judgment, and the City filed a Rule 56(f) (now 56(d)) affidavit stating that it needed discovery "to develop factual support for the City's argument that the services offered by the Center are a form of commerce, and, therefore, the disclaimer required by the Ordinance is commercial speech, subject only to rational basis scrutiny," and to show the "deceptive character" of the commercial speech. *Id.* at 275–76 (cleaned

---

[5] Given that uncontested statutory conclusion, the Defendants' professed concerns about "premature interpretations of statutes" (Resp. 11) are baseless. The Defendants offer no other plausible interpretation of the speech ban, much less one that needs discovery to flesh out.

12

up). The Fourth Circuit agreed, holding that "discovery is needed to substantiate" "the potential commercial nature of [the] speech," including "evidence concerning the Center's economic motivation (or lack thereof) and the scope and content of its advertisements." *Id.* at 285–86. The Fourth Circuit said that discovery was necessary both because the district court had "focus[ed] almost exclusively on the Ordinance's application to the" plaintiff and because "evidence concerning the distinctive characteristics of Baltimore's various limited-service pregnancy centers" could be relevant to the law's other applications. *Id.* at 282.

*Greater Baltimore*'s case-specific holding has no purchase here. *First*, unlike the City in *Greater Baltimore*, the Defendants here do not specifically articulate what material facts they hope to obtain through discovery. *Second*, the Defendants do not explain why any desired facts have any relevance. *Third* and tellingly, the Fourth Circuit never suggested in *Greater Baltimore* that discovery was needed to explore *standing*—the Defendants' focus here. The city ordinance there facially restricted the speech of a class of which the plaintiff was a member, which is sufficient under circuit precedent for standing. *See supra* Part I. Indeed, the plaintiff's standing in *Greater Baltimore* was so obvious that the Court did not need to explain it, even as it affirmed the dismissal of other entities for lack of standing. 721 F.3d at 291; *cf. Benham v. City of Charlotte*, 635 F.3d 129, 134 (4th Cir. 2011) ("When a question of standing is apparent," "it is our responsibility to raise and decide the issue sua sponte."). The Plaintiff's standing here is just as obvious for the same reasons, and no discovery is necessary or relevant. Likewise, *Greater Baltimore* suggests no need for discovery into causation or redressability in this context, as they go hand-in-hand with the injury from a non-moribund statute that restricts speech. *See supra* pp. 8–9.

*Fourth*, the Defendants here do not argue that the banned speech is commercial or would entail lesser scrutiny for any other reason. As the Defendants do not contest, South Carolina bans

13

core political speech. *Fifth*, analogous details about the Plaintiff or any other legislative special interest caucus have no relevance to any as-applied *or* facial theory, because no such caucus is a commercial entity. And under circuit standing law, caucus-specific details are equally irrelevant to the conclusion that facially restricting a person's speech imposes a cognizable injury.

In sum, *Greater Baltimore* confirms that the Defendants' proposed discovery focused on standing is neither necessary nor material to this case.

## IV. The summary judgment motion is procedurally proper.

Last, the Defendants assert that the Plaintiff's summary judgment motion "disregards the Federal Rules of Civil Procedure." Resp. 4. This assertion is puzzling, as the Defendants point to no rule that was supposedly violated. As this Court has explained, the "strict requirements" of Rule 56(d) "apply even where no discovery has been taken." *Centennial*, 2000 WL 35508748, at *6 n.5. The Defendants repeatedly complain that the motion was filed "without notice," Resp. 4, 10, but no notice is required for summary judgment motions, L. Civ. R. 7.02(B).

The Defendants' accusation that it was "blatant" "procedural gamesmanship" to file the motion after "Plaintiff's counsel was on notice that Defendants intended to file a response [to the complaint] and granted an extension of time to do so" is even more puzzling. Resp. 10. The deadline to respond to the complaint has nothing to do with this motion. The Plaintiff's counsel never doubted that the Defendants "intended to file a response" to the complaint; most defendants do. And the Plaintiff's counsel offered the Defendants the maximum additional time under Local Civil Rule 12.01 to respond to the complaint. If the Defendants' counsel wanted more time to respond to the summary judgment motion too, they need only have asked. But they did not ask. Given that, the Defendants' heated accusations of "gamesmanship" directed at Plaintiff's counsel are particularly misplaced. In all events, no amount of time—or a pro forma answer with rote denials—will change the uncontested fact that South Carolina law facially restricts Plaintiff's core

14

political speech protected by the First Amendment. And no discovery could change the settled First Amendment law that the Court is bound to apply. *See* L. Civ. R. 7.03 ("Attorneys are expected to file motions immediately after the issues raised thereby are ripe for adjudication.").

## CONCLUSION

The Defendants cannot articulate a single material fact for which discovery would be necessary. That failure dooms their effort to avoid summary judgment and subject the Plaintiff to punitive, pointless discovery. And there can be no mistaking that is the true purpose of the Defendants' baseless demands for discovery: they already disliked the Plaintiff, and they are offended that the Constitution limits their efforts to deny the Plaintiff the right to speak. *See supra* note 3; ECF No. 17-2, Exs. 5, 6. Rather than fix the constitutional defect in the law, they wish to punish their perceived opponent by rifling through private communications that themselves pertain to speech and association protected by the First Amendment. The irony, of course, is that such discovery would itself run headlong into First Amendment problems, for the Defendants' demands would not seek relevant evidence and only further chill the Plaintiff's speech.[6]

Fortunately, the morass of discovery can be avoided because the Defendants fail to "state with precision" any material fact that could come of that wasteful, unconstitutional effort. *Centennial*, 2000 WL 35508748, at *6 n.5. The issues before the Court are pure legal ones. The Plaintiff's standing is not subject to any genuine dispute of material fact. And the First Amendment facial merits analysis here does not involve any factual question requiring discovery. The Court should grant the Plaintiff's motion for summary judgment.

---

[6] *See, e.g.*, *Roanoke River Basin Ass'n v. Duke Energy Progress, LLC*, Nos. 1:16-cv607, 1:17-cv-452, 2018 WL 11449629, at *2 (M.D.N.C. May 25, 2018) ("'[C]ompelled disclosure of affiliation with groups engaged in advocacy' may infringe upon constitutional rights." (quoting *NAACP*, 357 U.S. at 462)).

15

                           Respectfully submitted,

                           */s/ Christopher Mills*

| | |
|---|---|
| Gene P. Hamilton (motion for admission *pro hac vice* forthcoming) | Christopher Mills (Fed. Bar No. 13432) |
| Reed D. Rubinstein (motion for admission *pro hac vice* forthcoming) | SPERO LAW LLC |
| AMERICA FIRST LEGAL FOUNDATION | 557 East Bay St. #22251 |
| 300 Independence Ave. SE | Charleston, SC 29413 |
| Washington, DC 20003 | Tel: (843) 606-0640 |
| Tel: (202) 964-3721 | cmills@spero.law |
| reed.rubinstein@aflegal.org | |

                        *Counsel for Plaintiff*

April 5, 2023