**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | |
|---|---|
| SOUTH CAROLINA FREEDOM CAUCUS, | Civil Action No. 3:23-cv-00795-CMC |
| *Plaintiff*, | |
| v. | |
| WALLACE H. JORDAN, JR., J. DAVID WEEKS, BETH E. BERNSTEIN, PAULA RAWL CALHOON, MICAJAH P. CASKEY, IV, NEAL A. COLLINS, JOHN RICHARD C. KING, ROBBY ROBBINS, J. TODD RUTHERFORD, AND LEONIDAS E. STAVRINAKIS, in their official capacities as members of the HOUSE OF REPRESENTATIVES LEGISLATIVE ETHICS COMMITTEE, | **SUPPLEMENTAL REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| *Defendants*. | |

Gene P. Hamilton*
Reed D. Rubinstein**
AMERICA FIRST LEGAL FOUNDATION
300 Independence Ave. SE
Washington, DC 20003
Tel: (202) 964-3721
reed.rubinstein@aflegal.org

*admitted *pro hac vice*
**motion for admission
*pro hac vice* pending

Christopher Mills (Fed. Bar No. 13432)
SPERO LAW LLC
557 East Bay St. #22251
Charleston, SC 29413
Tel: (843) 606-0640
cmills@spero.law

*Counsel for Plaintiff*

## TABLE OF CONTENTS

Introduction ................................................................................................................... 1

Argument ...................................................................................................................... 2

   I.   South Carolina's discriminatory speech ban is unconstitutional ........................... 2

      A.   The Defendants do not try to satisfy the strict scrutiny that applies to the law's discriminatory speech, expenditure, and solicitation bans ................................... 2

      B.   The Defendants fail to show that a $0 contribution limit and a $.01 disclosure requirement are narrowly tailored to any important government interest ........................... 3

          1.  The contribution ban and disclosure requirement do not implicate an important government interest ................................................................................................. 4

          2.  The Defendants cannot show that a $0 contribution limit or a $.01 disclosure requirement is closely tailored to any important interest ....................................... 7

   II.   The Defendants' rehashed standing and discovery arguments remain meritless ............... 10

      A.   The Plaintiff has standing ......................................................................................... 10

      B.   The Defendants identify no material facts for which they need discovery ................ 12

   III.  Stripping the Plaintiff of more rights is not a proper remedy ............................................ 13

Conclusion .................................................................................................................. 15

## INTRODUCTION

For all the Defendants' misdirection, they ignore the core problem with South Carolina's discriminatory speech ban: it allows caucuses formed by favored speakers to engage in speech that the Plaintiff cannot. The Defendants never justify the law's distinction between caucuses organized around party, race, and gender, and caucuses organized around other interests. The most the Defendants can say is that the law contains that arbitrary distinction. But that is the problem, not a justification. And that arbitrary discrimination means that the law cannot pass any form of scrutiny.

The Defendants concede by silence many issues before the Court. *First*, the Defendants do not contest and thus concede the Plaintiff's statement of undisputed facts. Mem. of Law in Supp. of Mot. for Summ. J. 4–5, ECF No. 17-1 ("Memo."); *see Brown v. Elliot*, No. 3:14-cv-01188-JMC, 2016 WL 5387972, at *5 (D.S.C. Sept. 27, 2016) ("If, in response to a motion for summary judgment, 'a party fails to properly address another party's assertion of fact, the court may consider the fact undisputed.'" (cleaned up) (quoting Fed. R. Civ. P. 56(e)(2))). *Second*, the Defendants do not contest that the law discriminates based on viewpoint and content. *Third*, the Defendants do not try to satisfy the strict scrutiny that applies to the law's speech, expenditure, and solicitation bans. *Fourth*, the Defendants do not make any tailoring argument as to the contribution and disclosure components of the ban, dwelling instead on the irrelevant question of alternative channels of communication. *Fifth*, the Defendants do not oppose an injunction.

The scrutiny arguments that the Defendants *do* make are unavailing. At bottom, whatever interests they assert are equally implicated by caucuses organized around party, race, and gender. Those caucuses' exemption from the speech ban shows both that no sufficiently important government interest is at stake and that the law is not narrowly tailored to such an interest. No history, evidence, or case supports the law's viewpoint- and content-based discrimination.

The Defendants' rehashed standing and discovery arguments fare no better. The Defendants continue to ignore circuit standing precedent, and they still cannot identify any fact that would be plausibly obtained through discovery that would affect this Court's determination.

Last, the Defendants' inseverability argument is a transparent effort to deprive the Plaintiff

of *more* First Amendment rights by supposedly eliminating the existence of special interest caucuses altogether. That would worsen, not remedy, the constitutional violations here. The Defendants cannot overcome the presumption of severability with a 17-year post hoc legislator declaration. And even if the Defendants' inseverability claim were right, the Court would still have before it the same unconstitutional discrimination that exists now. The Court should grant summary judgment and enjoin the Defendants from enforcing the unconstitutional speech ban.

## ARGUMENT

### I. South Carolina's discriminatory speech ban is unconstitutional.

The Defendants fail to meet their burden of satisfying heightened scrutiny. They do not even try to satisfy the strict scrutiny that applies to the speech, solicitation, and expenditure bans. And they cannot show that the contribution and disclosure components are narrowly tailored to any important government interest, given that caucuses organized around party, race, and sex are exempt. The Defendants never justify that distinction.

#### A. The Defendants do not try to satisfy the strict scrutiny that applies to the law's discriminatory speech, expenditure, and solicitation bans.

First, the Defendants' discussion of the appropriate level of scrutiny (Opp. 4–6) is incomplete and largely incorrect. It is incomplete because the statute directly bans speech, S.C. Code Ann. § 2-17-10(21), and "[l]aws that burden political speech are subject to strict scrutiny," *Citizens United v. FEC*, 558 U.S. 310, 340 (2010) (cleaned up). The law is also subject to strict scrutiny because, as the Defendants appear to concede, it discriminates based on viewpoint and content (and prohibits speech and association). *See* Memo. 6–11. The law is further subject to strict scrutiny because it bans spending and solicitations in support of speech. *See, e.g.*, *Az. Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 734 (2011) (expenditure limits are subject to strict scrutiny); *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 442–43 (2015) (applying strict scrutiny to a law "restricting the solicitation of contributions"). As these precedents show, the Defendants' uncited and unexplained assertion that the law's "expenditure limits" and ban on "soliciting

contributions" are subject to "intermediate scrutiny" (Opp. 4) is incorrect.[1]

In a footnote, the Defendants insist that the law would satisfy strict scrutiny "for the same reasons articulated herein." *Id.* at 4 n.2. But that argument would fail even if it were presented in more than a conclusory footnote. As "strict scrutiny is the most demanding test known to constitutional law," one "could rightly say that a law failing intermediate scrutiny would also fail strict scrutiny." *Recht v. Morrisey*, 32 F.4th 398, 410 (4th Cir. 2022) (cleaned up). But one cannot say—as the Defendants do—that a law *satisfying* intermediate scrutiny would therefore pass strict scrutiny. Because the Defendants make no effort to satisfy the strict scrutiny that applies to the law's speech, expenditure, and solicitation bans, summary judgment is proper. *See* Memo. 12–16.

To the extent that the law bans contributions and requires disclosures, those requirements are part and parcel of the law's speech ban: they are within the law's ban on "[s]oliciting contributions from the general public," S.C. Code Ann. § 8-13-1333, which is subject to strict scrutiny. The contribution and disclosure requirements equally discriminate on viewpoint. Thus, they are likely subject to strict scrutiny under both the First and Fourteenth Amendments. *See supra* note 1; Memo. 11–12. But this Court need not decide that question, for the Defendants do not satisfy even intermediate scrutiny as to the speech ban's complete prohibition on election-related contributions and its requirement to disclose even a $0.63 contribution for a stamp.

## B. The Defendants fail to show that a $0 contribution limit and a $.01 disclosure requirement are narrowly tailored to any important government interest.

Under the intermediate scrutiny that courts have applied to contribution limits, the Defendants must show that "the restriction at issue [is] closely drawn to serve a sufficiently important interest." *Bennett*, 564 U.S. at 735 (cleaned up). At least the same "exacting scrutiny

---

[1] Likewise, the Defendants' claim that the proper Equal Protection standard is rational basis review (Opp. 6, 20) is contradicted by binding precedent that the Plaintiff already identified. *See* Memo. 12 ("'When government regulation discriminates among speech-related activities' like this, 'the Equal Protection Clause mandates that the legislation' pass strict scrutiny." (quoting *Carey v. Brown*, 447 U.S. 455, 461 (1980))). The Defendants have no response, and they do not explain why the fact that a caucus is organized around party, race, or gender is a "legitimate difference[]." Opp. 21. It is arbitrary. And it thus fails even rational basis review. *See* Memo. 17.

standard" applies to "compelled disclosure requirements." *Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2383 (2021) (plurality opinion). This standard requires that the restriction "be narrowly tailored to the government's asserted interest." *Id.* And under circuit precedent, intermediate scrutiny "requires the government to produce *evidence* that a challenged regulation materially advances an important or substantial interest by redressing past harms or preventing future ones." *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 515 (4th Cir. 2002) (emphasis added). "These harms must be real, not merely conjectural, and the regulation must alleviate these harms in a direct and material way." *Id.*

The Defendants do not satisfy this heightened scrutiny. Their fundamental problem is that whatever interests they might assert apply equally to other legislative caucuses formed around other special interests, like party, race, and gender. Yet caucuses organized around those interests can speak, campaign, receive contributions, and disclose only certain contributions. Meanwhile, caucuses organized around interests disfavored by the State cannot. And the Defendants do not even try to argue that caucuses around party, race, and gender are somehow sanctified or immune from the concerns that the Defendants profess. The Defendants "ha[ve] offered nothing—no evidence, no judicial opinion, not even any argument—to suggest that" only caucuses organized disfavored interests "produce the kind of adverse" consequences they discuss. *Bason*, 303 F.3d at 516. This "dramatic mismatch" between the Defendants' stated concerns and the speech ban makes the law unconstitutional. *Bonta*, 141 S. Ct. at 2386.

### 1. The contribution ban and disclosure requirement do not implicate an important government interest.

The Defendants do not show that the contribution ban and disclosure regime involve an important government interest. "As the Supreme Court has recognized," "'underinclusiveness can raise doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint.'" *Grimmett v. Freeman*, 59 F.4th 689, 696 n.9 (4th Cir. 2023) (cleaned up) (quoting *Williams-Yulee*, 575 U.S. at 448). "If the Act is intended to prevent" corruption or promote transparency, "it draws curious lines." *Id.* Letting favored caucuses

speak and raise money (and be wined and dined by lobbyists) equally implicates the Defendants' supposed interests, but the State permits that behavior subject to limited disclosure rules—evidently considering that regime enough to address supposed corruption or transparency concerns. The Defendants do not explain why the same regime would not satisfy these concerns when it comes to caucuses not organized around party, race, gender.

The Defendants' history lesson underscores the point. *See* Opp. 10–11. First, that lesson is unsupported by admissible evidence and instead involves unauthenticated citations to an opinion piece, a blog post, and an advocacy report. *See, e.g.*, *Greene v. Scott*, No. 3:13-cv-0567-JFA, 2015 WL 2095214, at *3 (D.S.C. May 6, 2015) (Anderson, J.), *aff'd*, 637 F. App'x 749 (4th Cir. 2016) ("[T]he Fourth Circuit has consistently found that newspaper articles are inadmissible hearsay [at summary judgment] to the extent that they are introduced to prove the factual matters asserted therein." (cleaned up)). These are all excluded by Fed. R. Evid. 802. *See also* Opp. 21 (chart).

None of these sources helps the Defendants anyway. The op-ed specifically attacks state law's present "exemption" for lobbyists to give "goodies" to "one of the caucuses listed in [state] law," lamenting: "purity is admired more in theory than in practice." Cindi Ross Scoppe, *Another Fat and Ugly Attempt to Shake Down Special Interests*, The State, Apr. 5, 2005, at A8. The columnist's solution is the anti-speech version of the equal treatment that the Plaintiff seeks here: "prohibit the Republican, Democratic, black and women's caucuses" from speaking too. Cindi Ross Scoppe, *SC Freedom Caucus' latest lawsuit hearkens to old Fat and Ugly Caucus*, Post & Courier, Mar. 4, 2023, https://tinyurl.com/yrk36y6a. And to the extent that the Defendants' other sources discuss this issue at all, they too make no attempt to justify the distinction the Defendants must defend between party, race, and gender special interest caucuses and all others.

The Defendants say that "b[y] statute, a 'legislative speech interest caucus' is unique from a 'legislative caucus.'" Opp. 11–12. That is the point of this lawsuit. The State's discriminatory definition of a "caucus" cannot justify its own discrimination. The Defendants must *show* how "legislative special interest caucuses" implicate supposed corruption concerns that "legislative caucuses" do not, given that all are organized around equivalent "special interests." They must

"point to record evidence or legislative findings demonstrating the need to address a special problem." *FEC v. Cruz*, 142 S. Ct. 1638, 1653 (2022) (cleaned up); *id.* (rejecting "a handful of media reports"). The Defendants do not try to do so. To the contrary, they say that they "don't know" why the law discriminates as it does—and they have declined the opportunity to clarify that statement. *See* Memo. 15; Reply in Supp. of Mot. for Summ. J. 11, ECF No. 19 ("Reply"); *see generally* Declaration of Rep. Micajah P. Caskey, ECF No. 29-5 (not explaining the statement).

The same problem infects the Defendants' other articulations of the same point. The Defendants say that preventing the Plaintiff from speaking about elections entirely is necessary to prevent "*quid pro quo* corruption" by "reducing the opportunity for legislators to act, not on behalf of the public at large, but on behalf of special interests or the legislators themselves." Opp. 14. Unsurprisingly, the Defendants cite nothing for this logic. Needless to say, the Supreme Court has never upheld an election speech ban because "special interests" might speak; individuals joining to voice their political opinions is at the heart of activity protected by the First Amendment. *See* Memo. 6–7. "[T]he Government may not seek to limit the appearance of mere influence or access": "influence and access embody a central feature of democracy—that constituents support candidates who share their beliefs and interests, and candidates who are elected can be expected to be responsive to those concerns." *Cruz*, 142 S. Ct. at 1653 (cleaned up); *see Citizens United*, 558 U.S. at 359. And again, how could this law implicate corruption interests when other "legislators themselves" (Opp. 14) *can* speak about elections? Favored caucuses do not even have to *report* contributions for express advocacy within 45 days of an election. Memo. 2–3. If there were a corruption interest at play, the Defendants cannot explain why it would apply to some caucuses and not others. If anything, the favored caucuses are *more* likely to implicate corruption interests, for they generally have larger membership—and therefore power.

Even more egregiously, as the Defendants' own source explains, after courts invalidated the South Carolina Ethics Act's foundational definition of "committee," most other South Carolina political groups can "raise and spend unlimited amounts of money without having to disclose its origin." Welch, cited at Opp. 10; *see, e.g.*, *S.C. Citizens for Life, Inc. v. Krawcheck*, 759 F. Supp.

2d 708, 720 (D.S.C. 2010). After holding that the definition of "committee" violated the First Amendment, Judge Wooten explained that a "revision of the statutory scheme is a task best-suited to the state legislature." *Id.* at 720. If the State considered the concerns expressed by the Defendants important, one would have thought that the General Assembly would quickly move to remedy a situation under which "there are no enforceable state requirements on groups or non-candidate individuals raising and spending funds to influence elections to register and disclose their sources and expenditures, and no limits on contributions they can receive." Lobbying, PACs, and Campaign Finance: 50 State Handbook, § 42:71 (2023 ed.). Instead, the General Assembly has left that state of affairs in place for over a decade. Given that complacency, the Defendants cannot now feign some important interest in corruption or transparency related to political speech.

Absent any defensible explanation for the speech ban's discrimination, it is apparent that the ban serves no legitimate interest at all, and instead is concerned with the suppression of expression. The Defendants have not shown an important government interest.

### 2. The Defendants cannot show that a $0 contribution limit or a $.01 disclosure requirement is closely tailored to any important interest.

Intermediate scrutiny requires narrow tailoring, which "is crucial where First Amendment activity is chilled—even if indirectly—because First Amendment freedoms need breathing space to survive." *Bonta*, 141 S. Ct. at 2384. Contrary to the Defendants' claim that they "must demonstrate only a 'substantial relation'" to an important interest (Opp. 6), "a substantial relation to an important interest is not enough to save a disclosure [or contribution] regime that is insufficiently tailored." *Bonta*, 141 S. Ct. at 2384. "[A] reasonable assessment of the burdens imposed by disclosure should begin with an understanding of the extent to which the burdens are unnecessary, and that requires narrow tailoring." *Id.* at 2385.[2]

The speech ban is not narrowly tailored, most obviously for the same reason discussed above. Permitting favored caucuses to engage in the same speech that disfavored caucuses cannot

---

[2] Contrary to another misunderstanding, this is not a "time, place, or manner" restriction. Opp. 15. It is a ban. Plus, as the Defendants do not contest, the ban is based on content (and viewpoint).

engage in—with no suggestion whatsoever of any relevant difference between those types of caucuses—is not a tailored way to solve any purported problem. Beyond that irrational discrimination, a contribution limit of $0 for election speech is not narrowly tailored to any purported problem: how could a $1 contribution plausibly lead to any "*quid pro quo* corruption"? The government "may target only a specific type of corruption—*quid pro quo* corruption" from "large individual financial contributions to particular candidates." *McCutcheon v. FEC*, 572 U.S. 185, 206–07 (2014) (plurality opinion). A ban on "all contributions of *any* amount" is not tailored to that interest "in any meaningful way." *Id.* at 210. And again, the State's permission for favored caucuses (and candidates and related entities) to receive contributions "indicates its belief that [such] contributions . . . do not create a cognizable risk of corruption." *Id.*; *see* Opp. 21 (chart proving the point). For the same reasons, a disclosure requirement that mandates disclosure of "the name and address of each person" "making a donation" of a penny is not narrowly tailored to any important interest in transparency. S.C. Code Ann. § 8-13-1333(C); *see Davis v. FEC*, 554 U.S. 724, 744 (2008) (invalidating "disclosure requirements [that] were designed to implement [unconstitutionally] asymmetrical contribution limits").

The Defendants offer no meaningful tailoring explanation. Instead, they put on a parade of misdirections, most of which have already been dealt with and all of which are meritless. First, the Defendants say that the Plaintiff does not have "*the right* to be a legislative special interest caucus" and "subjected itself to the confines that the Legislature chose to implement on such groups." Opp. 15. That is not how the First Amendment works: the General Assembly must act within its constitutional limits. As already explained, "states are not 'free to define the rights of their creatures without constitutional limit.'" Memo. 10 n.2 (quoting *First Nat'l Bank of Bos. v. Bellotti*, 435 U.S. 765, 778 n.14 (1978), along with *Citizens United*, 558 U.S. at 351 ("It is rudimentary that the State cannot exact as the price of" organizing a group "the forfeiture of First Amendment rights." (cleaned up))). The Defendants have no response.

The Defendants' primary argument is that the speech ban "only" prohibits core political speech (and contributions toward that speech) about "an election or ballot measure," leaving

supposedly "reasonable alternatives for Plaintiff to engage in" "other activities not specifically restricted" or to "form a [PAC]." Opp. 16–18. But the Defendants' entire premise is wrong. This is not a time, place, or manner restriction, so "alternative channels" of communication are irrelevant. *See Billups v. City of Charleston*, 961 F.3d 673, 685 (4th Cir. 2020). As Judge Norton explained, "alternative channels" "say[] nothing about the burdened speech or its relationship to the government's interest," and there is no reason to "assume that because the [legal] regime left open certain channels of communication, the channels that it foreclosed were narrowly tailored to protect the [government's] interests." *Billups v. City of Charleston*, 194 F. Supp. 3d 452, 472 (D.S.C. 2016). Even for time, place, or manner restrictions, the government must "establish that the [law] is narrowly tailored" *before* the question of "alternative channels" even arises. *Billups*, 961 F.3d at 690 n.11. The Defendants' alternative channels arguments are irrelevant.

Given this fundamental disconnect, it is unsurprising that the Defendants cite not one case—and there is no shortage of contribution limits cases—holding that because a person can engage in *other* political speech, a contribution limit is narrowly tailored. The issue is never whether the plaintiff can engage in *other*, less-desirable speech. Again, the Plaintiff has already explained the point, even using one of the same examples the Defendants now suggest: the corporation's speech in *Citizens United* was protected even though it could have formed a PAC, and the flag burner in *Texas v. Johnson* was protected even though he had alternative channels. Reply 5; *see White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 461 (4th Cir. 2005) ("[T]hat other venues and opportunities are available" does not eliminate the injury from a "denial of a particular opportunity to express one's views." (cleaned up)). And once again, the Defendants repeat the same argument with no substantive response.[3]

Turning to the disclosure requirement, the Defendants claim that it is tailored to "an interest in knowing who is speaking about a candidate." Opp. 18. But the Defendants maintain that the Plaintiff and other disfavored caucuses cannot speak about candidates or elections at all. So

---

[3] The Defendants' suggestion to form a PAC for contributions and expenditures seems contrary to state law, and further undermines their stated interests. *See* S.C. Code Ann. § 8-13-1340(A).

whatever insignificant contributions for mailing expenses or conferences are disclosed, they have nothing to do with any election-related interest. And the Defendants do not explain how requiring disclosure of those who give just $1 for an educational conference is narrowly tailored to any important state interest. In any event, given that favored caucuses do not even have to disclose contributions *used for express advocacy* before an election—and that other political groups have free rein all the time, *see supra* pp. 6–7—the law's requirements could not be tailored to any interest in "curbing the evils of campaign ignorance and corruption." Opp. 19. The law's exemption for favored caucuses establishes that the disclosure requirement is not narrowly tailored. Last, the Defendants' recitation of old generalities about disclosure (*id.*) disregards the Supreme Court's recent admonition that "compelled disclosure of affiliation with groups engaged in advocacy may constitute as effective a restraint on freedom of association as other forms of governmental action," and the risks from disclosure of personal information "are heightened in the 21st century and seem to grow with each passing year." *Bonta*, 141 S. Ct. at 2388 (cleaned up).

In sum, whatever interests the State may have in preventing corruption or promoting transparency are evidently addressed by the legal regime that applies to favored caucuses. The Defendants make no attempt to justify subjecting disfavored caucuses to greater burdens on speech. The discriminatory speech ban flunks heightened scrutiny and is unconstitutional.

## II.     The Defendants' rehashed standing and discovery arguments remain meritless.

### A.  The Plaintiff has standing.

Once again, the Defendants offer a generality-filled objection to the Plaintiff's standing. *See* Opp. 7–9. And once again, they ignore all relevant precedents from similar First Amendment and Equal Protection cases. This failure is especially egregious because the Plaintiff already explained in detail how binding precedent confers standing on the Caucus: "[a] non-moribund statute that facially restricts expressive activity by the class to which the plaintiff belongs presents" "a credible threat" sufficient to confer "standing to mount a pre-enforcement challenge to that statute." *N.C. Right to Life, Inc. v. Bartlett*, 168 F.3d 705, 710 (4th Cir. 1999) (cleaned up); *see* Reply 3–8 & n.2 (collecting many Fourth Circuit cases). The Defendants have no answer.

Not to belabor the point, but the Plaintiff has standing for at least three reasons. *First*, as explained, the Plaintiff has standing because this non-moribund statute facially restricts its speech. *See Bartlett*, 168 F.3d at 711 ("[T]he statute's mere existence risks chilling First Amendment rights."); *see also* ECF No. 17-2, at 10–12 (2016 advisory opinion emphasizing the prohibition on election speech and warning: "be mindful of these rules to avoid a potential violation of South Carolina's ethics laws"); *id.* at 16 (2017 House advisory opinion incorporating this "guidance").

*Second*, under the Equal Protection Clause, "[d]iscriminatory treatment is a harm that is sufficiently particular to qualify as an actual injury for standing." *Planned Parenthood of S.C. Inc. v. Rose*, 361 F.3d 786, 790 (4th Cir. 2004) (lead opinion); *see id.* ("[W]here, as here, plaintiffs challenge a law on the ground that it promotes an opposing political viewpoint above their own, they suffer a cognizable injury that can be redressed."). The Defendants have no response.

*Third*, the Plaintiff made "a sufficient showing of self-censorship, which occurs when a claimant is chilled from exercising [its] right to free expression." *Cooksey v. Futrell*, 721 F.3d 226, 235 (4th Cir. 2013) (cleaned up). As noted, the Defendants have conceded the undisputed fact that "[i]f not for South Carolina's discriminatory speech ban on legislative special interest caucuses and the threat of criminal penalties and other sanctions, the Freedom Caucus would speak" in ways "that may influence elections and ballot measures," so this ban "imposes a present and ongoing chill on the Freedom Caucus's speech." Memo. 4–5; *see* Declaration of Representative Adam M. Morgan, ECF No. 17-3, ¶¶ 5–6.

None of the Defendants' rehashed arguments negates any of these three independent reasons that the Plaintiff has standing. The Defendants say the Committee did not "actually harm[] Plaintiff" (Opp. 8), but the "chill [on] the exercise of First Amendment rights" *is* the "actual harm." *Bartlett*, 168 F.3d at 710; *see United States v. Alvarez*, 567 U.S. 709, 723 (2012) (plurality opinion) ("The mere potential for the exercise of that power casts a chill, a chill the First Amendment cannot permit if free speech, thought, and discourse are to remain a foundation of our freedom."). That no "enforcement has actually occurred against" Plaintiff (Opp. 8) is irrelevant; that is the point of a First Amendment "pre-enforcement challenge." *Bartlett*, 168 F.3d at 710. The Defendants do not

"allege[] that the Act is moribund," *Cooksey*, 721 F.3d at 237, and for all the Defendants' inapt statements that they have not yet investigated or punished the Plaintiff (Opp. 8–9), they will not say that they *would not* do so if the Plaintiff exercises its First Amendment right to speak about elections. Even *if* the Defendants promised to "refrain from enforcing the statute," it would not matter. *Bartlett*, 168 F.3d at 711; *see Bryant v. Woodall*, 1 F.4th 280, 289 (4th Cir. 2021) ("Unofficial and non-binding statements such as these do not and cannot override the plain text of the statutes when it comes to establishing a credible threat of enforcement." (cleaned up)). Last, the Defendants' odd note that they "do not concede" that the Plaintiff is "appropriately using this statute to organize itself as a legislative special interest caucus" (Opp. 8 n.3) is irrelevant to standing here. Their own declarant swears that "[t]he Plaintiff South Carolina Freedom Caucus ('Plaintiff') is a legislative special interest caucus as defined under S.C. Code Ann. ¶ [sic] 2-17-10(11)." Declaration of Wallace H. Jordan, Jr., ECF No. 18-1, ¶ 4. Thus, state law facially discriminates against the Plaintiff's speech. The Plaintiff has standing.

**B. The Defendants identify no material facts for which they need discovery.**

The Defendants try again to provide some explanation of what material facts they could plausibly obtain through discovery that would affect this Court's consideration, but their effort has only deteriorated. The Defendants have now—for the second time—declined to contest any of the Plaintiff's undisputed facts or to explain what discovery is necessary to respond to those facts. *Contra Centennial LLC v. Becker*, No. 3:97-cv-1126, 2000 WL 35508748, at *6 n.5 (D.S.C. Nov. 14, 2000) (Currie, J.) ("[T]he opposing party must submit an affidavit demonstrating specifically how additional discovery will rebut the movant's showing of the absence of a genuine issue of material fact."); Fed. R. Civ. P. 56(d) (requiring the "nonmovant" to "show[] . . . that, for specified reasons, it cannot present facts essential to justify its opposition"). Despite recognizing the Plaintiff's challenge to "specifically articulate[] what material facts it hopes to obtain through discovery," the Defendants copy and paste the same facts and generalities that the Plaintiff already showed to be *im*material. Opp. 21–22; *see* Reply 3–10; ECF No. 27. The Defendants mention *Greater Baltimore* again, Opp. 21–22, not responding at all to the Plaintiff's showing that *Greater*

*Baltimore* only establishes that the Defendants' purported standing questions are irrelevant. *See* Reply 12–14. And the Defendants again offer four broad categories of discovery that they consider themselves "entitled to." Opp. 22. All remain as meritless as before:

- "[T]he issue of standing and on the cognizable harms suffered by Plaintiff (if any)." Opp. 22. Defendants do not explain what facts are relevant, and they still refuse to address binding circuit precedent establishing the Plaintiff's standing. *See* Reply 6–9.

- "[H]ow Plaintiff is organized, including what its 'special interest' actually is." Opp. 22. To the extent this question has any relevance, the Defendants have answered it: "The Plaintiff South Carolina Freedom Caucus ('Plaintiff') is a legislative special interest caucus as defined under S.C. Code Ann. ¶ [sic] 2-17-10(11)." Jordan Decl., ECF No. 18-1, ¶ 4. And they have conceded the undisputed fact that "[t]he South Carolina Freedom Caucus is a legislative special interest caucus" that "seeks to promote conservative principles." Memo. 4; *accord* Morgan Decl. ¶ 2.

- "[H]ow Plaintiff currently operates, fundraises, and spends money." Opp. 22. Irrelevant, as exhaustively explained. *See* Reply 4–9. "[W]hether the Plaintiff engages in *other* speech that the State has not (yet) banned has no relevance at all." *Id.* at 4.

- "[W]hat 'attacks' Plaintiff has faced and why it feels it cannot respond to those alleged attacks." Opp. 22. This category is equally irrelevant. Even if the Plaintiff had faced *no* attacks, a non-moribund statute facially restricts its speech and discriminates against its viewpoint. Either is enough for standing. Plus, the Defendants concede the undisputed fact that the Plaintiff's speech is in fact chilled. *See* Memo. 4–5.

Once again, the Defendants have failed to "state with precision the materials [they] hope[] to obtain with further discovery and exactly how [they] expect[] those materials to enhance [their] opposition to dispositive action." *Centennial*, 2000 WL 35508748, at *6 n.5.

### III.    Stripping the Plaintiff of more rights is not a proper remedy.

The Defendants' last-ditch effort is to insist that the Court's only option is to "remov[e] all language" in the statute "allowing for the creation and existence of legislative special interest caucuses." Opp. 24–25. It is passing unusual for a government defendant to ask a court to strike down unchallenged provisions. But the Defendants' tactic is transparent: if they cannot succeed in silencing the Plaintiff's speech, they want to stamp it out altogether. That route would exacerbate rather than remedy the First Amendment violation. And the Defendants offer the weakest possible evidence for their inseverability argument: a self-interested legislator's explanation 17 years later.

The main problem with the Defendants' proposal is that it would not remedy the First

Amendment violation. It would worsen it. On top of the Plaintiff being silenced, its members could not band together in association. The law would still discriminate based on viewpoint, just as alleged in the complaint: favored groups of legislators could associate and speak as caucuses. *See* Compl. ¶¶ 37–53. Thus, South Carolina law would continue to violate the First Amendment, for all the same reasons. So if severability law required the Defendants' proposal, the proper remedy would be to invalidate the State's definition of legislative caucuses to the extent that it excludes disfavored groups. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021) ("Article III grants federal courts the power to redress harms that defendants cause plaintiffs." (cleaned up)).

Of course, this extra redlining is unnecessary because the Defendants do not overcome the presumption of severability. Under South Carolina law, the default rule is to sever any invalid provision. *See Joytime Distributors & Amusement Co. v. State*, 338 S.C. 634, 650, 528 S.E.2d 647, 655 (1999) (emphasizing that courts "must be hesitant to declare any portion of a statute unconstitutional"); *Stone v. Traynham*, 278 S.C. 407, 409, 297 S.E.2d 420, 422 (1982) ("The separation and independence of each branch of government require that we go no further than absolutely necessary in declaring unconstitutional an action of the legislature."); *accord United States v. Miselis*, 972 F.3d 518, 541 (4th Cir. 2020) (emphasizing the "strong presumption of severability"). Thus, "[w]hen the residue of an Act, *sans* that portion found to be unconstitutional, is capable of being executed in accordance with the Legislative intent, independent of the rejected portion, the Act as a whole should not be stricken." *Joytime*, 338 S.C. at 649, 528 S.E.2d at 654.

The Defendants appear to concede that the rest of the 2006 act "is capable of being executed." And the Defendants cite no competent evidence of any legislative intent that the bill must rise or fall as a whole. Rather, the "intent to treat the several parts independently is . . . evident in the Title to the Act," *Joytime*, 338 S.C. at 649, 528 S.E.2d at 655, the first clause of which relates to "provid[ing] that [a legislative] caucus may be created based upon a special legislative interest." H. 3402, 116th Session, https://tinyurl.com/3cjwd5mm. That clause is "clearly separate from the next clause[s] of the Title providing for" limitations. *Joytime*, 338 S.C. at 649, 528 S.E.2d at 655. Nor should the Court "assume that the [state] legislature would prefer" to unconstitutionally

"restrict more speech." *Rappa v. New Castle Cnty.*, 18 F.3d 1043, 1073 (3d Cir. 1994).

The Defendants fail to overcome the presumption of severability. Their only support—a self-interested legislator's conclusory statement nearly two decades after the statute's enactment (Opp. 24)—is unsound. *See Creswick v. Univ. of S.C.*, 434 S.C. 77, 83, 862 S.E.2d 706, 709 (2021) ("[T]he Court may not look to the opinions of legislators or others concerned in the enactment of the law—expressed subsequent to enactment—to ascertain the intent of the legislature.").[4] The Defendants also confuse the evolution of a *bill*—which is what they purport to rely on—with "the historical evolution of the statute." Opp. 24; *see Mead Corp. v. Tilley*, 490 U.S. 714, 723 (1989) ("'[M]ute intermediate legislative maneuvers' are not reliable indicators of congressional intent."). And the Defendants omit the most relevant part of that evolution. After the Governor vetoed the bill—stating the same purported ethics concerns[5]—the General Assembly overrode his veto, demonstrating the legislative conviction that special interest caucuses should be recognized.

Again, none of this much matters to the Plaintiff, which either way seeks "[a] declaratory judgment that South Carolina's discriminatory treatment" of it "violates the United States Constitution" and "[a]n injunction requiring" equal treatment. Compl. Prayer for Relief ¶¶ 1–4. Whether the focus is the viewpoint discrimination in the 2006 act or the identical viewpoint discrimination in the pre-2006 law, the Plaintiff is entitled to an effective remedy. *See Brown v. Plata*, 563 U.S. 493, 538 (2011) ("Once invoked, the scope of a district court's equitable powers is broad, for breadth and flexibility are inherent in equitable remedies." (cleaned up)); *see also Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018) ("A plaintiff's remedy must be tailored to redress the plaintiff's particular injury."); Memo. 10 & n.2 (explaining associational right).

## CONCLUSION

The Court should grant summary judgment for the Plaintiff. The Court should also issue a permanent injunction, which the Defendants do not contest is warranted. *See* Memo. 18–20.

---

[4] *See* Alexander Thompson, *SC Statehouse Republicans see their divides aired on full display in contentious day*, Post & Courier (Jan. 19, 2023), https://tinyurl.com/ybak8n27 (noting that Rep. Hiott "eject[ed] [Freedom Caucus] members from the Republican Caucus").
[5] *See* Letter from Gov. Mark Sanford, https://tinyurl.com/ycuthnxe (May 29, 2006).

Respectfully submitted,

/s/ Christopher Mills

Gene P. Hamilton*
Reed D. Rubinstein**
AMERICA FIRST LEGAL FOUNDATION
300 Independence Ave. SE
Washington, DC 20003
Tel: (202) 964-3721
reed.rubinstein@aflegal.org

Christopher Mills (Fed. Bar No. 13432)
SPERO LAW LLC
557 East Bay St. #22251
Charleston, SC 29413
Tel: (843) 606-0640
cmills@spero.law

*admitted *pro hac vice*
**motion for admission
*pro hac vice* pending

*Counsel for Plaintiff*

May 5, 2023