IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| South Carolina Freedom Caucus,<br><br>                   Plaintiff,<br><br>vs.<br><br>Wallace H. Jordan, Jr.; J. David Weeks; Beth E. Bernstein; Paula Rawl Calhoon; Micajah P. Caskey, IV; Neal A. Collins; John Richard C. King; Robby Robbins; J. Todd Rutherford; and Leonidas E. Stavrinakis, *in their official capacities as members of the House of Representatives Legislative Ethics Committee*,<br><br>                   Defendants. | Civil Action No. 3:23-cv-795-CMC<br><br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 17)** |

This matter is before the court on motion of Plaintiff South Carolina Freedom Caucus ("Plaintiff" or "the Caucus") for summary judgment, filed March 15, 2023. ECF No. 17. Defendants, members of the South Carolina House of Representatives Legislative Ethics Committee ("Defendants"), filed a response on March 29, 2023, arguing the summary judgment motion should be stayed pending discovery. ECF No. 18. Plaintiff filed a reply on April 5, 2023. ECF No. 19. The court then entered an order informing the parties it intended to address the merits of the summary judgment motion and the need for any discovery at a hearing scheduled for May 11, 2023, and set a schedule for further briefing on the merits. ECF No. 27. Defendants filed a supplemental response on April 28, 2023. ECF No. 29. Plaintiff filed a reply on May 5, 2023. ECF No. 33. A hearing was held May 11, 2023. This order follows.

## BACKGROUND

Plaintiff South Carolina Freedom Caucus is a legislative special interest caucus comprised of members of the South Carolina House of Representatives. The stated mission of the Caucus is to promote conservative principles like the rule of law and equal protection for all citizens. As a legislative special interest caucus, the Caucus is subject to certain speech limitations as well as limitations on donations, solicitations, accepting gifts, and expenses. Because of those limitations, the Caucus filed suit, alleging three causes of action. Count I alleges South Carolina law violates Plaintiff's free speech rights by prohibiting the Caucus from engaging in "any activity that would influence the outcome of an election or ballot measure," but allowing other legislative caucuses to engage in speech and raising and spending money for such political speech.  S.C. Code Ann. § 2-17-10 (21); ECF No. 1 at 5, 7.  In Count II, the Caucus alleges a violation of its free speech rights based on discriminatory disclosure requirements that apply to special interest caucuses but not legislative caucuses. *Id.* at 8.  Finally, Count III alleges violations of Fourteenth Amendment rights under the Equal Protection Clause, asserting South Carolina law suppresses speech, or not, based on the speaker's membership in certain protected classes, including race or gender.  *Id.* at 9.

The Caucus seeks a declaratory judgment that South Carolina's statutes restricting legislative special interest caucuses violate the United States Constitution.  It also seeks to permanently enjoin the House Ethics Committee from enforcing challenged provisions of S.C. Code Ann. §§ 2-17-10(21), 8-13-1333(C), and 2-17-110(J).

**History of the Ethics Reform Act.**

The challenged provisions of South Carolina law are part of the Ethics Reform Act of 1991, as amended ("the Ethics Act"). The Act's purpose was to address corruption in the state legislature. As a result of an FBI investigation between 1989 and 1999, 17 members of the South Carolina General Assembly were arrested for bribery, extortion, or drug use. The Act placed limits on donations from lobbying firms and regulated how businesses and organizations employing lobbyists could entertain lawmakers.

a. *Section 2-17-10*

The 1991 Act defined "legislative caucus" as "(a) a committee of either house of the General Assembly controlled by the caucus of a political party or a caucus based on racial or ethnic affinity, or gender; (b) a party or group of either house of the General Assembly based on racial or ethnic affinity, or gender. However, each house may establish only one committee for each racial, ethnic-, or gender-based affinity." ETHICS, GOVERNMENT ACCOUNTABILITY, AND CAMPAIGN REFORM ACT, 1991 South Carolina Laws 1st Sp. Sess. Act 248 (H.B. 3743), S.C. Code Ann. § 2-17-10(11). There are four legislative caucuses in the House: the Republican Caucus, the Democratic Caucus, the Black Caucus, and the Women's Caucus.

According to the Ethics Act, "'Committee'" includes a party committee, *a legislative caucus committee*, a noncandidate committee, or a committee that is not a campaign committee for a candidate but that is organized for the purpose of influencing an election." S.C. Code Ann. § 8–13–1300(6) (emphasis added).

3

Designation as a "committee" under the South Carolina Ethics Act involves a
number of organizational, administrative, reporting, and funding requirements. For
example, any group that qualifies as a "committee" under the Act is required to: (1)
maintain records of contributions, contributors, and expenditures, S.C. Code Ann.
§ 8–13–1302; (2) file a statement of organization, S.C. Code Ann. §§ 8–13–1304,
1306; (3) file various certified campaign reports, S.C. Code Ann. § 8–13–1308; (4)
comply with bank account requirements, S.C. Code Ann. § 8–13–1312; (5) comply
with a $3,500 contribution limit, S.C. Code. Ann. § 8–13–1322[5]; (6) reject
anonymous contributions, S.C. Code Ann. § 8–13–1324; (7) comply with
prohibitions on certain expenditures or contributions, § 8–13–1332; (8) solicit
contributions in places other than on capitol grounds and capitol office complexes,
S.C. Code § 8–13–1336; (9) comply with the prohibition on personal use of
campaign funds, S.C. Code Ann. § 8–13–1348; (10) comply with dissolution
requirements, S.C. Code Ann. § 8–13–1368; (11) provide self-identification in
election-related communications, S.C. Code Ann. § 8–13–1354; (12) disclose
information required by contribution and expenditure reporting forms, S.C. Code
Ann. § 8–13–1360; (13) file a statement of inactivity when necessary, S.C. Code
Ann. § 8–13–1362; (14) comply with requirements concerning use of surplus funds,
S.C. Code Ann. § 8–13–1370; and (15) risk criminal or civil penalties for non-
compliance, S.C. Code §§ 8–13–1510, 1520.

*S.C. Citizens for Life, Inc. v. Krawcheck*, 759 F. Supp. 2d 708, 713–14 (D.S.C. 2010).[1]

A wave of amendments to the Ethics Act was introduced in 2005. Among the changes was

a proposal to add a new type of legislative caucus, a "legislative special interest caucus," to § 2-

17-10(11). Significant opposition was raised, with opponents arguing the specter of corruption.

Ultimately, in 2006, the Legislature passed a series of amendments.

---

[1] The court in *Krawcheck* determined the definition of "committee" was facially invalid and
unconstitutionally overbroad. *Id.* at 720. The Legislature has not amended the statute, but it
appears the Ethics Commission has determined to suspend enforcement of § 8-13-1308 with
respect to a political party's campaign account, Op. S.C. Att'y Gen. 2019 WL 3243935 (S.C.A.G.
June 4, 2019), and against political action committees or other outside groups. Lobbying, PACs,
& Campaign Finance: 50 State Handbook, § 42:71 (Oct. 2022).

Section 2-17-10(21) was added, providing a definition of a "legislative special interest caucus:"

> two or more legislators who seek to be affiliated based upon a special interest. Under no circumstances may a legislative special interest caucus engage in any activity that would influence the outcome of an election or ballot measure. Each legislative special interest caucus must register with the Clerk's Office of the Senate or House of Representatives in a manner mandated by the Clerk's Office. However, each legislative special interest caucus must provide, and the Clerk's Office must maintain a record of:
> (a) the name and purpose of the caucus;
> (b) the names of all caucus members; and
> (c) the date of creation, and dissolution, if applicable.
> The Clerk's Office must maintain these records for at least four years following the dissolution of the caucus. A legislative special interest caucus may include, but is not limited to, a representation of sportsmen and women desiring to enhance and protect hunting, fishing, and shooting sports.

§ 2-17-10(21).[2]

In 2006, when the definition of legislative special interest caucus was added, section § 8-13-1333(C), regarding such an entity's ability to solicit or accept contributions, was introduced:

> (C)(1) A legislative special interest caucus must not solicit contributions as defined in Section 8–13–100(9)[3], however, it may solicit funds from the general public for

---

[2] Section 2-17-10(11) was simultaneously amended to add a new part (c) that provided "'legislative caucus' does not include a legislative special interest caucus as defined in Section 2-17-10(21)."

[3] Section 8-13-100(9) defines "contribution" as
> a gift, subscription, loan, guarantee upon which collection is made, forgiveness of a loan, an advance, in-kind contribution or expenditure, a deposit of money or anything of value made to a candidate or committee, as defined in Section 8-13-1300(6), for the purpose of influencing an election; or payment or compensation for the personal service of another person which is rendered for any purpose to a candidate or committee without charge. "Contribution" does not include volunteer
Footnote Continued . . .

the limited purpose of defraying mailing expenses, including cost of materials and postage, and for members of the legislative special interest caucus to attend regional and national conferences. Legislative special interest caucus members may attend a regional or national conference only if the conference is exclusively comprised of legislative special interest caucus counterparts and convenes for the purpose of interacting and exchanging ideas among caucus members and the conference is sponsored by a national organization with which the legislative special interest caucus is affiliated. Attendance at any conference is prohibited if the conference is sponsored by any lobbying group or extends an invitation to persons other than legislators. Under no circumstances may a legislative special interest caucus accept funds from a lobbyist. Each special interest caucus must submit a financial statement to the appropriate supervisory office by January first and July first of each year showing the total amount of funds received and total amount of funds paid out. It must also maintain the following records, for not less than four years, which must be available to the appropriate supervisory office for inspection:

    (a) the total amount of funds received by the legislative special interest caucus;

    (b) the name and address of each person or entity making a donation and the amount and date of receipt of each donation;

    (c) all receipted bills, canceled checks, or other proof of payment for any expenses paid by the legislative special interest caucus.

(2) A legislative special interest caucus may not accept a gift, loan, or anything of value, except for funds permitted in subsection (C)(1) above.

GENERAL ASSEMBLY, 2006 South Carolina Laws Act 344 (H.B. 3402).

Section § 2-17-110 (J) was also added in 2006.  This section applied to lobbyists: "(J) A lobbyist, a lobbyist's principal, or a person acting on behalf of a lobbyist or a lobbyist's principal shall not offer or provide contributions or any other type of funds or financial assistance to a legislative special interest caucus as defined in Section 2–17–10(21)."  GENERAL ASSEMBLY, 2006 South Carolina Laws Act 344 (H.B. 3402).

---

personal services on behalf of a candidate or committee for which the volunteer receives no compensation from any source.

6

When HB 3402 was passed by the General Assembly and sent to the Governor's desk for signature, he vetoed it, reasoning a special interest caucus would erode the reforms of the 1990s. The General Assembly overrode the Governor's veto, and the new provisions went into effect May 23, 2006.

At the hearing on May 11, counsel for Defendants reported fifteen House legislative special interest caucuses have registered pursuant to § 2-17-10(21): the Rutherford Freedom Caucus, the May Freedom Caucus[4], SC Energy Caucus, House Utility Ratepayers Caucus, Family Caucus, Legislative Prayer Caucus, Sportsman's Caucus, SC General Aviation Caucus, Legislative Special Interest Caucus, Women's Caucus, Workforce and Affordable Housing Caucus, Upstate Caucus, Girl Scout Boy Scout Caucus, Freshman Caucus, and Rural Caucus.

Opinions issued by the House and Senate Ethics Committees explained to legislators the limitations in the statutes. An advisory opinion by the Senate Ethics Committee in 2016 cautioned members who wished to join a legislative special interest caucus of restrictions, including a prohibition on engaging in any activity that would influence the outcome of an election or ballot measure; a requirement to register with the Clerk's Office; a prohibition on soliciting contributions other than to defray mailing expenses or attend legislative conferences; requirements to maintain records regarding funds received and paid out; and a prohibition on accepting anything of value except funds for mailing or conferences. ECF No. 17-2 at 10-12. Legislators were cautioned

---

[4] Defendants asserted at the hearing that South Carolina Freedom Caucus, Plaintiff in this case, has been renamed May Freedom Caucus.

violations could be considered a breach of ethics laws, subject to the penalty provisions of Senate Rules and S.C. Code Ann. § 8-13-1520. In 2017, the House Ethics Committee published an advisory opinion noting legislative special interest caucuses are not included in groups permitted to receive invitations from a lobbyist principal. *Id.* at 14-17. The opinion quoted from Senate Ethics Advisory Opinion 2016-1 that "these statutes [S.C. Code Ann. §§ 2-7-10(21) and 8-13-1333(C)(1)] specifically and expressly limit the activities of a legislative special interest caucus and its members." ECF No. 17-2 at 16.

**Ethics Act as it currently applies**.

Currently, a party-, race-, or gender-based legislative caucus organized pursuant to S.C. Code. Ann. § 2-17-10(11) is permitted to engage in political speech and raise money for that speech in ways that special interest caucuses under § 2-17-10(21) are not. Legislative caucuses may solicit and receive donations of $3,500 per person. S.C. Code Ann. §§ 8-13-1322, 1333, 1300. Party caucuses can give $50,000 directly to a candidate, *id.* § 1316, and race- or gender-based caucuses can give $3,500, *id.* § 1314. These caucuses may also act as a clearinghouse for receiving and disbursing candidate funds. *Id.* § 1340. Contributors who gave more than $100 in a cycle must be disclosed. *Id.* § 1360(A)(4). And members of these caucuses can accept lodging, transportation, entertainment, food, and beverages provided by lobbyists' principals under certain circumstances. S.C. Code Ann. § 2-17-90(A)(1); *see* ECF No. 17-2 at 4, House Ethics Advisory Opinion 93-30 at 1 (Lobbyists' principals may "entertain legislative members when invited as part of the entire membership of," as relevant, "those caucuses based on racial or ethnic affinity, gender, or political party."). The legislative caucuses can spend unlimited sums on elections and ballot measures. For

8

express advocacy within 45 days of an election, "there is no limit on how much" these caucuses can spend, and they "do[] not have to report as contributions the funds" "for such communications." ECF No. 17-2 at 6, House Ethics Advisory Opinion 2006-1 at 1.

Legislative special interest caucuses, however – those groups of legislators based on "special interests" – may not "engage in any activity that would influence the outcome of an election or ballot measure." S.C. Code Ann. § 2-17-10(21). Special interest caucuses may not "solicit contributions" except "for the limited purpose of defraying mailing expenses, including cost of materials and postage, and for members of the legislative special interest caucus to attend regional and national conferences." S.C. Code Ann. § 8-13-1333(C)(1).  Permissible conferences are narrowly defined, as they must be "exclusively comprised of legislative special interest caucus counterparts" and not attended by "persons other than legislators." *Id.* Along with the ban on soliciting contributions, South Carolina law forbids special interest caucuses from "accept[ing] a gift, loan, or anything of value." *Id.* § 1333(C)(2). Nor may lobbyists offer their members "contributions or any other type of funds or financial assistance." S.C. Code Ann. § 2-17-110(J). And these caucuses must disclose *all* "donation[s]" and "expenses," regardless of amount. S.C. Code Ann. § 8-13-1333(C)(1)(b), (c).

The House Legislative Ethics Committee is empowered to enforce these rules with investigations, hearings, sanctions, and referrals for criminal prosecution. *Id.* § 8-13-530. If the Committee finds a violation has occurred, it may "administer a public reprimand," "require the respondent to pay a civil penalty," "recommend expulsion of the member," and refer for criminal prosecution. *Id.* § 8-13-540(D)(6)(c); *see* S.C. House of Representatives Rule 4.16(F) (same). A

9

violation is a misdemeanor punishable by one-year imprisonment and a fine. S.C. Code Ann. § 8-13-1520(A); *see* S.C. Code Ann. § 2-17-130. Violators are also subject to other fines administered by the Ethics Committee. S.C. Code Ann. § 8-13-130.[5]

## STANDARD

**Summary Judgment**.  Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts."  *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987).  The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact. *Wai Man Tom v. Hospitality Ventures, Inc.*, 980 F.3d 1027, 1037 (4th Cir. 2020). Once the movant has made this threshold demonstration, the non-moving party must demonstrate specific, material facts that give rise to a genuine issue in order to survive summary judgment.  *Id.*

**Summary Judgment Prior to Discovery**. Under Fed. R. Civ. P. 56(d), if a nonmovant shows by affidavit or declaration that, for specific reasons, it cannot present facts essential to

---

[5] The House Ethics Committee members are proper Defendants here, as that committee has enforcement authority for violations of statute and House or Senate rules.  *Id.* at § 8-13-540. Although the South Carolina Ethics Commission performs the investigation of statutory violations on referral from the proper Ethics Committee, the appropriate Ethics Committee receives a recommendation from the Ethics Commission, determines whether to concur or not, and renders advisory opinions, convenes formal hearings, acts as the finders of fact at any hearing, and issues final orders.

justify its opposition to summary judgment, the court "may" (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order. Fed. R. Civ. P. 56(d)(1)-(3).

In general, summary judgment should be granted only after adequate time for discovery. *McCray v. Maryland Dept. of Transp., Maryland Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014). A Rule 56(d) motion "must be granted where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Id.* at 483-84 (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 n.5 (1986)). Such motions are "broadly favored and should be liberally granted." *Id.* However, a court may deny a Rule 56(d) motion when the information sought would not by itself create a genuine issue of material fact sufficient to survive summary judgment. *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014); *see also Poindexter v. Mercedes-Benz Credit Corp.,* 792 F.3d 406, 411 (4th Cir. 2015) (affirming implicit denial of motion under Rule 56(d) when the plaintiff did not explain how the information sought "could possibly create a genuine issue of material fact sufficient for her to survive summary judgment, or otherwise affect the court's analysis."); *Nader v. Blair,* 549 F.3d 953, 961-62 (4th Cir. 2008) (holding discovery prior to summary judgment was not necessary when the discovery sought was on factual issues "not at issue in the motion for summary judgment"); *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995) ("The denial of a Rule 56(f) [now Rule 56(d)] motion should be affirmed where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment."). The *Pisano*

court did just that, affirming a denial of a Rule 56(d) motion when "the question before [it] [wa]s principally one of law, and there [wa]s a wealth of case law assessing similar challenges." *Id.*

**<u>Defendants' Rule 56(d) Request</u>.**

Defendants filed a Rule 56(d) Declaration with their initial response to the summary judgment motion. See ECF No. 18-1 (Decl. of Rep. Jordan). The Declaration contends discovery is required to examine issues of standing and injury in fact; the relief desired, and whether the statutes at issue "support sufficiently important government interests." *Id.* at ¶ 18. More specifically, Defendants claim they need discovery "at least on: the issue of standing and on the cognizable harms suffered by Plaintiff (if any); how Plaintiff is organized, including what its "special interest" actually is; how Plaintiff currently operates, fundraises, and spends money; what 'attacks' Plaintiff has faced and why it feels it cannot respond to those alleged attacks." ECF No. 29 at 22.

In support, Defendants cite *Greater Baltimore Center for Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore*, 721 F.3d 264 (4th Cir. 2013). There, the Fourth Circuit considered a district court's grant of summary judgment finding Baltimore's City Ordinance facially unconstitutional and permanently enjoining any action to enforce it. *Id.* at 279. The Fourth Circuit reversed, holding the district court denied the City "essential discovery" in its "rush to

12

summary judgment." *Id.* at 280 ("Chief among its errors was the district court's award of summary judgment to the Center without allowing the City any discovery.").[6]

Plaintiff contends Defendants "point to no material facts for which they need discovery." ECF No. 19 at 5. It notes this case involves a facial challenge, and Defendants were not able to identify any fact that could be obtained through discovery that could affect any legal issue before the court. *Id.* at 13. Plaintiff asserts *Greater Baltimore* is of no help to Defendants, because the rule still stands that the party must demonstrate how the discovery will rebut the movant's arguments for summary judgment.

None of the items on which Defendants seek discovery bears on the constitutionality of the challenged statutes, but instead Defendants seek to wade into the weeds of Plaintiff's formation and operation. Defendants, however, concede Plaintiff qualifies as a legislative special interest caucus. ECF No. 18-1 at ¶ 4. Discovery is not necessary for the court to decide whether laws applying to legislative special interest caucuses violate the United States Constitution.

Defendants' argument for discovery is primarily focused on standing. To establish Article III standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct ... and (3) that is likely to be redressed by a favorable judicial decision." *Kenny v. Wilson*, 885 F.3d 280, 287 (4th Cir. 2018) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338

---

[6] Included in this "essential discovery" was information about the "distinctive characteristics of Baltimore's various limited-service pregnancy centers," so that the court could "properly evaluate the Ordinance's validity in all or most of its applications." *Id.* at 282. Discovery was also sought by the defendant to "augment the record with evidence to support its existing justification" for its ordinance. *Id.*

(2016)).  When a case presents a constitutional challenge under the First Amendment, however, rigid standing requirements are relaxed. *Cooksey v. Futrell*, 721 F.3d 226, 235 (4th Cir. 2013).

The Fourth Circuit has recognized two ways a plaintiff may establish the requisite ongoing injury when seeking to enjoin government policies alleged to violate the First Amendment. *See Kenny,* 885 F.3d at 288; *Cooksey*, 721 F.3d at 235–38. First, they may show that they intend to engage in conduct at least arguably protected by the First Amendment but also proscribed by the policy they wish to challenge, and that there is a "credible threat" that the policy will be enforced against them when they do so. *Kenny*, 885 F.3d at 288; *see Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014); *N.C. Right to Life, Inc. v. Bartlett*, 168 F.3d 705, 710 (4th Cir. 1999) ("When a plaintiff faces a credible threat of prosecution . . . he has standing to mount a pre-enforcement challenge to that statute. . . . A non-moribund statute that facially restricts expressive activity by the class to which the plaintiff belongs presents a credible threat."). Second, they may refrain from exposing themselves to sanctions under the policy, instead making a "sufficient showing of 'self-censorship'" – establishing, that is, a "chilling effect" on their free expression that is "objectively reasonable." *Cooksey*, 721 F.3d at 235-36 (quoting *Benham v. City of Charlotte, N.C.*, 635 F.3d 129, 135 (4th Cir. 2011)). A claim based on chilling speech is cognizable only when the asserted chill would likely deter a person of ordinary firmness from the exercise of First Amendment rights. *Speech First, Inc. v. Sands,* __ F.4th __, 2023 WL 3729333, at *5 (4th Cir. May 31, 2023). Allegations of subjective chill are inadequate and cannot demonstrate injury in fact: the self-censorship must be objectively reasonable. *Id.*

14

Either way, a credible threat of enforcement is critical; without one, a putative plaintiff can establish neither a realistic threat of legal sanction if he engages in the speech in question, nor an objectively good reason for refraining from speaking and "self-censoring" instead. *Abbott v. Pastides*, 900 F.3d 160, 176 (4th Cir. 2018); *see also Speech First,* 2023 WL 3729333, at *7. These standards must, of course, be interpreted in light of the "fundamental requirements of Article III," which bar plaintiffs from "manufactur[ing] standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Am. Fed'n of Gov't Emps. v. Off. of Special Couns.*, 1 F.4th 180, 187 (4th Cir. 2021) (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013)).

Defendants assert Plaintiff has failed to establish standing to challenge the constitutionality of the statutes because it has not established injury-in-fact caused by the Ethics Committee. Defendants contend Plaintiff has not been the subject of an enforcement action by the Ethics Committee, and the Ethics Committee has never issued an advisory opinion concerning the prohibition on a legislative special interest caucus's ability to engage in an activity that would influence the outcome of an election or ballot measure.[7]

---

[7] The court notes, however, the House Ethics Committee, in its 2017 advisory opinion regarding special interest caucuses, quoted the Senate Ethics Committee Advisory Opinion 2016-1 which stated §§ 2-17-10(21) and 8-13-1333(C)(1) "specifically and expressly limit the activities of a legislative special interest caucus and its members" and "under no circumstances may a legislative special interest caucus accept funds from a lobbyist." ECF No. 17-2 at 16. Moreover, declarations of Ethics Committee members aver:

Footnote Continued . . .

15

Plaintiff, however, alleges "[i]f not for these discriminatory laws and the threat of criminal penalties and other sanctions, the Freedom Caucus would speak on political issues, including elections and ballot measures. It would also solicit funds to enable speech on these issues." ECF No. 1 at ¶ 32.  It also alleges it "would also be able to engage in more political speech if its small donors were not threatened with public disclosure. But because of South Carolina law, the Caucus and its members risk investigation, reprimands, expulsion, and criminal prosecution if they speak in the same ways that favored legislative caucuses and their members speak." *Id.* at ¶ 33.

An earlier First Amendment pre-enforcement challenge to provisions of the Ethics Act, S.C. Code Ann. §§8-13-1300(6)-1300(31)(c), sought a declaration that certain provisions were both facially unconstitutional and as applied.  The district court dismissed the action as unripe, finding the Ethics Commission had not taken any action against the plaintiff advocacy organization, and there was no imminent threat of such action. *S.C. Citizens for Life, Inc. v.*

_____

"Among the responsibilities of the Ethics Commission is to ensure orderly elections.  This is done, primarily, through enforcement of the . . . Ethics Act . . . The statutes were passed . . . to increase transparency into elections, hold donors and fundraisers accountable, and prevent corruption . . . These are important and legitimate interests of the State of South Carolina."  ECF No. 29-2 at ¶¶ 5-8 (Jordan Decl.).

"The protections specifically included in H. 3402 are still necessary to accomplish the governmental goals listed above."  ECF No. 29-3 at ¶ 6 (Hiott Decl.).

"Transparency, accountability, and the prevention of corruption continue to be important governmental interests that the House Ethics Committee is tasked with upholding and enforcing. ECF No. 29-4 at ¶ 8 (Weeks Decl.).

16

*Krawcheck*, C.A. No. 4:06-cv-2773, 2007 WL 9752772, at *5 (D.S.C. Sept. 27, 2007). The plaintiff appealed and the Fourth Circuit reversed, finding a credible threat of prosecution. *S.C. Citizens for Life, Inc. v. Krawcheck*, 301 F. App'x 218, 22 (4th Cir. 2008) ("With the statute in place, SCCL may not distribute its voter guide unless it undertakes significant compliance measures or is willing to risk prosecution. And the threat of prosecution is sufficiently credible since the South Carolina statute facially restricts SCCL's expressive activities.").

The court finds discovery is unnecessary to determine whether Plaintiff has standing to bring this constitutional challenge to the Ethics Act's treatment of special interest caucuses. Plaintiff has shown it would engage in conduct protected by the First Amendment but also proscribed by the provisions of the Ethics Act it is challenging, and that there is a "credible threat" that the Ethics Act will be enforced against it if it does so.[8] Unlike the plaintiff in *Speech First*, who had no real threat of sanctions or discipline, here the penalties include public reprimands, sanctions, civil penalties, expulsion, and referral for criminal prosecutions, for which a legislator could receive a one-year term of imprisonment and imposition of a fine. Plaintiff has shown, therefore, the "asserted chill would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Speech First*, 2023 WL 3729333, at *5. Binding precedent confers standing on one whose speech is facially restricted by the government. See *N.C. Right to Life, Inc.*

---

[8] Counsel for Defendants acknowledged at the hearing the directly mentioned Sportsmen's legislative special interest caucus would not be allowed to support or oppose a ballot measure regarding bear hunting under §2-17-10(21). ECF No. 39 at 28 (hearing tr.); see ECF No. 29-3 at ¶ 4 (Hiott Decl.).

*v. Bartlett*, 168 F.3d 705, 710 (4th Cir. 1999) ("[T]he statute's mere existence risks chilling First Amendment rights.").[9]

## DISCUSSION

### Count 1: First Amendment Free Speech challenge

South Carolina's prohibition on legislative special interest caucuses "engag[ing] in any activity that would influence the outcome of an election or ballot measure," S.C. Code Ann. § 2-17-10(21), implicates First Amendment rights.  Speech pertaining to elections "occupies the core of the protection afforded by the First Amendment." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 346 (1995); *see also Grimmett v. Freeman*, 59 F.4th 689, 695 n.8 (4th Cir. 2023) (quoting *Buckley v. Am. Const. Law Found., Inc.*, 525 U.S. 182, 186-87 (1999)) ("First Amendment concerns are at their 'zenith' when a law regulates 'core political speech.'"); *Mills v. Alabama*, 384 U.S. 214, 218 (1966) ("[T]here is practically universal agreement that a major purpose of [the First] Amendment was to protect the free discussion of governmental affairs," including "discussions of candidates.").

South Carolina's related restrictions on legislative special interest caucus solicitations, expenditures, and contributions also implicate core speech rights.  S.C. Code Ann. § 8-13-1333(C) ("A legislative special interest caucus must not solicit contributions as defined in Section 8-13-

---

[9] The court recognizes facial challenges are disfavored. *Speech First,* 2023 WL 3729333, at *5 (citing *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008)). However, facial challenges are appropriate where "no set of circumstances exists under which" the law would be valid, *i.e.*, the law is unconstitutional in all of its applications.  *Wash. State Grange*, 552 U.S. at 449.

18

100(9) . . . Under no circumstances may a legislative special interest caucus accept funds from a lobbyist. . . . A legislative special interest caucus may not accept a gift, loan, or anything of value, except for funds permitted in subsection (C)(1) above."); § 2-17-110(J) ("A lobbyist, lobbyist's principal, or person acting on behalf of a lobbyist or lobbyist's principal shall not offer or provide contributions or any other type of funds or financial assistance to a legislative special interest caucus as defined in Section 2-17-10(21).").[10]

"[C]ontribution and expenditure limitations [on political speech] operate in an area of the most fundamental First Amendment activities" – only amplified by the fact that "virtually every means of communicating ideas in today's mass society requires the expenditure of money." *Buckley v. Valeo*, 424 U.S. 1, 14, 19 (1976) (superseded by statute on other grounds); *see Randall v. Sorrell*, 548 U.S. 230, 246 (2006) (plurality opinion) ("[C]ontribution limits, like expenditure limits, implicate fundamental First Amendment interests, namely, the freedoms of political expression and political association."); *Citizens Against Rent Control/Coal. for Fair Hous. v. City of Berkeley*, 454 U.S. 290, 299 (1981) ("Placing limits on contributions which in turn limit

---

[10] According to the Fourth Circuit, a ban on contributions from lobbyists is constitutional if it applies in the same way to all who may receive such contributions. *Preston v. Leake*, 660 F.3d 726 (4th Cir. 2011). *Preston* applied the "closely drawn" standard to North Carolina's ban prohibiting lobbyists from making campaign contributions to candidates for the North Carolina General Assembly or the Council of State. *Id.* at 729. The ban here, however, prohibits all contributions from lobbyists only to special interest caucuses. § 2-17-110(J). Legislative caucuses are allowed to receive contributions from lobbyists, subject to certain restrictions. § 2-17-90(A)(1). Therefore, the prohibition here is not "closely drawn" to avoid unnecessary abridgement of the freedoms of speech and association, as some groups of legislators are treated differently from others. *Preston*, accordingly, cannot save § 2-17-110(J) from a finding of unconstitutionality.

19

expenditures plainly impairs freedom of expression."); *Federal Election Comm'n v. Colorado Republican Fed. Campaign Comm.*, 533 U.S. 431, 440 (2001) ("Spending for political ends and contributing to political candidates both fall within the First Amendment's protection of speech and political association."). In short, "[t]here is no right more basic in our democracy than the right to participate in electing our political leaders." *McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 191 (2014) (plurality opinion).

By prohibiting special interest caucuses from engaging in election-related speech, making expenditures for that speech, and soliciting contributions for that speech, South Carolina's law operates as "a ban on speech." *See Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 339 (2010). "The First Amendment has its fullest and most urgent application to speech uttered during a campaign for political office," and "political speech must prevail against laws that would suppress it, whether by design or inadvertence." *Id.* at 339-40.

a. <u>Strict scrutiny applies to restrictions on political speech and to expenditure and solicitation bans</u>

The First Amendment protects speech along a spectrum so that laws receive different levels of scrutiny depending on the type of regulation and the justifications and purposes underlying it. *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019). Laws that burden political speech are subject to strict scrutiny. *Id.* at 248-49; *Citizens United*, 558 U.S. at 340; *Arizona Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 734 (2011). This strict scrutiny standard also applies to expenditure and solicitation bans. *See id.* (expenditure restrictions*); Williams-Yulee v. Florida Bar*, 575 U.S. 433, 442–43 (2015) (solicitation ban). This implicates S.C. Code Ann. § 2-17-

20

110(21)'s restriction on speech regarding the outcome of an election or ballot measure, and § 8-13-1333(C)'s ban on soliciting contributions from the public for any purpose other than defraying mailing expenses and attending conferences.[11]

In addition, the Ethics Act's content-based trigger in § 2-17-10(21), regarding engaging in activity that would influence the outcome of an election or ballot measure, would independently require strict scrutiny.[12] *See Reed v. Town of Gilbert*, 576 U.S. 155, 165 (2015) ("A law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of 'animus toward the ideas contained in the regulated speech.'" (quoting *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429 (1993)). "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Id.* at 163. As explained, special interest caucuses may not engage in speech "that would influence the outcome of an election or ballot measure." S.C. Code Ann. § 2-17-10(21). And they may not raise funds to engage in speech unless it is the

---

[11] Defendants assert intermediate scrutiny applies to challenges to contribution limits. ECF No. 29 at 4-5. However, cases cited by Defendants, though citing the intermediate scrutiny standard, apply it to *making* contributions, not *soliciting* contributions. Section 8-13-1333(C) discusses only soliciting contributions. There is no explicit provision challenged in this case regarding the ability of special interest caucuses to make contributions, although this may be implicated in § 2-17-10(21)'s ban on "any activity that would influence the outcome of an election or ballot measure." To the extent such a provision requires the application of immediate scrutiny, the court finds it cannot meet such a standard as it also fails strict scrutiny (discussed *infra*).

[12] Plaintiff also asserts the challenged statutes discriminate on the basis of viewpoint. The court disagrees. Legislative special interest caucuses (including, but not limited to the Freedom Caucus, Plaintiff here) might advance any number of viewpoints regarding a ballot measure or election; however, no matter the viewpoint expressed, they are restricted from doing so by statute.

21

speech permitted by the State – *e.g.*, sending mailings without any connection to an election. S.C. Code Ann. § 8-13-1333(C)(1). The First Amendment prohibits government efforts to control "the relative ability of individuals and groups to influence the outcome of elections." *Citizens United*, 558 U.S. at 350.

> i. *The challenged statutes do not survive the application of strict scrutiny.*

Applying strict scrutiny, speech regulations "are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 163. To satisfy this test, it is Defendants' burden to show that §§ 2-17-10(21) and 8-13-1333(C) "further a compelling interest and [are] narrowly tailored to that end." *Id.* at 171.

Defendants contend the restrictions on a legislative special interest caucus are necessary to avoid *quid pro quo* corruption. They assert South Carolina's recent history of corruption via the Fat and Ugly Caucus led the Legislature to place limits on the special interest caucuses when they were created in 2006. ECF No. 29 at 10, 12.[13] The Legislature sought to "reduc[e] the opportunity

---

[13] According to Defendants, the Fat and Ugly Caucus "previously appeared to operate as a form of legislative special interest caucus," was "comprised of about 40 legislators and akin to a modern-day legislative special interest caucus." *Id.* at 10. It "coerced lobbyists to fund its Thursday lunches or face having the bill the lobbyists were supporting killed by members of the caucus." Id. After a federal investigation, seventeen members of the Legislature, including members of the Fat and Ugly Caucus, were convicted of crimes including bribery and extortion. After this scandal, the Legislature passed the Ethics Act. *Id.* at 10-11.

for legislators to act, not on behalf of the public at large, but on behalf of special interests or the legislators themselves." *Id*. at 14.

The court agrees that preventing corruption is a compelling state interest. *McCutcheon*, 572 U.S. at 206 (identifying "only one legitimate governmental interest" sufficient to restrict campaign contributions: "preventing corruption or the appearance of corruption.").[14]   The statutes at issue here, however, are vastly overinclusive because they ban *all* speech by special interest caucuses regarding ballot measures and elections, and ban solicitations and limit expenditures. At the same time, they are underinclusive with respect to the claimed goal of avoiding *quid pro quo* corruption, as they do not apply to legislative caucuses. "As the Supreme Court has recognized," "'underinclusiveness can raise doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint.'" *Grimmett*, 59 F.4th at 696 n.9 (quoting *Williams-Yulee*, 575 U.S. at 448). Defendants do not attempt to explain why permitting legislative caucuses to speak and raise money (and be entertained by lobbyists) does not equally implicate the interests they assert.[15]  Nor do Defendants "specifically identify an actual problem in need of solving," *Brown v. Entertainment Merchants Ass'n.*, 564 U.S. 786, 799 (2011),

---

[14] Plaintiff contends Defendants' purported worry about corruption is disingenuous in light of the Legislature's failure to amend the Ethics Act after Judge Wooten declared the definition of "committee" in § 8-13-1300(6) unenforceable, leaving outside groups free to raise and spend funds to influence elections with no limits.  ECF No. 33 at 9; *see Krawcheck*, 759 F. Supp. 2d at 720.

[15] Legislative caucuses are not required to report contributions used for express advocacy within 45 days of an election.  § 8-13-1300(7).

23

with caucuses arranged around interests other than party, race, or gender.  Thus, Defendants cannot show that the ban is narrowly tailored to serve a compelling government interest.[16]

Defendants also fail to meet the least-restrictive-means test. *Ashcroft v. ACLU*, 542 U.S. 656 (2004). Under this test, if a less restrictive alternative would serve the government's purpose, the government "*must* use that alternative."  *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 813 (2000) (emphasis added); *see Ashcroft*, 542 U.S. at 665 ("A statute that effectively suppresses a large amount of speech . . . is unacceptable if less restrictive alternatives would be at least as effective in achieving the legitimate purpose the statute was enacted to serve."). And it is a "nonnegotiable requirement in this Circuit" that "actual evidence in the legislative record [demonstrates] that lesser restrictions will not do." *People for the Ethical Treatment of Animals, Inc. v. North Carolina Farm Bureau Federation, Inc.*, 60 F.4th 815, 832 (4th Cir. 2023). "Before a State may pass such expansive speech restrictions, this Circuit's precedent requires it to *produce* evidence demonstrating that it seriously undertook to utilize existing laws or attempted to use less intrusive tools readily available to it to achieve the proffered aims." *Id.* at 832.

---

[16] Defendants argue Plaintiff was not required to form a special interest caucus, and could have formed another type of group, such as a political action committee, a legislative caucus (though that would require becoming a political party), or a §501(c)(3) organization if it wished to be free from the restrictions applicable to a special interest caucus. Plaintiff asserts alternative channels of communication, such as formation of a different type of group, are irrelevant, as this is not a time, place, or manner restriction on speech.  Further, it notes "that other venues and opportunities are available" does not eliminate the injury from a "denial of a particular opportunity to express one's views." *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 461 (4th Cir. 2005).

24

But, Defendants have no such evidence. "If the First Amendment means anything, it means that regulating speech must be a last – not first – resort." *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 373 (2002). Rather than take the route of applying the same disclosure rules and financial limits to special interest caucuses that apply to legislative caucuses, the State banned special interest caucuses from speaking on elections or ballot measures at all. *Cf. McCutcheon*, 572 U.S. at 223 ("[D]isclosure often represents a less restrictive alternative to flat bans on certain types or quantities of speech."). Defendants have no evidence to support this approach or to show that the ban must be applied to advance some governmental interest of the highest order.

As noted by Plaintiff, "the House Republican Caucus may speak, while the Freedom Caucus may not. The House Democratic Caucus may speak, but not the Progressive Caucus. The Black Caucus and the Women's Caucus may speak, but not the Family, Pride, or Jewish Caucuses." ECF No. 17-1 at 3. The fact that the State allows legislative caucuses to speak, solicit, and spend money in ways that special interest caucuses may not proves that banning the special interest caucuses' speech is not the least restrictive means of furthering any interest. *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993) (underinclusiveness suggests the government's "interests could be achieved by narrower [policies]"); *Cahaly v. Larosa*, 796 F.3d 399, 405 (4th Cir. 2015) (underinclusiveness leaves "appreciable damage to the government's interest unprohibited."). Whatever interests the State may have in preventing corruption or providing disclosure are evidently addressed by the legal regime that applies to legislative caucuses. "In light of this underinclusiveness," Defendants cannot meet their "burden to prove that [the law] is narrowly tailored to further a compelling government interest." *Reed*, 576

U.S. at 172. Thus, the content speech ban in § 2-17-10(21) and restrictions based on solicitations and expenditures in § 8-13-1333(C) fail strict scrutiny.

Plaintiff also asserts its rights to freedom of association are compromised by the challenged statutes. South Carolina law generally permits individual legislators to engage in speech, solicit contributions, and make expenditures. However, once two or more legislators form a special interest caucus, they are restricted in their ability to pursue these activities and to speak. Further, forming a special interest caucus places restrictions on these groups of legislators that do not apply to legislative caucuses formed around a political party, race/ethnicity, or gender. "To place a Spartan limit—or indeed any limit—on individuals wishing to band together to advance their views," "while placing none on individuals acting alone, is clearly a restraint on the right of association." *Citizens Against Rent Control*, 454 U.S. at 296. "Implicit in the right to engage in activities protected by the First Amendment is a corresponding right to associate with others." *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 647 (2000) (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984)); *see Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 68 (2006) ("The right to speak is often exercised most effectively by combining one's voice with the voices of others."); *Jaycees*, 468 U.S. at 622 ("According protection to collective effort on behalf of shared goals is especially important in preserving political and cultural diversity and in shielding dissident expression from suppression by the majority."); *Citizens Against Rent Control*, 454 U.S. at 296 ("[T]he freedom of association is diluted if it does not include the right to pool money through

26

contributions, for funds are often essential if advocacy is to be truly or optimally effective." (quoting *Valeo*, 424 U.S. at 65-66).[17]

Individual legislators can give a candidate for election to statewide office $3500 and $1000 for any other office. § 8-31-1314(A). However, a group of individual legislators, once identified as a special interest caucus, may not give any amount to influence an election or ballot measure. § 2-17-10(21). Further, legislative caucuses do not have the same restrictions on engaging in activities to influence elections or ballot measures. The court acknowledges state interests in preventing corruption, increasing transparency into the electoral process, and holding candidates, elected officials, and donors accountable. However, Defendants have not come forward with any argument or evidence to support different requirements for different sets of legislators. Although they argue the statutes are narrowly tailored to include election-related issues, Defendants do not explain why special interest caucuses organized around an interest other than political party, race/ethnicity, or gender must be so curtailed while other legislative caucuses or legislators are not. A legitimate concern about corruption, without showing how others could not be similarly corrupted, is insufficient.

---

[17] It makes no difference that legislative caucuses are a creation of state law: states are not "free to define the rights of their creatures without constitutional limit." *First Nat'l Bank of Bos. v. Bellotti*, 435 U.S. 765, 778 n.14 (1978); *see, e.g.*, *Citizens United*, 558 U.S. at 351 ("It is rudimentary that the State cannot exact as the price of" organizing a group "the forfeiture of First Amendment rights." (citing *Austin v. Michigan Chamber of Comm.*, 494 U.S. 652, 680 (1990) (Scalia, J., dissenting)); *Consol. Edison Co. of N.Y. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 530, 533–34 (1980) (rejecting proposition that entity's "heavily regulated" status deprived it of First Amendment rights).

**<u>Count II: First Amendment Free Speech challenge to Discriminatory Disclosure</u>**
**<u>requirements</u>**

Plaintiff next seeks to invalidate disclosure requirements for special interest caucuses, as set forth in S.C. Code Ann. § 8-13-1333(C)(1) ("Each special interest caucus must . . . maintain the following records for not less than four years, which must be available to the appropriate supervisory office for inspection: (b) the name and address of each person or entity making a donation and the amount and date of receipt of each donation."). Plaintiff alleges the requirement that all donations be disclosed violates special interest caucus's rights to freedom of speech because the disclosures make clear who supports a specific special interest caucus. ECF No. 1 at ¶ 45-46 ("South Carolina law discriminates against special interest caucuses by subjecting all their supporters to public disclosure without any contribution floor. Such public disclosure at minimal contribution levels discourages donors from supporting speech and significantly burdens protected speech.").

The Supreme Court has recognized "compelled disclosure of affiliation with groups engaged in advocacy may constitute as effective a restraint on freedom of association as other forms of governmental action." *Americans for Prosperity Foundation v. Bonta*, 594 U.S. __, 141 S. Ct. 2373, 2382 (2021) (citing *NAACP v. Alabama*, 357 U.S. 449, 462 (1958)). Such compelled disclosure violated the First Amendment because the state demonstrated no "offsetting interest sufficient to justify the deterrent effect of disclosure." *Id.*

28

a. *Exacting scrutiny applies to Plaintiff's claim of discriminatory disclosure requirements*

First Amendment challenges to compelled disclosure requirements, based on freedom of association, are subject to exacting scrutiny. *Bonta*, 141 S. Ct. at 2382-83.  Under this standard, there must be a substantial relation between the disclosure requirement and a sufficiently important governmental interest.  *Id.* at 2383. "To withstand this scrutiny, the strength of the governmental interest must reflect the seriousness of the actual burden on First Amendment rights."  *Id.*

Special interest caucuses must report any and all donations given for the limited purposes for which donations are permitted.  Specifically, records of the name and address of each person or entity making a donation, and the amount and date of receipt of each donation, must be maintained for not less than four years and must be available to the "appropriate supervisory office for inspection." § 8-13-1333(C)(1)(b).  For legislative caucuses, only contributors who gave more than $100 per quarterly reporting period must be disclosed. *Id.* § 1360(A)(4).

Defendants contend the disclosure requirement for special interest caucuses is in place to avoid corruption and increase transparency.  However, as above, they make no attempt to explain the difference between the requirements for the different types of caucuses (legislative vs. special interest) and why transparency and the possibility of corruption require all donations for special interest caucuses to be reported while only those over $100 per quarter for legislative caucuses must be. The court therefore finds Defendants have failed to show a substantial relation between the disclosure requirements for all donors to special interest caucuses and a sufficiently important government interest.

29

**Count III: Fourteenth Amendment challenge based on Equal Protection**

Plaintiff's final claim asserts special interest caucuses do not receive equal treatment as legislative caucuses and this discrimination works to suppress speech of the special interest caucuses.

a. *Scrutiny applicable to Plaintiff's Equal Protection challenge*

Plaintiff asserts strict scrutiny applies to its Equal Protection Clause challenge, because "[w]hen an alleged equal protection violation is based on a First Amendment claim," courts "fuse[] the First Amendment into the Equal Protection Clause." *Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 442 (4th Cir. 2013) (citing *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 384-85 n.4 (1992)). "There is an equality of status in the field of ideas, and government must afford all points of view an equal opportunity to be heard." *Carey v. Brown*, 447 U.S. 455, 463 (1980) (quoting *Police Dept. of City of Chicago v. Mosley*, 408 U.S. 92, 96 (1972)). As explained, South Carolina does the opposite, permitting legislative caucuses to speak and prohibiting special interest caucuses from speaking regarding elections and ballot measures. "When government regulation discriminates among speech-related activities" like this, "the Equal Protection Clause mandates that the legislation be finely tailored to serve substantial state interests, and the justifications offered for any distinctions it draws must be carefully scrutinized." *Carey*, 447 U.S. at 461; *see also Jesus Christ Is the Answer Ministries, Inc. v. Baltimore Cnty.*, 915 F.3d 256, 265 (4th Cir. 2019) ("[W]e apply strict scrutiny under the Equal Protection Clause where (as here) the challenged action interferes with a fundamental right.").

30

Defendants, however, contend rational basis scrutiny applies. Under an Equal Protection analysis, courts generally hold that "legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne v. Cleburn Living Ctr., Inc.*, 473 U.S. 432, 440 (1985). Indeed, upon rational basis review, a classification in a statute bears a presumption of validity. *See Lyng v. Automobile Workers,* 485 U.S. 360, 370 (1988). In fact, laws are "presumed to be constitutional under the equal protection clause for the simple reason that classification is the very essence of the art of legislation." *Moss v. Clark*, 886 F.2d 686, 689 (4th Cir. 1989) (citing *City of Cleburne*, 473 U.S. at 440). As such, "the challenged classification need only be rationally related to a legitimate state interest unless it violates a fundamental right or is drawn upon a suspect classification such as race, religion, or gender." *Giarratano v. Johnson*, 521 F.3d 298, 303 (4th Cir. 2008) (citing *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976)).

Here, the equal protection challenge does allege violation of a fundamental right: the right of the special interest caucus to free speech. Interference with a fundamental right warrants the application of strict scrutiny. *Bostic v. Schaefer*, 760 F.3d 352, 375 (4th Cir. 2014) (citing *Washington v. Glucksburg*, 521 U.S. 702, 719-20 (1997)); *see also Carey*, 447 US. at 461-62; *Hardwick*, 711 F.3d at 442. The right to free speech is "undoubtedly among the most fundamental of American rights." *Billups v. City of Charleston, S.C.*, 961 F.3d 673, 686 (4th Cir. 2020). Therefore, strict scrutiny applies to Plaintiff's equal protection claim. And, as the court has analyzed and concluded above, the restrictions on speech of special interest caucuses, specifically in § 2-17-10(21), cannot pass strict scrutiny. See *supra at Count I(a)(i)*. Accordingly, the

31

challenged provision also violates equal protection and is unconstitutional under the Fourteenth Amendment.

### **Severability**

Defendants contend the challenged portions of S.C. Code Ann. §§ 2-17-10(21) and 8-13-1333(C) cannot be severed from the entirety of the Ethics Act, and that if the court determines any restrictions regarding special interest caucuses must be invalidated, all subsections of those statutes must be invalidated as well.  ECF No. 29 at 24.  This would, they argue, include removing all language in § 2-17-10(21) allowing for the creation and existence of legislative special interest caucuses.

Plaintiff disagrees, arguing Defendants cannot overcome the "presumption of severability." ECF No. 33 at 4.  Further, it asserts, eliminating special interest caucuses altogether, as Defendants contend must occur if portions of the statutes are declared unconstitutional, would "worsen, not remedy, the constitutional violations here."  *Id.* Even if the Defendants' "inseverability claim were right, the Court would still have before it the same unconstitutional discrimination that exists now."  *Id.*  Plaintiff requests the court grant summary judgment and enjoin Defendants from enforcing the speech ban against it.

Severability is a question of state law.  *N.C. State Conf. of NAACP v. McCrory*, 831 F.3d 204, 238-39 (4th Cir. 2016).  In South Carolina, to determine if the constitutional portion of a statute is severable from the unconstitutional portion, the court applies the following test:

> The rule is that where a part of a statute is unconstitutional, if such part is so connected with the other parts as that they mutually depend upon each other as conditions and considerations for each other, so as to warrant the belief that the

32

Legislature intended them as a whole, and if they cannot be carried into effect, the Legislature would not have passed the residue independently of that which is void, the whole act is void. On the other hand, where a part of the statute is unconstitutional, and that which remains is complete in itself, capable of being executed, wholly independent of that which is rejected, and is of such character as that it may fairly be presumed that the Legislature would have passed it independently of that which is in conflict with the Constitution, then the courts will reject that which is void and enforce the remainder.

*Fairway Ford, Inc. v. Timmons*, 281 S.C. 57, 59, 314 S.E.2d 322, 324 (1984); *see also Pinckney v. Peeler*, 862 S.E.2d 906, 916 (S.C. 2021). In short, the question is whether the intention of the Legislature can be fulfilled absent the offending provision. *S.C. Tax Comm'n v. United Oil Marketers, Inc.*, 306 S.C. 384, 389, 412 S.E.2d 402, 405 (1991). Without a legislative declaration that invalidity of a portion of the statute shall not affect the remainder, the presumption is that the Legislature intended the act to be effected as an entirety or not at all. *Id.*

It does not appear the Ethics Act contains a severability clause, and the parties have not pointed the court to one. Under South Carolina law, it appears there is a presumption against severability, not for severability, as Plaintiff contends. However, the court has determined it is not the court's place to redline or rewrite the affected statutes. Instead, the court concludes certain provisions, detailed below, are invalid and unenforceable. The revision of the statutory scheme; however, is a task best suited to the State Legislature.

### A Permanent Injunction is warranted.

Plaintiff seeks a permanent injunction requiring Defendants to treat legislative special interest caucuses "the same as other legislative caucus committees." ECF No. 1 at 9. Such a request goes too far. Essentially that would require the court to not just rewrite but decree what

33

unspecified statutes should apply to Plaintiff, not to determine whether the challenged statutes violation the Constitution and are thus unenforceable. The court has found the challenged statutes violate the Constitution and are unenforceable. It now considers whether an injunction against enforcement of those statutes is warranted.

Under "well-established principles of equity," a plaintiff seeking a permanent injunction must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006); *Wudi Industrial (Shanghai) Co., Ltd. V. Wong*, __ F.4th __, 2023 WL 3806373, at *4 (4th Cir. June 5, 2023).

The court finds Plaintiff meets the factors for granting a permanent injunction. Plaintiff will suffer irreparable injury by having its speech restricted by law in the absence of a permanent injunction. It is well established that the loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury. *Legend Night Club v. Miller*, 637 F.3d 291, 302 (4th Cir. 2011).

In addition, remedies available at law, such as monetary damages, are inadequate to compensate for the loss of a First Amendment freedom. *Id*. Third, considering the balance of hardships between Plaintiff and Defendants, a remedy in equity is warranted. Defendants are "in no way harmed" by an injunction that prevents enforcement of an unconstitutional statute that bans

34

protected speech. *Newsom v. Albemarle Cnty. Sch. Bd.*, 354 F.3d 249, 261 (4th Cir. 2003). Plaintiff, however, would suffer a hardship if its First Amendment rights continue to be inhibited.

Finally, the public interest would not be disserved by a permanent injunction. Upholding constitutional rights serves the public interest. *Legend Night Club*, 637 F.3d at 303. Further, the public is disserved when it is sequestered from the free marketplace of ideas. *Cf. Citizens United*, 558 U.S. at 356 (explaining that it "is unlawful" for the government to "use[] censorship to control thought" by "command[ing] where a person may get his or her information or what distrusted source he or she may not hear"); *Stanley v. Georgia*, 394 U.S. 557, 564 (1969) ("[T]he Constitution protects the right to receive information and ideas.").

Therefore, the court finds issuance of a permanent injunction against enforcement of the following provisions of South Carolina statutes to be appropriate.

## **CONCLUSION**

Plaintiff's motion for summary judgment (ECF No. 17) is granted and declaratory judgment is entered as follows:

1. The portion of S.C. Code Ann. § 2-17-10(21) stating "under no circumstances may a legislative special interest caucus engage in any activity that would influence the outcome of an election or ballot measure" violates the First Amendment and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and is therefore unenforceable;

35

2.  Subsection (J) of S.C. Code Ann. § 2-17-110 stating, "(J) A lobbyist, a lobbyist's principal, or a person acting on behalf of a lobbyist or a lobbyist's principal shall not offer or provide contributions or any other type of funds or financial assistance to a legislative special interest caucus as defined in Section 2-17-10(21)," violates the First Amendment to the United States Constitution to the extent it differs from statutes and rules applicable to what legislative caucuses as defined in § 2-17-10(11) may accept from lobbyist's principals; and

3.  Those provisions of S.C. Code Ann. § 8-13-1333(C) stating

> (C)(1) A legislative special interest caucus must not solicit contributions as defined in Section 8-13-100(9);
>
> Under no circumstances may a legislative special interest caucus accept funds from a lobbyist;
>
> It must also maintain the following records, for not less than four years, which must be available to the appropriate supervisory office for inspection:
> (b) the name and address of each person or entity making a donation and the amount and date of receipt of each donation;
>
> (C)(2) A legislative special interest caucus may not accept a gift, loan, or anything of value, except for funds permitted in subsection (C)(1) above,

violate the First Amendment to the United States Constitution and are unenforceable to the extent they differ from statutes and rules applicable to legislative caucuses as defined in § 2-17-10(11).

Defendants and their employees, agents, successors, and all others acting in concert or participating with them are enjoined from enforcing the provisions of such statutes to the extent detailed above.

**IT IS SO ORDERED**.

s/Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
Senior United States District Judge

Columbia, South Carolina
June 13, 2023

37