# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| SOUTH CAROLINA FREEDOM CAUCUS,<br><br>*Plaintiff*,<br><br>v.<br><br>WALLACE H. JORDAN, JR., J. DAVID WEEKS, BETH E. BERNSTEIN, PAULA RAWL CALHOON, MICAJAH P. CASKEY, IV, NEAL A. COLLINS, JOHN RICHARD C. KING, ROBBY ROBBINS, J. TODD RUTHERFORD, AND LEONIDAS E. STAVRINAKIS, in their official capacities as members of THE HOUSE OF REPRESENTATIVES LEGISLATIVE ETHICS COMMITTEE,<br><br>*Defendants*. | Civil Action No. 3:23-cv-00795-CMC<br><br>**DEFENDANTS' MOTION TO ALTER OR AMEND SUMMARY JUDGMENT ORDER OR, IN THE ALTERNATIVE, MOTION FOR CLARIFICATION** |

Defendants Wallace H. Jordan, Jr., J. David Weeks, Beth E. Bernstein, Paula Rawl Calhoon, Micajah P. Caskey, IV, Neal A. Collins, John Richard C. King, Robby Robbins, J. Todd Rutherford, and Leonidas E. Stavrinakis, in their official capacities as members of The House of Representatives Legislative Ethics Committee (collectively, "Defendants" or "Ethics Committee") respectfully move the Court pursuant to Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure to alter or amend its Order (ECF Nos. 40-41) granting Plaintiff summary judgment (hereinafter, the "Order"). In the alternative, the Ethics Committee respectfully moves the Court for clarification of its Order with respect to the scope of the remedies provided.

## SUMMARY OF ARGUMENT AND NOTICE OF RELIEF SOUGHT

The Ethics Committee respectfully requests this Court to Alter and/or Amend its Order dated June 13, 2023 in light of numerous practical issues with enforcement of the ethics rules and statutes resulting from the remedies provided in the Court's Order. Specifically, as the Court found

certain portions of the 2006 Act that passed the challenged statutes (Act 344[1]) to be unconstitutional, given the statutory scheme at issue here, the Court should invalidate the entirety of Act 344.

The Court's Order correctly notes that there is no severability clause in Act 344 and that severability is a question of state law. *See* ECF No. 40 at 32. While the Court indicated that "it is not the court's place to redline or rewrite the affected statutes," the Court's Order found that only certain sentences within the challenged statutes were unconstitutional, and then invalidated portions of those statutes only to the extent that some of the language in those offending provisions differ from statutes and rules applicable to legislative caucuses. *Id.* at 36. However, despite its stated intention to do otherwise, the Court's Order has the effect of redlining, at least in part, the challenged statutes—and that redlining has rendered enforcement of the statutory scheme with respect to legislative special interest caucuses problematic at best.

Defendants do not request that the Court reconsider its findings of unconstitutionality at this point.[2] However, the Ethics Committee respectfully requests that the Court Alter and/or Amend its Order because the statutory scheme that remains after Court's Order is untenable as set forth below—so the only appropriate judicial remedy available here is to invalidate Act 344 in its entirety. *See Am. Petroleum Inst. v. S.C. Dep't of Revenue,* 382 S.C. 572, 578, 677 S.E.2d 16, 19, (2009) ("to sever only part of the unconstitutional act would require this Court to go beyond its proper role and to intrude into the province of the legislature.").

---

[1] House Bill 3402 was passed as Act 344 in 2006. Act 344 contains all of the challenged statutes. https://www.scstatehouse.gov/billsearch.php?billnumbers=3402&session=116&summary=B.

[2] While they do not concede that any portion of the challenged statutes is unconstitutional, Defendants have not moved to alter or amend the Court's Order with respect to those findings.

**PROCEDURAL HISTORY**

Given the Court's familiarity with this litigation, Defendants offer only a brief summary of the procedural history here relevant to the instant Motion. Plaintiff, without citing specifically to all of the precise statutes it sought to challenge, filed a three-count Complaint challenging certain statutory requirements and limitations that the General Assembly imposed on special interest legislative caucuses. *See* Compl., ECF No. 1. Count I challenged S.C. CODE ANN. § 2-17-10(21) and S.C. CODE ANN. § 8-13-1333(C)(1), alleging a violation of the First Amendment relating to limitations on legislative special interest caucuses' ability to solicit of contributions and make expenditures to influence the outcome of an election; Count II challenged S.C. CODE ANN. § 8-13-1333(C)(1)'s disclosure requirements under the First Amendment; and Count III challenged the above statutes under the Equal Protection Clause of the Fourteenth Amendment. *See* Compl. at ¶¶ 34–56, ECF No. 1.

On March 15, 2023, Plaintiff filed a Motion for Summary Judgment ("Motion"), arguing that its statutory challenges were facial and that discovery was unnecessary to adjudicate its claims. *See* ECF No. 17. On March 29, 2023, the Ethics Committee responded in opposition to Plaintiff's Motion, pursuant to Federal Rule of Civil Procedure 56(d), with a supporting declaration and argued that the Motion was premature and that fact discovery was indeed necessary in several areas. *See* ECF Nos. 18 and 18-1. The Ethics Committee also filed a substantive Response in Opposition to the Motion on April 28, 2023. *See* ECF No. 29. The Court scheduled a hearing on Plaintiff's Motion for May 11, 2023. *See* ECF No. 20.

On June 13, 2023, the Court issued an Order Granting Plaintiff's Motion for Summary Judgment. *See* ECF No. 40. The Court entered declaratory judgment in favor of Plaintiff on the following three statutory provisions ("challenged statutes"):

3

- the portion of S.C. CODE ANN. § 2-17-10(21) stating "under no circumstances may a legislative special interest caucus engage in any activity that would influence the outcome of an election or ballot measure" violates the First Amendment and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and is therefore unenforceable.

- those provisions of S.C. CODE ANN. § 8-13-1333(C) stating "(C)(1) A legislative special interest caucus must not solicit contributions as defined in Section 8-13-100(9)"; "Under no circumstances may a legislative special interest caucus accept funds from a lobbyist"; "It must also maintain the following records, for not less than four years, which must be available to the appropriate supervisory office for inspection: (b) the name and address of each person or entity making a donation and the amount and date of receipt of each donation"; and "(C)(2) A legislative special interest caucus may not accept a gift, loan, or anything of value, except for funds permitted in subsection (C)(1) above", violate the First Amendment to the United States Constitution and are unenforceable to the extent they differ from statutes and rules applicable to legislative caucuses as defined in § 2-17-10(11).

- subsection (J) of S.C. CODE ANN. § 2-17-110 stating "(J) A lobbyist, a lobbyist's principal, or a person acting on behalf of a lobbyist or a lobbyist's principal shall not offer or provide contributions or any other type of funds or financial assistance to a legislative special interest caucus as defined in Section 2-17-10(21)" violates the First Amendment to the United States Constitution to the extent it differs from statutes and rules applicable to what legislative caucuses as defined in § 2-17- 10(11) may accept from lobbyist's principals.

ECF Nos. 40 at 35-36; 41 at 1. The Court also permanently enjoined the Ethics Committee "and their employees, agents, successors, and all others acting in concert or participating with them…from enforcing those provisions of the above referenced statutes." ECF Nos. 40 at 37; 41 at 2.

The Ethics Committee now moves this Court, pursuant to Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure, to Alter and/or Amend its Order or, in the alternative, to Clarify its Order with respect to the relief the Court granted to Plaintiff.

## LEGAL STANDARD

The Fourth Circuit Court of Appeals has interpreted Rule 59(e) of the Federal Rules of Civil Procedure to allow the Court to alter or amend a judgment: "(1) to accommodate an

4

intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 290 (4th Cir. 2002) (quoting *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). As there is no intervening change in law or new evidence, the Ethics Committee requests the Court alter or amend its Order to correct an error and prevent manifest injustice.

Moreover, Rule 60(b) of the Federal Rules of Civil Procedure allows a party to seek relief based on "mistake, inadvertence, surprise, or excusable neglect," or for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(1), (6). As the Supreme Court has noted, federal courts also have a "history of granting relief based on 'judicial inadvertence.'" *Kemp v. United States*, 142 S. Ct. 1856, 1858 (2022) (quoting *Larson v. Heritage Square Assocs.*, 952 F.2d 1533, 1536 (8th Cir. 1992)).

In the alternative, as to the relief sought pursuant to Rule 59(e) and Rule 60(b) of the Federal Rules of Civil Procedure, the Ethics Committee seeks clarification of the Court's Order. While "there is no Federal Rule of Civil Procedure specifically governing 'motions for clarification,'" federal courts have "ruled on a motion for clarification without resort to [Federal Rule of Civil Procedure] standards." *United States v. Philip Morris USA Inc.*, 793 F. Supp. 2d 164, 168 (D.D.C. 2011) (internal citations omitted). "The general purpose of a motion for clarification is to explain or clarify something ambiguous or vague, not to alter or amend." *Resolution Trust Corp. v. KPMG Peat Marwick, et al.*, No. 92–1373, 1993 WL 211555, at *2 (E.D. Pa. June 8, 1993). For example, courts have routinely granted such motions in situations where a remedy ordered by the court previously was unclear in its wording or its application. *See Knighten v. Palisades Collections, LLC*, No. 09-CIV-20051, 2011 WL 835783, at *3 (S.D. Fla. Mar. 4,

2011) (granting motion to clarify whether the court's summary judgment order entitled plaintiff to statutory damages and attorney's fees); *Potter v. D.C.*, 382 F. Supp. 2d 35, 42 (D.D.C. 2005) (granting a motion to clarify whether the "rather vague prohibitions" of a preliminary injunction applied to defendant's specific conduct); *see also Regal Knitwear Co. v. Nat'l Labor Relations Bd.,* 324 U.S. 9, 15 (1945) ("we think courts would not be apt to withhold a clarification in the light of a concrete situation that left parties ... in the dark as to their duty toward the court.").

## ARGUMENTS

I. **The Remedies Provided by the Court's Order Leave Substantial Uncertainty as to the Prospective Application and Enforcement of the Ethics Act.**

Defendants are concerned that the remedies directed by the Court in its Order leave the Ethics Committee, as well as candidates, current legislators, and the general public, with substantial uncertainty about what limitations, if any, actually apply to contributions to and solicitations by legislative special interest caucuses. This uncertainty creates numerous practical problems with the enforcement of the Ethics Act by the Ethics Committee, but also by non-parties, including the South Carolina State Ethics Commission (the "Ethics Commission") and the Senate Ethics Committee.

Plaintiff's Complaint asked the Court for injunctive relief that would "treat legislative special interest caucuses the same as other legislative caucus committee," ECF No. 1 at 9. At the hearing on May 11, 2023, Plaintiff's counsel confirmed that Plaintiff was seeking for legislative special interest caucuses to be "treated on the same terms as legislative caucuses." May 11, 2023 Hearing Tr. 11:11-13; *see also* 16:1-3; 21:6.[3] The Court indicated that "[s]uch a request goes too

---

[3] In addition, Plaintiff's Vice Chair Rep. R.J. May told media outlets following the Order, "We didn't ask to be treated any differently. We simply asked to be put on the same footing, and that's exactly what this judge did." Mary Green, *Legislators fear S.C. ethics law 'blasted wide open' after judge rules in campaign fundraising lawsuit*, WIS News,

far" and would essentially "require the court to not just rewrite but decree what unspecified statutes should apply to Plaintiff." ECF No. 40 at 33-34. The Court found that sections of the challenged statutes violate the First Amendment and/or Fourteenth Amendments of the United States Constitution "**to the extent they differ from statutes and rules applicable to legislative caucuses as defined in § 2-17-10(11)**" and permanently enjoined the Ethics Committee from enforcing those provisions. ECF 40 at 35-37 (emphasis added). Defendants respectfully submit that the qualifier "to the extent they differ" is problematic as it creates a legitimate question of what now is constitutional and what now is not and, therefore, unenforceable. Moreover, legislative caucuses are subject to other statutes outside of S.C. CODE ANN. § 2-17-10-(11), which merely defines "legislative caucus" in the Lobbyists and Lobbying chapter.

More specifically, in the wake of the Court's Order, it is now unclear whether special interest legislative caucuses are subject to the same limitations on receiving contributions[4] as legislative caucus committees – that is $3,500. *See* S.C. CODE ANN. § 8-13-1322(A).[5] It is also unclear whether special interest legislative caucuses are subject to the same limitations on giving contributions as political parties and legislative caucus committees – that is $50,000 for statewide

---

https://www.wistv.com/2023/06/19/legislators-fear-sc-ethics-law-blasted-wide-open-after-judge-rules-campaign-fundraising-lawsuit/ (June 19, 2023).

[4] Contribution is defined by the Ethics Act as "a gift, subscription, loan, guarantee upon which collection is made, forgiveness of a loan, an advance, in-kind contribution or expenditure, a deposit of money or anything of value made to a candidate or committee, as defined in Section 8-13-1300(6), for the purpose of influencing an election…" S.C. CODE ANN. § 8-13-100(9); *see also* S.C. CODE ANN. § 8-13-1300(7).

[5] S.C. CODE ANN. § 8-13-1322 provides the dollar limits on contributions to committees. As the Court is aware, the word "committee" is no longer operative in the South Carolina Ethics Act. *See South Carolinians for Responsible Government v. Krawcheck,* 854 F. Supp. 2d 336 (2012) (Seymour, J.); *South Carolina Citizens for Life, Inc. v. Krawcheck,* 759 F. Supp. 2d 708 (2010) (Wooten, J.).

office and $5,000 for candidates of any other office. *See* S.C. CODE ANN. § 8-13-1316. Members of the Ethics Committee, members of the Ethics Commission, candidates, members of special interest legislative caucuses, other members of the General Assembly, and members of the public could fairly read the Court's Order as removing *all* contribution and spending limits with respect to legislative special interest caucuses—a reading that the Court undoubtedly did not intend. Removing these limitations with respect to legislative special interest caucuses (but not as to other statutorily authorized caucuses) creates a host of issues – the very issues the challenged statutes were enacted to curtail, including preventing corruption and increasing transparency and accountability.

Moreover, assuming *arguendo* that special interest legislative caucuses are now subject to the same contribution limits as legislative caucuses, the Court's Order arguably creates another unintended but problematic result, in that legislative caucus committees are expressly limited in number by statute, but legislative special interest caucuses are *not* limited in number. By statute, legislative caucus committee is defined as "a committee of either house of the General Assembly controlled by the caucus of a political party or a caucus based upon racial or ethnic affinity, or gender; **however, each house may establish only one committee for each political, racial, ethnic, or gender-based affinity**…" S.C. CODE ANN. § 8-13-1300(21) (emphasis added). Therefore, there is a finite number of legislative caucuses that may be formed. Indeed, there are currently only eight (8) legislative caucuses: House Republican Caucus Committee, Senate Republican Caucus Committee, House Democratic Caucus Committee, Senate Democratic Caucus Committee, Legislative Black Caucus Committee, the SC General Assembly Women's

Caucus, House Republican Women's Caucus, and the House Democratic Women's Caucus.[6]

As discussed at the hearing on May 11, 2023, there are currently fifteen (15) legislative special interest caucuses registered with the Clerk of the House of Representatives. *See* Hearing Tr. 27:18 – 28:7. But there are no limits on the number of legislative special interest caucuses – even if these caucuses are comprised of the same members. For example, Plaintiff could theoretically create South Carolina Freedom Caucus 1, South Carolina Freedom Caucus 2, South Carolina Freedom Caucus 3, and so on, with the same members and could receive contributions of up to $3,500 for each one of those caucuses,[7] effectively circumventing *any* contribution limits.[8]

In addition, the Order creates unequal enforcement of the challenged statutes going forward. The Court found that "[t]he House Ethics Committee members are proper Defendants[9] here, as that committee has enforcement authority for violations of statute and House or Senate rules." ECF No. 40 at 10 n.5 (citing S.C. CODE ANN. § 8-13-540). However, the House Ethics Committee does not have jurisdiction over enforcement actions originating in the Senate. *See* S.C.

---

[6] According to the South Carolina State Ethics Commission's Public Disclosure and Accountability Reporting System, available at https://apps.sc.gov/PublicReporting/IndividualCommittee/LegCaucus/LookupCaucus.aspx.

[7] This assumes, of course, that legislative special interest caucuses are, in fact, subject to any contribution limits after the Order.

[8] The term "special interest" is not a defined term in the Ethics Act or in the Lobbyists and Lobbying chapter. Therefore, a special interest caucus could arguably be created, in whole or in part, for some nefarious purpose, for which that caucus could then raise and spend money and potentially influence the outcome of an election or ballot measure. Again, such an outcome would circumvent the intent of the Legislature and the proscribed limitations in the Ethics Act.

[9] Still, the House Ethics Committee does not pass laws and has no ability, on its own, to rectify the issues addressed in the Order. While the Court's Order indicates that a revision of the Ethics Act "a task best suited to the State Legislature" (ECF No. 40 at 33), neither the House, the Senate nor the Legislature as a whole is a party to this suit. Indeed, even though the Senate wasinvolved in passing the challenged statutes, it has had no role in this litigation.

CODE ANN. § 8-13-540(2) ("*the appropriate ethics committee* shall investigate and make a determination for a complaint.") (emphasis added). Because the Senate Ethics Committee was not a party to this suit, the Senate Ethics Committee is not enjoined from enforcing the challenged statutes, creating unequal enforcement across the General Assembly.

In addition, the Ethics Commission[10] was not a party to this lawsuit and is not enjoined by the Order. The Court found that "[a]lthough the South Carolina Ethics Commission performs the investigation of statutory violations on referral from the proper Ethics Committee, the appropriate Ethics Committee receives a recommendation from the Ethics Commission, determines whether to concur or not, and renders advisory opinions, convenes formal hearings, acts as the finders of fact at any hearing, and issues final orders." ECF No. 40 at 10 n.5. Despite the Court posing questions about the Ethics Commission at the hearing, the Ethics Commission did not have the opportunity to provide its own input and argument to the Court. While the Order acknowledges that the Ethics Commission plays a role in the enforcement process, the Order does not enjoin the Ethics Commission. Therefore, the Ethics Commission could issue its own opinion on how it interprets the Order and the state of the Ethics Act following the invalidation of portions of the challenged statutes. Such an opinion could conflict with the intended goals of the Order.

In the end, the Court's Order has clearly unintended consequences—it creates uncertainty, arguably heightens the potential for abuse, and allows unequal enforcement of the statutes that remain. By finding certain provisions of the challenged statutes to be unconstitutional and unenforceable, but in failing to void Act 344 in its entirety, the Court's Order leaves the Ethics Committee and others (including the General Assembly as a whole and the State Ethics

---

[10] In one instance, the Order may have inadvertently referenced the Ethics Commission, instead of the Ethics Committee. *See* ECF No. 40 at 16 n.7 ("Among the responsibilities of the Ethics *Commission* is to ensure orderly elections." (quoting ECF No. 29 at ¶ 5)) (emphasis added).

Commission) with a host of practical problems with respect to enforcing the statutory scheme that remains.

    **a.    S.C. CODE ANN. § 2-17-10(21)**

In its Order, the Court found that one sentence of S.C. CODE ANN. § 2-17-10(21), stating "under no circumstances may a legislative special interest caucus engage in any activity that would influence the outcome of an election or ballot measure," violates the First Amendment and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and is therefore unenforceable. ECF No. 40 at 35.

The statute that defines legislative special interest caucus and creates the framework to allow for legislative special interest caucuses, S.C. CODE ANN. § 2-17-10(21), also includes in the very next sentence a specific limitation that such caucuses shall not "engage in any activity that would influence the outcome of an election or ballot measure." *Id.* As will be discussed further, this limitation was expressly passed alongside the statutory creation of legislative special interest caucuses in Act 344. Still, the phrase "influence the outcome" of an election or ballot measure has a very specific meaning under the Ethics Act. S.C. CODE ANN. § 8-13-1300(31) defines this term as:

    (a)    expressly advocating the election or defeat of a clearly identified candidate using words including or substantially similar to "vote for", "elect", "cast your ballot for", "Smith for Governor", "vote against", "defeat", or "reject";
    (b)    communicating campaign slogans or individual words that, taken in context, have no other reasonable meaning other than to urge the election or defeat of a clearly identified candidate including or substantially similar to slogans or words such as "Smith's the One", "Jones 2000", "Smith/Jones", "Jones!", or "Smith-A man for the People!"; or
    (c)    any communication made, not more than forty-five days before an election, which promotes or supports a candidate or attacks or opposes a candidate, regardless of whether the communication expressly advocates a vote for or against a candidate…

Removing the limitation that legislative special interest caucuses cannot "engage in any activity that would influence the outcome of an election or ballot measure" arguably now allows legislative special interest caucuses to engage in such activity to influence the outcome of an election *without limitation.* As the Court is aware, there are numerous sections of the Ethics Act that cross-reference specific definitions, including those definitions that now apply only to legislative caucuses, but do not apply to legislative special interest caucuses. Merely excising one sentence with respect to legislative special interest caucuses in a vacuum, without regard to the other provisions or definitions in the Ethics Act undermines the legislative intent behind the Ethics Act. Now, it is unclear whether legislative special interest caucuses are subject to any limitations on how they may influence the outcome of an election or ballot measure.

  **b.**  S.C. CODE ANN. § 8-13-1333(C)

Similarly problematic is the Court's conclusion that several provisions of S.C. CODE ANN. § 8-13-1333(C) "violate the First Amendment to the United States Constitution and are unenforceable **to the extent they differ from statutes and rules applicable to legislative caucuses as defined in § 2-17-10(11)**." ECF No. 40 at 36 (emphasis added). These four provisions are:

1. "A legislative special interest caucus must not solicit contributions as defined in Section 8-13-100(9)" S.C. CODE ANN. § 8-13-1333(C)(1);
2. "Under no circumstances may a legislative special interest caucus accept funds from a lobbyist" S.C. CODE ANN. § 8-13-1333(C)(1);
3. "It must also maintain the following records, for not less than four years, which must be available to the appropriate supervisory office for inspection: (b) the name and address of each person or entity making a donation and the amount and date of receipt of each donation," S.C. CODE ANN. § 8-13-1333(C)(1)(b); and
4. "A legislative special interest caucus may not accept a gift, loan, or anything of value, except for funds permitted in subsection (C)(1) above," S.C. CODE ANN. § 8-13-1333(C)(2).

*Id*.

First, it is unclear exactly what the Court means by the language "**to the extent they differ from statutes and rules applicable to legislative caucuses as defined in § 2-17-10(11)**." ECF No. 40 at 36. Section 2-17-10(11)[11] states that a "legislative caucus" means:

(a) a committee of either house of the General Assembly controlled by the caucus of a political party or a caucus based upon racial or ethnic affinity, or gender;

(b) a party or group of either house of the General Assembly based upon racial or ethnic affinity, or gender. However, each house may establish only one committee for racial, ethnic, or gender-based affinity;

(c) "legislative caucus" does not include a legislative special interest caucus as defined in Section 2-17-10(21).[12]

This is an entirely different statutory definition than the one in § 8-13-1333(C). This definition does not mention contributions, accepting funds from a lobbyist, maintaining records, or accepting anything of value. Section 2-17-10(11) only defines what constitutes a legislative caucus. The "statutes and rules applicable to legislative caucuses" are, unfortunately, scattered throughout the Ethics Act. Without specific references to what statutes and rules are now applicable to special interest legislative caucuses versus legislative caucuses, it is unclear what statutes the Ethics Committee can or cannot enforce against these entities.

More specifically, the Order appears to allow legislative special interest caucuses to:

1. solicit contributions;
2. accept funds from lobbyists;
3. eliminate recordkeeping as to the amount of donations or the name and address of donors; and
4. accept gifts, loans, or anything of value.

---

[11] S.C. CODE ANN. § 8-13-1300(21) contains the definition of a "legislative caucus committee," which contains a substantially similar definition.

[12] S.C. Code Ann. § 2-17-10(11)(c) expressly differentiates legislative caucuses from legislative special interest caucuses, but was not challenged by Plaintiff or addressed in the Order.

However, the Order does not specify any limitation on contributions, funds from lobbyists, or things of value given to legislative special interest groups. Legislative caucuses are still limited in these respects. *See* S.C. CODE ANN. 8-13-1302 (maintenance of records of contributions, contributors, and expenditures); S.C. CODE ANN. § 8-13-1322(A) (dollar limits on contributions to committees). Because of the Court's statement that Plaintiff's request to treat legislative special interest caucuses the same as legislative caucuses "goes too far," combined with the uncertainty of the language "to the extent they differ from statutes and rules applicable to legislative caucuses," it is unclear what remedy exactly the Court has ordered, leaving the Ethics Committee in the difficult position of trying to enforce the Ethics Act without running afoul of the Order.

### c.   S.C. CODE ANN. § 2-17-110(J)

Finally, the Court found that subsection (J) of S.C. CODE ANN. § 2-17-110 stating that a "'lobbyist, a lobbyist's principal, or a person acting on behalf of a lobbyist or a lobbyist's principal shall not offer or provide contributions or any other type of funds or financial assistance to a legislative special interest caucus as defined in Section 2-17-10(21)' violates the First Amendment to the United States Constitution to the extent it differs from statutes and rules applicable to what legislative caucuses as defined in § 2-17- 10(11) may accept from lobbyist's principals." ECF No. 41 at 1 (emphasis added).

Again, the language of "to the extent it differs from statutes and rules applicable to what legislative caucuses" causes serious issues of interpretation because there are various statutes and rules governing limitations on lobbyist and lobbyist principal's contributions to legislative caucuses. The Order appears to open the door to unlimited lobbying money to legislative special interest caucuses while legislative caucuses remain expressly limited.

**II.     The Appropriate Remedy Here is to Declare the Entirety of Act 344 Unconstitutional.**

All of the challenged statutes were passed in Act 344, which created, and simultaneously limited, legislative special interest caucuses. The fact that the limitation on influencing the outcome of an election or ballot measure is contained in the very next sentence after defining legislative special interest caucuses evidences the legislature's desire to only create such caucus with these express limits. *See also* ECF No. 29-3 at ¶¶ 5-7 (Hiott Decl.). Further evidencing such a desire is the absence of a severability clause in Act 344. *See* ECF No. 40 at 33 ("Without a legislative declaration that invalidity of a portion of the statute shall not affect the remainder, the presumption is that the Legislature intended the act to be effected as an entirety or not at all." (citing *S.C. Tax Comm'n v. United Oil Marketers, Inc.*, 306 S.C. 384, 389, 412 S.E.2d 402, 405 (1991)); *see also Town of Mount Pleasant v. Chimento*, 401 S.C. 522, 537, 737 S.E.2d 830, 840 (2012) (Toal, C.J., concurring) ("it is highly unlikely that the legislature would have enacted this statute absent the stricken language.").

In its Order, the Court correctly noted that the Ethics Committee, in its Opposition to Summary Judgment (ECF No. 29 at 24), contends that the challenged statutes "cannot be severed from the entirety of the Ethics Act." ECF No. 40 at 32-33. However, the Ethics Committee's argument was that Act 344 does not contain a severability clause, and, therefore, should the Court find that one or more portions of the challenged statutes to be unenforceable, the entirety of ***Act 344*** must be struck down as a result. This would include the entire definition of the "legislative special interest caucus" found in S.C. CODE ANN. § 2-17-10(21).

As the Court correctly determined in its Order, "[s]everability is a question of state law." ECF No. 40 at 32. The Court noted that the test for severability under South Carolina state law is

> where a part of a statute is unconstitutional, if such part is so connected with the other parts as that they mutually depend upon each other as conditions and considerations for each other, so as to

15

>  warrant the belief that the Legislature intended them as a whole, and
>  if they cannot be carried into effect, the Legislature would not have
>  passed the residue independently of that which is void, the whole act
>  is void.

*Id.* at 40 (quoting *Fairway Ford, Inc. v. Timmons*, 281 S.C. 57, 59, 314 S.E.2d 322, 324 (1984)). This is exactly the case here. The very definition of legislative special interest caucus was limited in the same Act, and in the very next sentence of S.C. CODE ANN. § 2-17-10(21), which evidences the Legislature's intention to have the creation of the legislative special interest caucuses only if they were expressly limited in their contributions (as defined in S.C. CODE ANN. § 8-13-110(9)) and ability to influence the outcome of an election (as defined in S.C. CODE ANN. § 8-13-1300(31)). *See also* ECF No. 29-3 at ¶¶ 5-7 (Hiott Decl.). As detailed above, the removal of just these limitations creates a host of practical issues and opens the door for abuse and corruption.

To be clear, the Ethics Committee is not asking the Court to "redline or rewrite the affected statutes," and the Ethics Committee agrees that "revision of the statutory scheme…is a task best suited to the State Legislature."[13] ECF No. 40 at 33. However, given the Court's finding that several provisions of Act 344 are invalid and unenforceable by the House Ethics Committee and that there is no severability clause to save it the appropriate remedy is to find the entirety of Act 344 to be invalid and enforceable. *See Am. Petroleum Inst. v. S.C. Dep't of Revenue,* 382 S.C. at 578, 677 S.E.2d at 19 ("to sever only part of the unconstitutional act would require this Court to go beyond its proper role and to intrude into the province of the legislature."). To find only certain provisions and sentences within the challenged statutes to be invalid, the Court has, in effect,

---

[13] However, the Legislature is not currently in Session, but campaign, fundraising, and related activities continue. The Legislature as a whole, not the Ethics Committee, must wait several months until it returns to Session to attempt any legislative fix.

16

redlined the affected statutes, thus creating a similar problem to the treatment of the word "committee" following the *Krawcheck* decisions, *supra.*

## CONCLUSION

The Ethics Committee respectfully requests that the Court alter or amend its grant of Summary Judgment to Plaintiff in accordance with the above arguments, or in the alternative, clarify its Order with respect to the points raised herein.

Respectfully submitted,

s/ *Mark C. Moore*
Mark C. Moore (Fed. Bar No. 4956)
mmoore@maynardnexsen.com
Susan P. McWilliams (Fed. Bar No. 3351)
smcwilliams@maynardnexsen.com
Michael A. Parente (Fed. Bar No. 13358)
mparente@maynardnexsen.com
MAYNARD NEXSEN PC
1230 Main Street, Suite 700
Columbia, SC 29201
Telephone: 803.771.8900

*Counsel for Defendants Wallace H. Jordan, Jr., J. David Weeks, Beth E. Bernstein, Paula Rawl Calhoon, Micajah P. Caskey, IV, Neal A. Collins, John Richard C. King, Robby Robbins, J. Todd Rutherford, and Leonidas E. Stavrinakis, in their official capacities as members of The House of Representatives Legislative Ethics Committee*

July 11, 2023
Columbia, South Carolina