**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

<table>
<tr><td>

SOUTH CAROLINA FREEDOM CAUCUS,

        *Plaintiff*,

      v.

WALLACE H. JORDAN, JR., J. DAVID WEEKS, BETH E. BERNSTEIN, PAULA RAWL CALHOON, MICAJAH P. CASKEY, IV, NEAL A. COLLINS, JOHN RICHARD C. KING, ROBBY ROBBINS, J. TODD RUTHERFORD, AND LEONIDAS E. STAVRINAKIS, in their official capacities as members of the HOUSE OF REPRESENTATIVES LEGISLATIVE ETHICS COMMITTEE,

        *Defendants*.

</td><td>

Civil Action No. 3:23-cv-00795-CMC

<br><br>

**OPPOSITION TO MOTION TO ALTER, AMEND, OR CLARIFY SUMMARY JUDGMENT ORDER**

</td></tr>
</table>

Gene P. Hamilton (*pro hac vice*)
Reed D. Rubinstein (*pro hac vice*)
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Ave. SE #231
Washington, DC 20003
Tel: (202) 964-3721
reed.rubinstein@aflegal.org

Christopher Mills (Fed. Bar No. 13432)
SPERO LAW LLC
557 East Bay St. #22251
Charleston, SC 29413
Tel: (843) 606-0640
cmills@spero.law

*Counsel for Plaintiff*

# TABLE OF CONTENTS

Introduction.................................................................................................................... 1

Legal Standard ............................................................................................................... 3

Argument ....................................................................................................................... 4

    I.    The Court already rejected the Defendants' proposed remedy, which remains meritless. .. 4

    II.   The Defendants' perceived "uncertainties" are irrelevant and illusory............................ 14

Conclusion .................................................................................................................... 23

## INTRODUCTION

The Defendants misconceive the judicial role under Article III. The judicial role is not to "fix" the laws enacted by a legislature. It is not to tidy up any supposed messes created when a State enacts an unconstitutional law. It is not to enjoin non-parties. It is not to impose further injuries on a plaintiff injured by an unconstitutional law. Instead, as the Supreme Court has repeatedly admonished, the judicial "authority on this front 'amounts to little more than the negative power to disregard an unconstitutional enactment.'" *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2351 n.8 (2020) (quoting *Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923)). "The Court's constitutionally prescribed role is to vindicate the individual rights of the people appearing before it." *Gill v. Whitford*, 138 S. Ct. 1916, 1933 (2018).

That is exactly what this Court did in its tailored summary judgment order: identify the specific statutory applications that violate the Plaintiff's First and Fourteenth Amendment rights, declare those applications unconstitutional, and enjoin the Defendants from enforcing the statutes to that extent. The Defendants do not now contest that those statutory applications are unconstitutional. Instead, they raise a host of follow-up complaints that are manufactured, meritless, or stem from decade-old cases. Addressing their purported complaints would require this Court to exceed the limited role of the judiciary under Article III. The Court should decline the Defendants' invitation to rewrite public policy and rather follow the same course courts in this District took in the *Krawcheck* cases: invalidate the unconstitutional statutory applications and leave the rest up to the legislative process. *Cf.* Defendants' Motion to Alter or Amend (ECF No. 43) 17 (arguing that this Court "create[d] a similar problem to the treatment of the word 'committee' following the *Krawcheck* decisions") (hereinafter "Motion").

More to the point, the Defendants' complaints are not proper subjects of a motion to alter, amend, or clarify. The Defendants had a full opportunity to offer all these arguments about the

scope of the Court's order. Their arguments about confusion or misapplication are largely premised on a blatant misreading of the Court's order, and the Defendants identify no compelling reason to correct any aspect of the order. Indeed, the Defendants do not bother to explain specifically how they want the Court to rewrite or clarify its order—they do not even provide a proposed order.

The only concrete proposal offered by the Defendants is a copy-and-paste job of their inseverability argument that the Court already rejected: get rid of special interest caucuses entirely. Again, this rehashed argument is not proper Rule 59 or 60 material. And the argument has not aged well. The Defendants continue to ignore both the Supreme Court's instruction that courts should simply enjoin unconstitutional statutory applications *and* the fact that their remedy would itself be unconstitutional. Getting rid of special interest caucuses entirely—limiting the associational and expressive rights of caucuses to those organized around race, party, gender—would only deepen the constitutional violations here. Though the Court's summary judgment order pointed out this problem, the Defendants still have no response.

If all that were not enough, under South Carolina law, amendments to an act—like the 2006 amendments to the Ethics Act—are considered part of the original act. That has two significant implications. First, further research has revealed that the Ethics Act had a robust severability clause, which applies to the 2006 amendments under South Carolina interpretive rules. Second, even putting aside that clause, the only two choices in a severability analysis would be to sever the unconstitutional applications or strike the entire Ethics Act—and the Defendants present no evidence of a legislative intent to get rid of the whole Ethics Act rather than eliminate narrow unconstitutional applications like those here. So even applying the Defendants' desired

severability analysis would bring the Court to the same destination: the unconstitutional applications are enjoined, and the rest of the Ethics Act remains in place.

The Court should deny the motion to alter, amend, or clarify.

## LEGAL STANDARD

"[M]otions to alter or amend [a] judgment 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'" *Quillin v. Simon*, No. 3:20-cv-3063-CMC-SVH, 2021 WL 1589274, at *2 (D.S.C. Apr. 22, 2021) (Currie, J.) (quoting *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 n.5 (2008), in turn quoting 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2810.1, pp. 127–28 (2d ed. 1995)).

Rule 59(e) only "allow[s] the court to alter or amend an earlier judgment: '(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice.'" *James v. Saul*, No. 3:18-cv-535-CMC, 2019 WL 13262648, at *1 (D.S.C. Oct. 24, 2019) (Currie, J.) (quoting *Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 290 (4th Cir. 2002)). "Rule 59(e) motions may not be used . . . to raise arguments which could have been raised prior to the issuance of judgment, nor may they be used to argue a case under a novel theory that the party had the ability to address in the first instance." *Id.* (quoting *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998)). "Relief under Rule 59(e) is 'an extraordinary remedy which should be used sparingly.'" *Id.* (quoting *Pac. Ins. Co.*, 148 F.3d at 403). "Mere disagreement does not support a Rule 59(e) motion." *Id.* (quoting *Becker*, 305 F.3d at 290); *see also Simons v. Pryor's, Inc.*, No. 3:11-cv-0792-CMC, 2011 WL 4345825, at *1 (D.S.C. Sept. 15, 2011) (Currie, J.) ("Rule 59(e) does not support reconsideration of a prior ruling simply because counsel disagrees with the court's ruling." (citing *Hutchinson v. Staton*, 994 F.2d 1076, 1082 (4th Cir. 1993))).

"Rule 60(b) sets out grounds for relief from final judgment, including mistake or excusable neglect, newly discovered evidence, fraud or misrepresentation, void judgment, satisfied judgment, or 'any other reason that justifies relief.'" *Addahoumi v. Pastides*, No. 3:16-cv-1571-CMC-SVH, 2018 WL 2117933, at *2 (D.S.C. May 8, 2018) (Currie, J.) (quoting Fed. R. Civ. P. 60(b)), *aff'd*, 745 F. App'x 478 (4th Cir. 2018). "The remedy provided by the Rule 60(b), however, is extraordinary and is only to be invoked upon a showing of exceptional circumstances." *Id.* (cleaned up) (quoting *Compton v. Alton S.S. Co.*, 608 F.2d 96, 102 (4th Cir. 1979)). "To obtain relief under the Rule, a party must demonstrate inter alia that he was not at fault and that the nonmoving party will not be prejudiced by the relief from judgment." *Id.* (quoting *Home Port Rentals, Inc. v. Ruben*, 957 F.2d 126, 132 (4th Cir. 1992)). Like Rule 59(e), "Rule 60(b) does not authorize a motion merely for reconsideration of a legal issue." *CNF Constructors, Inc. v. Donohoe Const. Co.*, 57 F.3d 395, 400 (4th Cir. 1995) (per curiam, joined by Currie, J.) (quoting *United States v. Williams*, 674 F.2d 310, 312 (4th Cir. 1982)).

## ARGUMENT

### I.  The Court already rejected the Defendants' proposed remedy, which remains meritless.

For all the ink spilled on perceived difficulties with applying the Ethics Act—addressed below—the Defendants' motion ultimately makes the same ask that the Court already rejected: "invalidate the entirety of Act 344" and thereby get rid of special interest caucuses altogether. Motion 2; *see id.* at 15–17. None of the Defendants' manufactured concerns about the Court's order bears on the Defendants' legal argument that the challenged provisions are inseverable. Thus, it is unsurprising that the Defendants' rehashed inseverability argument makes only a passing mention of purported "practical issues," and otherwise facsimiles their previous argument. *Compare* Motion 15–17, *with* Defendants' Response in Opposition to Plaintiff's Motion for Summary Judgment (ECF No. 29) 23–25. The Defendants' repeated argument fails.

Most fundamentally, this rehashed legal argument is not a proper basis for a Rule 59(e) or Rule 60(b) motion. As just explained, such "motions may not be used" even "to raise arguments which *could have been* raised prior to the issuance of judgment." *James*, 2019 WL 13262648, at *1 (emphasis added). And they certainly may not be used to "merely rehash the contentions" that *were in fact* already made before judgment. *Paul v. S.C. Dep't of Transp.*, No. 3:16-cv-1727-CMC, 2017 WL 104132, at *1 (D.S.C. Jan. 11, 2017) (Currie, J.), *aff'd*, 691 F. App'x 731 (4th Cir. 2017). That is true under both rules. *See Quillin*, 2021 WL 1589274, at *2 (Rule 59(e) motions "may not be used to relitigate old matters." (cleaned up)); *CNF Constructors*, 57 F.3d at 400 ("Rule 60(b) does not authorize a motion merely for reconsideration of a legal issue.").

Here, the Defendants do nothing other than relitigate their prior inseverability argument. Invoking the purported "absence of a severability clause" and "the test for severability under South Carolina state law," they argue that "the appropriate remedy is to find the entirety of Act 344 to be invalid and enforceable." Motion 15–16. There is nothing new here: they argued at summary judgment that the Court should "invalidate[]" "all subsections" of the 2006 act based on "the test for severability" "[i]n South Carolina" because the act "does not contain a severability clause." ECF No. 29, at 23. This is the same argument. As the Defendants' counsel explained at the Defendants' public meeting about reconsideration in this case, "I still think severability is a valid argument; I think it was an important argument."[1] It *was* an argument.

The Defendants invoke their newfound "host of practical issues" only in a passing sentence as a consequential reason for the Court to adopt their rejected inseverability remedy. Motion 16. Not only could those practical issues have been raised at any time in the Defendants' multiple prior

---

[1] House Legislative Ethics Committee Meeting on Campaign Fundraising Lawsuit, at 1:28.24 (June 19, 2023), *available at* https://www.scstatehouse.gov/video/archives.php?key=13452 (hereinafter "Ethics Meeting").

briefs, or in the extensive hearing in which the Court asked repeatedly about the precise parameters of relief, the Defendants do not even pretend that these issues are relevant to the legal merits of their inseverability argument. *See Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2208 (2020) ("[S]everability presents a pure question of law.").

Because the Court already rejected the Defendants' legal argument about inseverability, and the Defendants offer nothing that was not or could not have been raised before, the Defendants' motion should be denied. *See Pac. Ins. Co.*, 148 F.3d at 403 ("A motion under Rule 59(e) is not authorized to enable a party to complete presenting his case after the court has ruled against him." (cleaned up) (quoting *In re Reese*, 91 F.3d 37, 39 (7th Cir. 1996))).

Even if the Court were to consider again the Defendants' rehashed arguments, it should reach the same conclusion, for four independent reasons.

1. First, the Defendants have no answer to binding Supreme Court authority directing courts to do exactly what this Court did in exercising the judicial power: merely exercise "the negative power to disregard an unconstitutional enactment," *Seila Law*, 140 S. Ct. at 2211 (quoting *Mellon*, 262 U.S. at 488), without "re-writ[ing] [the legislature's] work": "[s]uch editorial freedom belongs to the Legislature, not the Judiciary," *id.* (cleaned up). The Defendants insist that "the appropriate remedy is to find the entirety of Act 344 to be invalid." Motion 16. But "[t]he term 'invalidate' is" simply "judicial shorthand" for "when the Court holds that a particular provision is unlawful and therefore may not be enforced against a plaintiff." *Barr*, 140 S. Ct. at 2351 n.8. All the Court has "authority" to exercise is "the negative power to disregard an unconstitutional enactment." *Id.* (quoting *Mellon*, 262 U.S. at 488). This Court's summary judgment echoed this Supreme Court guidance, concluding that "certain provisions, detailed below, are invalid and unenforceable" and explaining that "it is not the court's place to redline or rewrite the affected

6

statutes": "The revision of the statutory scheme . . . is a task best suited to the State Legislature." SJ Order (ECF No. 40) 33.

This holding tracks the decisions of other courts in this District related to the Ethics Act's definition of "committee." Though recognizing that the "'committee' definition invalidated herein is a component of a comprehensive legislative scheme," Judge Wooten concluded that the definition alone should be invalidated: "The revision of the statutory scheme is a task best-suited to the state legislature." *S.C. Citizens for Life, Inc. v. Krawcheck*, 759 F. Supp. 2d 708, 720 (D.S.C. 2010) (hereinafter *Krawcheck I*); *see also S. Carolinians for Responsible Gov't v. Krawcheck*, 854 F. Supp. 2d 336, 344 (D.S.C. 2012) (Seymour, J.) (hereinafter *Krawcheck II*). The Defendants acknowledge this similarity, alleging that the Court "creat[ed] a similar problem to the treatment of the word 'committee' following the *Krawcheck* decisions." Motion 17. But this similarity is a strike against the Defendants' argument. The *Krawcheck* decisions only confirm that any supposed messiness that results when a federal court is forced to invalidate unconstitutional applications of a state law must be cleaned up by those who made the mess: the state legislature. (And there can be no dispute that the *Krawcheck* decisions led to substantially more upheaval within the Ethics Act than this decision about a few small legislative caucuses.)

2. Even if this Court were to conduct the Defendants' desired severability analysis, the Defendants still would not be entitled to any change in the judgment. To begin, further research has revealed that a severability clause applies to the 2006 amendment (H. 3402) to the Ethics Act. The original Ethics Act, enacted in 1991, contained a robust severability clause:

> If any provision of this act or the application thereof to any person is held invalid, the invalidity shall not affect other provisions or applications of the act which can be given effect without the invalid provision or application and to this end the provisions of this act are severable.

Ethics, Government Accountability, and Campaign Reform Act § 7, 1991 South Carolina Laws 1st Sp. Sess. Act 248 (H.B. 3743), https://www.scstatehouse.gov/sess109_1991-1992/bills/3743.htm. And H. 3402 in 2006 was, as this Court recognized, an "amendment[] to the Ethics Act." SJ Order 4. All of its provisions were amendments to the Ethics Act. Thus, "[t]he challenged provisions of South Carolina law are part of the Ethics Reform Act of 1991." *Id.* at 3.

Under settled South Carolina legal principles, an "amendment becomes a part of the original statute, as if it had always been contained therein." *Windham v. Pace*, 192 S.C. 271, 6 S.E.2d 270, 276 (1939). In other words, "an amended statute should be construed 'as if the original statute had been repealed, and a new and independent Act in the amended form adopted.'" *State ex rel. Carter v. State*, 325 S.C. 204, 208, 481 S.E.2d 429, 431 (1997) (quoting *Windham*, 192 S.C. at 284, 6 S.E.2d at 275–76). "[T]he original provisions of the act, not affected by the amendment, are to be regarded, so far as the time of their taking effect is concerned, as if no amendment had been inserted." *Hardin v. Trimmier*, 27 S.C. 110, 3 S.E. 46, 54 (1887).

Therefore, the 2006 amendment must be read as if it were "incorporated in" the original Ethics Act and "subject to the provisions of" that act—including its severability clause. *City Council of Anderson v. O'Donnell*, 29 S.C. 355, 7 S.E. 523, 525 (1888). So if the Court were to conduct a severability analysis based on invalidating certain applications of the 2006 amendment, it should start with the original act's severability clause. That clause makes clear that the invalidation of "any provision of this act or the application thereof to any person" "shall not affect other provisions or applications of the act." Ethics Act § 7.[2] Under South Carolina severability

---

[2] That the Ethics Act's severability clause was not formally codified makes no difference, as South Carolina gives effect to such clauses in enacted bills, regardless of codification. *See, e.g.*, *Joytime Distribs. & Amusement Co. v. State*, 338 S.C. 634, 650, 528 S.E.2d 647, 656 (1999) (per curiam) (applying a severability clause that was not formally codified); *Pinckney v. Peeler*, 434 S.C. 272, 288, 862 S.E.2d 906, 915–16 (2021) (same).

law, the central question is whether "the constitutional portion of the statute" "is of such a character that it may fairly be presumed that the legislature would have passed it independent of that which conflicts with the constitution." *In re DNA Ex Post Facto Issues*, 561 F.3d 294, 301 (4th Cir. 2009) (quoting *Joytime*, 338 S.C. at 648–49, 528 S.E.2d at 654); *see* SJ Order 33 ("In short, the question is whether the intention of the Legislature can be fulfilled absent the offending provision."). The act's severability clause answers that question beyond any doubt: yes. The South Carolina Supreme Court has explained that such a severability clause "is strongly worded and evidences strong legislative intent that the several parts of [the act] be treated independently." *Joytime*, 338 S.C. at 649, 528 S.E.2d at 654.

That rule follows from South Carolina's approach to statutory interpretation, which focuses on the text as "the best evidence of the legislative intent." *Smith v. Tiffany*, 419 S.C. 548, 555–56, 799 S.E.2d 479, 483 (2017) (cleaned up). Under this "cardinal rule" of interpretation, "[w]here the statute's language is plain and unambiguous, and conveys a clear and definite meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning." *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000). Nothing about the robust severability clause is ambiguous, so the analysis should end.

Decisions around the country follow this same mode of statutory interpretation when it comes to amendments to an act containing a severability clause. *See, e.g.*, *Barr*, 140 S. Ct. at 2349 n.6 ("When Congress enacts a law with a severability clause and later adds new provisions to that statute, the severability clause applies to those new provisions to the extent dictated by the text of the severability clause."); *Caritas Servs., Inc. v. Dep't of Soc. & Health Servs.*, 123 Wash. 2d 391, 417, 869 P.2d 28, 42 (1994) ("[A]n amendment to an act containing a severability clause is upon enactment covered by that clause."); *Lynn v. Kootenai Cnty. Fire Protective Dist. No. 1*, 97 Idaho

623, 627, 550 P.2d 126, 130 (1976) ("This court in the absence of evidence of contrary legislative intent, can presume that the legislature intended the previously enacted severability clause to apply to the amendments." (citing C. Dallas Sands, Sutherland Statutory Construction §§ 22.34, 22.35, 44.08 (4th ed. 1972))); *King v. Campbell*, 988 So. 2d 969, 982 (Ala. 2007) ("Here we have a severability clause within the original act—the 1985 Act—creating the additional judgeship for the 29th Judicial Circuit, thereby justifying the conclusion that there exists a 'clear statement' of legislative intent in favor of severability."); *State ex rel. Dep't of Agric. v. Marriott*, 237 Wis. 607, 296 N.W. 622, 625 (1941) ("[I]t is a fair conclusion that the amendment was to be as subject to the severability clause as any of the other existing provisions of the extended law.").[3]

Beyond the severability clause's applicability,[4] that South Carolina law treats the 2006 amendment as part of the original Ethics Act has other implications for any severability analysis. In particular, the Court's focus cannot be limited, as the Defendants argue, to "the Legislature's intention" as to the "provisions of Act 344." Motion 16. Instead, as this Court already and correctly explained, the issue is whether "the challenged portions" "can[] be severed from the entirety of the Ethics Act." SJ Order 32. In other words, the relevant question is whether the General Assembly would have preferred that the unconstitutional special interest caucus limitations be severed or the

---

[3] Several of these decisions rely on Sutherland's treatise, which explains that "[t]he original section as amended and the unaltered sections of the act, code, or compilation of which it is a part, and which relate to the same subject matter, are read together." Norman J. Singer & J.D. Shambie Singer, Sutherland Statutory Construction § 22:35 (7th ed. 2015). As discussed, South Carolina has specifically adopted this legal principle, and it regularly relies on the Sutherland treatise. *See, e.g.*, *Joytime*, 338 S.C. at 643, 528 S.E.2d at 652; *Hodges*, 341 S.C. at 85, 87, 533 S.E.2d at 581–82; *Knotts v. S.C. Dep't of Nat. Res.*, 348 S.C. 1, 10, 558 S.E.2d 511, 516 (2002).
[4] Even if an Act does not contain a severability clause, South Carolina's doctrine of severability must still be applied. *See, e.g.*, *Thomas v. Cooper River Park*, 322 S.C. 32, 34, 36, 471 S.E.2d 170, 171–72 (1996) (applying South Carolina's "test for severability" and severing offending provision despite the lack of a severability clause); *Curtis v. State*, 345 S.C. 557, 571, 549 S.E.2d 591, 598 (2001) (same); *Ex Post Facto Issues*, 561 F.3d at 301 (same).

entire Ethics Act—including the 2006 amendments that became part of that Act—be struck down. Again, the severability clause answers that question. But even if it did not, the Defendants provide no reason to think that the General Assembly would have preferred no Ethics Act at all to an Ethics Act with a small subset of constitutional errors corrected. Indeed, the Defendants' arguments in this case seem to place great value on the Ethics Act's other provisions. *E.g.*, ECF No. 29, at 10–14 ("South Carolina history demonstrates the need for campaign finance regulation").

Presented with such a choice, courts should favor "carefully crafted injunctive relief" "prohibiting unconstitutional applications" to "invalidating the statute *in toto*." *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 331–32 (2006). As the Supreme Court has explained, "when confronting a constitutional flaw in a statute, we try to limit the solution to the problem": "[w]e prefer, for example, to enjoin only the unconstitutional applications of a statute while leaving other applications in force." *Id.* at 328–29. South Carolina law is to similar effect: "The separation and independence of each branch of government require that we go no further than absolutely necessary in declaring unconstitutional an action of the legislature." *Stone v. Traynham*, 278 S.C. 407, 409, 297 S.E.2d 420, 422 (1982). Once again, all this confirms the propriety of the Court's tailored injunctive relief against certain applications of the challenged provisions.

In short, the choice before the Defendants and the Court in any severability analysis is simple: either sever the unconstitutional applications of the Ethics Act or strike down that Act in its entirety. The Plaintiff—like the severability clause—supports the former. Under South Carolina statutory interpretation principles, the Defendants' only alternative is the latter: invalidation of the entire Ethics Act. However much the Defendants dislike the Plaintiff, they cannot come close to

showing that the General Assembly would have preferred such a remedy, cutting off its nose to spite its face.[5]

3. Putting aside that South Carolina law requires consideration of the 2006 amendment as part of the Ethics Act, the challenged applications would still be severable from the 2006 amendment. The Defendants do not argue that the remainder is incapable "of being executed" independently. *Joytime*, 338 S.C. at 649, 528 S.E.2d at 654. And as previously shown, the Defendants ignore the intent of the legislature expressed through both the title of the amendment (which separates the parts) and the General Assembly's decision to override the Governor's veto after he expressed similar ethical concerns. *See* Supplemental Reply in Support of Motion for Summary Judgment (ECF No. 33) 14–15; SJ Order 7; *see also Joytime*, 338 S.C. at 649, 528 S.E.2d at 655 ("This intent to treat the several parts independently is also evident in the Title to the Act."). The Defendants' only suggestion of a contrary intention is that the unconstitutional limitations were "in the very next sentence" as the "very definition of legislative special interest caucuses." Motion 16. But that is a thin reed for inseverability; that the provisions were in separate sentences just as readily shows that the General Assembly considered the issues separately—as further suggested by the amendment's title. *See, e.g.*, *FCC v. League of Women Voters of Cal.*, 468 U.S. 364, 371 n.9 (1984) (noting that Congress "'reinforce[d] the severability of the two provisions [of an act] by setting them forth in separate sentences'" (quoting the record)). In any event, this argument was previously available to Defendants, so it is not a proper basis for reconsideration.

---

[5] The Court need not alter or amend its order to reflect these points. Again, the Court already correctly framed the issue as whether "the challenged portions" "can[] be severed from the entirety of the Ethics Act." SJ Order 32. Plus, the above points do not change the appropriate outcome, and the Court of Appeals "may affirm on any grounds apparent from the record." *L.J. v. Wilbon*, 633 F.3d 297, 310 n.9 (4th Cir. 2011) (cleaned up); *see also* Fed. R. Civ. P. 61 ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.").

4.   Finally, even if the challenged applications were not severable from the Ethics Act (or some part of it), judgment for the Plaintiff would still be required. As shown above, the only available remedy under South Carolina law if those applications are not severable is to strike down the entire Ethics Act. Again, the Plaintiff does not advocate for that remedy, but it is the only other choice available to the Defendants. Even disregarding South Carolina's settled law about the nature of statutory amendments, and pretending that the Court could (or should) strike down only the 2006 amendments, the Plaintiff would *still* be entitled to judgment.

As this Court already recognized, the Plaintiff has argued that "eliminating special interest caucuses altogether . . . would 'worsen, not remedy, the constitutional violations here'" because "'the Court would still have before it the same unconstitutional discrimination that exists now.'" SJ Order 32 (quoting ECF No. 33, at 4). The Defendants have never responded to this argument and still have no response. As the Plaintiff already explained, striking down the 2006 amendment—and eliminating special interest caucuses altogether—would not only perpetuate the existing free speech violations, but it would also prevent the Plaintiff's members from "band[ing] together in association." ECF No. 33, at 14. "Thus, South Carolina law would continue to violate the First Amendment, for all the same reasons." *Id.* "So if severability law required the Defendants' proposal, the proper remedy would be to invalidate the State's definition of legislative caucuses to the extent that it excludes disfavored groups." *Id.* The Defendants have no answer, and they have not pointed to any case in which a federal court has imposed a "remedy" for a constitutional violation that *exacerbates* the violation. "A plaintiff's remedy must be tailored to redress the plaintiff's particular injury." *Gill*, 138 S. Ct. at 1934. Federal courts have authority to "to redress harms that defendants cause plaintiffs"—not add to those harms. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021) (cleaned up).

For all these reasons, the Court's tailored order appropriately resolved this case and left "[t]he revision of the statutory scheme" "to the State Legislature" (SJ Order 33)—just like the *Krawcheck* decisions. The Defendants view such tailored remedies as a "problem" (Motion 17), but their real problem is with Article III of the Constitution, which authorizes federal courts only to resolve cases and controversies. The Defendants present nothing worthy of reconsideration, and their arguments are even more evidently wrong now than when they first made them. There is no "clear error of law" here. *James*, 2019 WL 13262648, at \*1. The Court should deny the Defendants' motion.

## II.  The Defendants' perceived "uncertainties" are irrelevant and illusory.

Though the bulk of the Defendants' motion is addressed to alleged uncertainties after the decision, Motion 6–14, those uncertainties are irrelevant to the only "appropriate remedy" that the Defendants demand: striking down the 2006 amendment to the Ethics Act, *id.* at 15 (capitalization omitted). As shown above, the Defendants' legal arguments on the severability front are no different from those that were or could have been made before, which is alone enough to deny their motion. What's more, the various alleged uncertainties that the Defendants trot out are equally arguments that could have been made anytime during this Court's careful consideration of an appropriate remedy. *See, e.g.*, 5/11/23 Hearing Transcript (ECF No. 39) 11–16; *id.* at 38:10–18 (Defendants' counsel making the same basic argument). Thus, they are not the stuff of proper Rule 59(e) or Rule 60(b) motions. *See, e.g.*, *Quillin*, 2021 WL 1589274, at \*2 ("[M]otions to alter or amend [a] judgment 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'").

The Defendants' alleged uncertainties are wholly irrelevant for another reason. Neither the federal judiciary nor the First Amendment aims to develop tidy state public policy. "[T]he sole duty of the federal courts is not to decide general questions for everyone, but rather to settle

particular 'cases' or 'controversies' between particular parties." *CASA de Maryland, Inc. v. Trump*, 971 F.3d 220, 256 (4th Cir. 2020), *reh'g en banc granted*, 981 F.3d 311 (4th Cir. Dec. 3, 2020) (Mem.); *see Dep't of Educ. v. Brown*, 143 S. Ct. 2343, 2351 (2023) ("[The Court's] authority under the Constitution is limited to resolving 'Cases' or 'Controversies.'"). When a legislature enacts an unconstitutional provision, "the role of courts under our Constitution is not to fashion a new . . . law to take its place, but to treat the [provision] as a nullity and invite [the legislature] to try again." *United States v. Davis*, 139 S. Ct. 2319, 2323 (2019).

Meanwhile, "[t]he First Amendment reflects a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) (cleaned up). When a State unconstitutionally restricts speech, it should not be heard to complain that eliminating those unconstitutional restrictions disrupts a scheme founded on such restrictions. If that happens—and as shown next, the Defendants wildly overstate any disruption here—the entity that must fix the scheme is the State, which is responsible for the problem. When it comes to *judicial* remedies, "the First Amendment requires [courts] to err on the side of protecting political speech rather than suppressing it." *FEC v. Cruz*, 142 S. Ct. 1638, 1653 (2022) (cleaned up). "The First Amendment embodies our choice as a Nation that, when it comes to [election] speech, the guiding principle is freedom—the unfettered interchange of ideas—not whatever the State may view as fair." *Arizona Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 750 (2011) (cleaned up); *see* SJ Order 20 ("'The First Amendment has its fullest and most urgent application to speech uttered during a campaign for political office,' and 'political speech must prevail against laws that would suppress it, whether by design or inadvertence.'" (quoting *Citizens United v. FEC*, 558 U.S. 310, 339–40 (2010))).

To be sure, sometimes a State will be uninterested in fixing supposed problems in the wake of judicial correction. Here, it is hard to take seriously the Defendants' complaints about uncertainties "in light of the Legislature's failure to amend the Ethics Act after Judge Wooten declared the definition of 'committee' in § 8-13-1300(6) unenforceable, leaving outside groups free to raise and spend funds to influence elections with no limits" for over a decade. SJ Order 23 n.14. And as noted, *Krawcheck* introduced fundamental uncertainty into the law—but the courts in those cases did not hesitate to enforce the First Amendment. In all events, the point is simple: the Court merely enforces the Constitution. If the State has made a mess with unconstitutional regulations, it can decide whether to fix it. "[T]his Court is not in the business of writing new statutes to right every social wrong it may perceive." *Davis*, 139 S. Ct. at 2336.

Even considering the Defendants' complaints on their own terms, the alleged "uncertainties" quickly dissipate—except for "uncertainties" that predated this Court's order and were instead caused by either (1) the Ethics Act itself or (2) the *Krawcheck* decisions (and the General Assembly's failure to address these issues). The Defendants first say that "in the wake of the Court's Order, it is now unclear whether special interest legislative caucuses are subject to the same limitations on receiving contributions as legislative caucus committees." Motion 7. Right away, the Defendants run into trouble, dropping a footnote explaining that "S.C. Code Ann. § 8-13-1322 provides the dollar limits on contributions to committees," but "the word 'committee' is no longer operative in the South Carolina Ethics Act" after *Krawcheck*. *Id.* at 7 n.5. This apparent suggestion—that *Krawcheck* might have eliminated all committee contribution limits— underscores that the real problem here is the preexisting disarray that the General Assembly has left in place.

In any event, assuming that contribution limits apply to legislative caucus committees, the Court's order only invalidated the prohibition on special interest caucuses "accept[ing] . . . anything of value" "to the extent" that the requirement "differ[s] from statutes and rules applicable to legislative caucuses." SJ Order 36. In other words, that prohibition remains in effect, except to the extent that legislative caucuses may accept "[]thing[s] of value," like contributions. And existing law, including S.C. Code Ann. § 8-13-1322 (or *Krawcheck*), provides the extent to which legislative causes may accept contributions. *See* S.C. Code Ann. § 8-13-100(9) (defining "contribution" to include "anything of value made to a candidate or committee, as defined in Section 8-13-1300(6), for the purpose of influencing an election"). Again, all this territory was covered in the parties' arguments before judgment. *See* 5/11/23 Hearing Transcript 14:7–12 (Plaintiff's counsel: "[W]e're not saying that the Plaintiff shouldn't be subject to any disclosure requirements or even any contribution limits," though that "might get into the *Krawcheck* question"; "all we're saying is that the same contribution and disclosure regime that the favored caucuses operate under should apply to the Plaintiff"); *id.* at 17–20 (extended discussion of these issues).

The Defendants' other complaints are just as frivolous. The Defendants worry "that legislative caucus committees are expressly limited in number by statute, but legislative special interest caucuses are *not* limited in number." Motion 8. But the Court's order has nothing to do with the number of special interest caucuses, which is irrelevant here. And once again, the Defendants are wrong anyway: the definition of "legislative caucus committee" extends to "a party or group of either house of the General Assembly based upon racial or ethnic affinity, or gender," with no numerical limitation. S.C. Code Ann. § 8-13-1300(21)(b). Even the separate statutory definition does not "expressly limit[]" the overall number of legislative caucuses committees, but

17

permits "one committee for each political, racial, ethnic, or gender-based affinity." *Id.* § 8-13-1300(21)(a). Though the relation between the two definitions of legislative caucuses is and has always been unclear, even assuming the definition in subsection (a) overrides subsection (b)—and the Defendants do not explain why that would be the case—the Defendants do not say why they think that no other political, racial, ethnic, or gender-based caucuses could be formed. *See* 5/11/23 Hearing Transcript 22–23 (addressing this issue before judgment).

Growing more conspiratorial, the Defendants fret that "a special interest caucus could arguably be created, in whole or in part, for some nefarious purpose, for which that caucus could then raise and spend money and potentially influence the outcome of an election or ballot measure." Motion 9 n.8; *see also infra* note 12. What that conspiracy theory has to do with the Court's order, the Defendants do not say. This purported concern is equally true of "committees" under existing state law—and indeed legislative caucuses themselves. At any rate, "the basis of the First Amendment is the hypothesis that speech can rebut speech, propaganda will answer propaganda, free debate of ideas will result in the wisest governmental policies." *Dennis v. United States*, 341 U.S. 494, 503 (1951); *see also Mahanoy Area Sch. Dist. v. B. L.*, 141 S. Ct. 2038, 2048 (2021) ("[U]ndifferentiated fear or apprehension is not enough to overcome the right to freedom of expression." (cleaned up)).

Next, the Defendants say that the Court's "Order creates unequal enforcement of the challenged statutes" because it only enjoins the Defendants in this case, members of the House Legislative Ethics Committee. Motion 9. It's hard to know where to begin with this one. First, a court exercising Article III judicial power properly resolves a case or controversy as to the parties before it. Remedies "operate with respect to specific parties." *California v. Texas*, 141 S. Ct. 2104, 2115 (2021) (cleaned up). Thus, courts generally should not issue an injunction "against other

parties" not before them, especially if such an injunction would "not provide any additional relief to" the plaintiff. *Va. Soc'y for Hum. Life, Inc. v. FEC*, 263 F.3d 379, 393 (4th Cir. 2001), *abrogated on other grounds by The Real Truth About Abortion, Inc. v. FEC*, 681 F.3d 544 (4th Cir. 2012). As the Court already held, and the Defendants do not contest, the House Legislative Ethics Committee would be the entity to "issue[] [a] final order[]" against the Plaintiff, and its members are the "proper Defendants." SJ Order 10 n.5; *see id.* at 9–10; *see also CASA de Maryland*, 971 F.3d at 256 ("Article III requires that injunctions be tailored to protect only the plaintiffs in a specific case from the defendants to that suit.").

Second, federal courts generally "assume" that when they issue a declaration of invalidity, "it is substantially likely that" government actors will in good faith "abide by an authoritative interpretation . . . by the District Court, even though they would not be directly bound by such a determination." *Franklin v. Massachusetts*, 505 U.S. 788, 803 (1992). For instance, the orders in the *Krawcheck* cases technically ran only against the defendants in those cases—members of the State Ethics Commission, *Krawcheck I*, 759 F. Supp. 2d at 709; *Krawcheck II*, 854 F. Supp. 2d at 337—but there has been no apparent effort by the Defendants here or the Senate Ethics Committee to flout *Krawcheck*. *See* 5/11/23 Hearing Transcript 36:7–10 (Defendants' counsel stating that the House and Senate Ethics Committees "have not simply ignored Judge Wooten's order" and do not engage in "enforcement on that basis"). What's more, the *Krawcheck* decisions issued only declaratory relief, *Krawcheck I*, 759 F. Supp. 2d at 728; *Krawcheck II*, 854 F. Supp. 2d at 344, so on the Defendants' Andrew Jackson theory of the law—"John Marshall has made his decision; now let him enforce it!"[6]—even the Ethics Commission could have simply disregarded the orders. The Defendants' concerns are not a proper basis for the Court to exceed its authority.

---

[6] *Bush v. Gore*, 531 U.S. 98, 158 (2000) (Breyer, J., dissenting).

Third, if the Senate Ethics Committee or the State Ethics Commission *were* to try to "enforc[e] the challenged statutes," as the Defendants suggest (Motion 10), and an injured party brought a federal action, the courts can resolve that issue then. There is simply nothing that the Court's order could or should do that bears on the Defendants' "unequal enforcement" concern— nor do the Defendants suggest anything.[7]

The Defendants' next concern is that "[r]emoving the limitation that legislative special interest caucuses cannot 'engage in any activity that would influence the outcome of an election or ballot measure' arguably now allows legislative special interest caucuses to engage in such activity to influence the outcome of an election *without limitation*." Motion 12. This concern is hard to understand too. Special interest caucuses and their members are regulated in many ways that the Court's order left untouched. *See, e.g.*, S.C. Code Ann. §§ 2-17-10(21), 2-17-90; SJ Order 36 (invalidating only certain applications of S.C. Code Ann. §§ 2-17-110 and 8-13-1333(C)). The Defendants' misunderstanding seems to be premised on the fact that the "definitions" that "apply only to legislative caucuses" "do not apply to legislative special interest caucuses." Motion 12. But the Court's order frees special interest caucuses from unconstitutional applications of the statutory provisions only "to the extent" that the statutory scheme leaves legislative caucuses free to engage in such speech. SJ Order 36. In other words, the Court's order neither eliminates the definition of "special interest caucus" nor blots out the limitations that apply to them; those limitations simply cannot be applied "to the extent they differ from statutes and rules applicable to legislative caucuses." *Id.*

---

[7] The Defendants' only proffered remedy—based on its incorrect inseverability argument—would also run only against the Defendants in this case. This confirms that, as explained above, the merits of the Defendants' rehashed inseverability argument have nothing to do with the Defendants' expressed worries.

Without providing any concrete examples, Defendants feign confusion about this straightforward order with respect to four actions, claiming that "it is unclear what statutes the Ethics Committee can or cannot enforce against" special interest caucuses. Motion 13. All of their arguments here are founded on their mistaken belief that special interest caucuses need to be somehow redefined for the rules to apply to them. As just shown, that is not how the Court wrote its tailored order.

Taking the Defendants' categories in turn, the first is "solicit contributions." *Id.* But the Defendants point to no statute that regulates legislative caucuses' solicitation of contributions, so they fail to show even a theoretical confusion. To the extent that some statute regulates those caucuses' contribution solicitations, *e.g.*, S.C. Code Ann. § 8-13-1336 (regulating solicitations on Capitol grounds), such a statute would apply to special interest caucuses under the Court's order because they may only "solicit contributions as defined in Section 8-13-100(9)" to the extent that "legislative caucuses as defined in § 2-17-10(11)" may. SJ Order 36. There is simply no confusion here.

The Defendants' second category is "accept funds from lobbyists." Motion 13. Once again, the Defendants do not bother to cite any statute about legislative caucuses' ability to accept funds from lobbyists. And once again, whatever statutes pertain to that ability would presumably apply to special interest caucuses, because they may only "accept funds from a lobbyist" "to the extent" that "legislative caucuses as defined in § 2-17-10(11)" may. SJ Order 36.

The Defendants' third category is "recordkeeping as to the amount of donations or the name and address of donors." Motion 13. Here the Defendants finally point to a relevant legislative caucus statute, S.C. Code Ann. § 8-13-1302. Yet again, the Court's order creates no confusion here: special interest caucuses are only freed from the listed unconstitutional provisions "to the

extent" that those provisions "differ from" the rules otherwise applicable to legislative caucuses. SJ Order 36. So special interest caucuses may accept something "of value" only in the circumstances that a legislative caucus could, *id.*, and when it comes to contributions, those circumstances—including any required recordkeeping—are laid out in S.C. Code Ann. § 8-13-1302 and other provisions.

The Defendants' fourth category is "accept gifts, loans, or anything of value," and they point to S.C. Code Ann. § 8-13-1322(A), providing dollar limits on contributions to committees. Motion 13–14. The Plaintiff already explained the applicability of this provision, *supra* pages 16–17, and there is still no confusion under the Court's order. Special interest caucuses may accept "[]thing[s] of value"—including contributions—to the extent that legislative caucuses may.

Finally, the Defendants claim, without citation or explanation, that "[t]he Order appears to open the door to unlimited lobbying money to legislative special interest caucuses while legislative caucuses remain expressly limited." Motion 14. Not to repeat *ad nauseam*, but the plain text of the Court's order only permits lobbyists to make contributions to special interest caucuses "to the extent" that they may make contributions to legislative caucuses. SJ Order 36. It simply does not matter that special interest caucuses are not defined as legislative caucuses, because the Court's order invokes the substantive "statutes and rules" that apply to the latter caucuses. *Id.*

Thus, the Defendants fail to show even a single concrete example of uncertainty resulting from the Court's order. Of course, even if they had, the job of fixing the law is not this Court's—it is the legislature's. And none of this has anything to do with a Rule 59(e) or Rule 60(b) motion, as these are all arguments that the Defendants could have made (or did make) already—and they are unrelated to the rehashed legal argument about inseverability that is the real focus of the Defendants' demand that the Court alter or amend its judgment.

**CONCLUSION**

There is one last reason that it is hard to take seriously the Defendants' complaints. They have repeatedly made public claims about the Court's order—echoed to some extent in their motion—that are simply false. For instance, Defendants Rutherford and Caskey claimed that the Court's order permits just "one legislator" to form a special interest caucus.[8] False: the Court's injunction says nothing about the portion of S.C. Code Ann. § 2-17-10(21) requiring "two or more legislators."[9] Defendant Rutherford also claimed that the Court's order means that special interest caucuses do "not have to disclose their membership."[10] Again, false: the Court's injunction says nothing about the portion of S.C. Code Ann. § 2-17-10(21) requiring these caucuses to "provide" "the names of all caucus members."[11] Defendant Rutherford claimed that the Court's order means that special interest caucuses can get "cash" and do "not have to report it."[12] Not true: the Court's order permits these caucuses to "accept a gift, loan, or anything of value" only "to the extent" that legislative caucuses can—and the law sets strict parameters on those caucuses' receipt of cash contributions. *See* S.C. Code Ann. § 8-13-1322(B).

The Plaintiff could go on, but there is no need to amplify the Defendants' misstatements. Perhaps journalists can be forgiven for misunderstanding or misrepresenting judicial opinions;

---

[8] Ethics Meeting, *supra* note 1, at 32.22 (Defendant Rutherford: "[O]ne legislator forms a caucus . . . ."; *id.* at 44.42 ("Defendant Rutherford: "And so, one member creates the 'Fishing Caucus' . . . ."); Seanna Adcox, *SC Freedom Caucus win in federal court escalates Statehouse GOP schism*, Post & Courier (June 13, 2023), https://tinyurl.com/2xbzaham (Defendant Caskey: "[T]here's nothing to stop me from starting a caucus only I join.").

[9] *See also* 5/11/23 Hearing Transcript 13:9–13 (Plaintiff's counsel agreeing that "the registration requirement is not a problem"); *id.* at 15:23–25 (same); *id.* at 31:7–9 (Defendant's counsel stating that it is "heartening" that the Plaintiff is "not worried about the registration requirements").

[10] Ethics Meeting, *supra* note 1, at 32.27.

[11] *See also* 5/11/23 Hearing Transcript 13:14–17 (Plaintiff's counsel agreeing that "the information that the Caucus . . . must submit to the Clerk's office is not a problem").

[12] Ethics Meeting, *supra* note 1, at 30.20, 35.00, 44.49; *see also id.* at 56.59 ("[Y]our fentanyl dealer friend could give you a million dollars for your fentanyl caucus, in cash . . . .").

they are not lawyers, and the media's incentive is often "to titillate rather than to educate and inform." *Chandler v. Florida*, 449 U.S. 560, 580 (1981). But public servants—particularly those who are officers of the court system—should be held to a higher standard.

"This case is not one warranting application of the 'extraordinary remedy' Rules 59(e) and/or 60(b) provide." *Addahoumi*, 2018 WL 2117933, at *5. The Court should deny the Defendants' motion.

Respectfully submitted,

*/s/ Christopher Mills*

| | |
|---|---|
| Gene P. Hamilton (*pro hac vice*) | Christopher Mills (Fed. Bar No. 13432) |
| Reed D. Rubinstein (*pro hac vice*) | SPERO LAW LLC |
| AMERICA FIRST LEGAL FOUNDATION | 557 East Bay St. #22251 |
| 611 Pennsylvania Ave. SE #231 | Charleston, SC 29413 |
| Washington, DC 20003 | Tel: (843) 606-0640 |
| Tel: (202) 964-3721 | cmills@spero.law |
| reed.rubinstein@aflegal.org | |

*Counsel for Plaintiff*

July 21, 2023