# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| SOUTH CAROLINA FREEDOM CAUCUS, <br><br> *Plaintiff*, <br><br> v. <br><br> WALLACE H. JORDAN, JR., J. DAVID WEEKS, BETH E. BERNSTEIN, PAULA RAWL CALHOON, MICAJAH P. CASKEY, IV, NEAL A. COLLINS, JOHN RICHARD C. KING, ROBBY ROBBINS, J. TODD RUTHERFORD, AND LEONIDAS E. STAVRINAKIS, in their official capacities as members of THE HOUSE OF REPRESENTATIVES LEGISLATIVE ETHICS COMMITTEE, <br><br> *Defendants*. | Civil Action No. 3:23-cv-00795-CMC <br><br><br> **DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO ALTER, AMEND, OR CLARIFY SUMMARY JUDGMENT ORDER** |

Defendants Wallace H. Jordan, Jr., J. David Weeks, Beth E. Bernstein, Paula Rawl Calhoon, Micajah P. Caskey, IV, Neal A. Collins, John Richard C. King, Robby Robbins, J. Todd Rutherford, and Leonidas E. Stavrinakis, in their official capacities as members of The House of Representatives Legislative Ethics Committee (collectively, the "Ethics Committee" or "Defendants") respectfully submit this Reply in support of their Motion to Alter or Amend Summary Judgment Order (ECF No. 40, hereinafter "Order"), or, in the alternative, Motion for Clarification (ECF No. 43, hereinafter "Motion") and in reply to that arguments made in Plaintiff's Memorandum in Opposition to Motion for Reconsideration (ECF No. 46, hereinafter "Response").

## INTRODUCTION

In its Response, Plaintiff attempts to cast the legitimate and very real concerns that face the Ethics Committee in the wake of the Order as "manufactured" and "rehashed." ECF No. 46 at 1-2. However, Plaintiff ignores the realities – 2024 is an election year, fundraising has already begun,

the Ethics Committee is tasked with enforcing the Ethics Act as it currently exists following the Court's Order, and the Ethics Committee strives to do so complying with the Court's Order. However, in order to do so, the Ethics Committee, through its Motion, sought clarification from the Court because legislative special interest caucuses, like Plaintiff, have discussed raising money "as soon as possible."[1] In fact, Plaintiff has publicly stated that it is already in the process of setting up bank accounts to raise money.[2] These are not "illusory" concerns as Plaintiff posits – these are very real concerns that the Ethics Committee is going to have deal with, in the forms of complaints, opinions, or enforcement. Because of the uncertainty created by the Order, the Ethics Committee asked the Court to alter or amend its judgment, or in the alternative to clarify the Order as to the scope of the remedy and exactly what was meant by the phrase "to the extent they differ from statutes and rules applicable to legislative caucuses as defined in § 2-17-10(11)." ECF No. 40 at 36. In the absence of an altered or amended judgment, or a clarified judgment, the Ethics Committee is faced enforcing an arguably ambiguous law, which the Ethics Committee alone cannot amend or rewrite.

## ARGUMENTS

I. **Given the Court's Findings as to the Unconstitutionality of Certain Provisions of Act 344, the Only Appropriate Judicial Remedy is to Strike Act 344 in its Entirety.**

In its Motion, the Ethics Committee did not "rehash" arguments related to inseverability as Plaintiff contends. Instead, it carefully walked through the practical implications of the Court's

---

[1] Seanna Adcox, *SC Freedom Caucus win in federal court escalates Statehouse GOP schism*, Post and Courier, https://www.postandcourier.com/politics/sc-freedom-caucus-win-in-federal-court-escalates-statehouse-gop-schism/article_17afa7a8-0a1c-11ee-b320-737d19821f44.html (June 13, 2023).

[2] Mary Green, *Legislators fear S.C. ethics law 'blasted wide open' after judge rules in campaign fundraising lawsuit*, WIS News, https://www.wistv.com/2023/06/19/legislators-fear-sc-ethics-law-blasted-wide-open-after-judge-rules-campaign-fundraising-lawsuit/ (June 19, 2023).

Order, as well as pointed out areas of possible ambiguity. Then, the Ethics Committee argued that, because of the Court's findings and the issues stemming from those, striking the entirety of Act 344 was the only appropriate judicial remedy and one that would not violate the separation of powers and encroach on the function of the legislature.

It is true that the Ethics Committee, in Summary Judgment briefing, raised the consideration of the lack of a severability clause should the decide that only portions of the challenged statutes were unconstitutional. *See* ECF No. 29 at 23-25. As Defendants explained, to do so would frustrate the legislature's intent in passing H. 3402 (as Act 344), and would violate established state law principles of severability. *See id.* The Court agreed that "[s]everability is a question of state law," ECF No. 40 at 32, and further, correctly stated that, under South Carolina law, the Court must look at the legislative intent and interplay among parts of a statute, *see id.* at 33 ("the Legislature would not have passed the residue independently of that which is void, the whole act is void.") (quoting *Fairway Ford, Inc. v. Timmons*, 281 S.C. 57, 59, 314 S.E.2d 322, 324 (1984)).

While the Court determined that "it is not the court's place to redline or rewrite the affected statutes," and to do as much would be "is a task better suited to the State Legislature," *id.*, the Court's Order declares certain provisions invalid, while keeping the residue of Act 344 intact. By doing so, the Court's Order frustrates legislative intent by removing parts of a complex statutory scheme, on which other parts of the scheme depend.

As Defendants previously explained, all of the challenged statutes were passed in Act 344, which defines "Legislative Special Interest Caucuses," and in the very next sentence, limits their ability to influence the outcome of an election or ballot measure. This is, along with the complete absence of a severability clause, evidence that the legislature would not have created legislative

3

special interest caucuses absent assurance that these express limitations would apply. *See* ECF No. 40 at 33 ("Without a legislative declaration that invalidity of a portion of the statute shall not affect the remainder, the presumption is that the Legislature intended the act to be effected as an entirety or not at all." (citing *S.C. Tax Comm'n v. United Oil Marketers, Inc.*, 306 S.C. 384, 389, 412 S.E.2d 402, 405 (1991))).

Clearly, Plaintiff is concerned with a possible remedy striking the entirety of Act 344 because that Act contains the very definition that created legislative special interest caucuses. If Act 344 falls, so does Plaintiff's current organizational structure. Plaintiff again, without support, claims that "[g]etting rid of special interest caucuses entirely—limiting the associational and expressive rights of caucuses to those organized around race, party, gender—would only deepen the constitutional violations here." ECF No. 46 at 2; *see also* ECF No. 33 at 4 ("eliminating the existence of special interest caucuses altogether… would worsen, not remedy, the constitutional violations here"). Yet, Plaintiff does not explain how. Indeed, there is no constitutional right to organize as a legislative special interest caucus – that is purely a creature of statute that was implemented in 2006 only so long as there were express limitations. *See* ECF No. 29-3 at ¶¶ 5-7 (Hiott Decl.). The legislature, as a whole, could decide to remove the entire definition of legislative special interest caucus from the Ethics Act and Plaintiff fails to articulate how that would leave "the same unconstitutional discrimination that exists now." ECF No. 33 at 4. That is because Plaintiff cannot, as such a remedy would not implicate constitutional concerns. Plaintiff has numerous other ways to associate, organize, and speak. The fact remains that Act 344 does not have a severability clause. Accordingly, the Court's unconstitutionality findings as to specific parts of Act 344 require that the Act be stricken as a whole.

Now, for the first time, Plaintiff raises the existence of the severability clause contained in the Ethics Act of 1991 as purported support for the Court's ruling. Yet, even Plaintiff acknowledges that the Ethics Act's severability clause was never codified as law. *See* ECF 46 at 7-8. Plaintiff asserts this fact "makes no difference, as South Carolina gives effect to such clauses in enacted bills, regardless of codification." *Id.* at 8. In support of this proposition, Plaintiff cites two South Carolina cases: *Joytime Distribs. & Amusement Co. v. State*, 338 S.C. 634, 528 S.E.2d 647 (1999) and *Pinckney v. Peeler*, 434 S.C. 272, 862 S.E.2d 906 (2021). *Id.* Yet a careful review of those cases reveals that Plaintiff misconstrues the holdings in those cases.

In *Joytime*, the court considered an uncodified severability clause as evidence of legislative intent. 338 S.C. at 647, 538 S.E.2d at 654. The court did not "give effect to" or "apply" the clause in the straightforward sense Plaintiff suggests. *See* ECF No. 46 at 8. The court in *Pinckney* engaged in a substantially identical analysis, citing to the finding in *Joytime*: "the severability clause in [the] Act . . . is *strongly worded and evidences strong legislative intent* that the several parts of [the] Act . . . be treated independently." 434 S.C. at 288, 862 S.E.2d at 915 (quoting *Joytime* at 650, 528 S.E.2d at 655) (emphasis added). The severability clause analyzed in *Joytime* was as follows:

> If any section, subsection, paragraph, subparagraph, sentence, clause, phrase, or word of this act is for any reason held to be unconstitutional or invalid, such holding shall not affect the constitutionality or validity of the remaining portions of this act, the General Assembly hereby declaring that it would have passed this chapter, and each and every section, subsection, paragraph, subparagraph, sentence, clause, phrase, and word thereof, irrespective of the fact that any one or more other sections, subsections, paragraphs, subparagraphs, sentences, clauses, phrases, or words hereof may be declared to be unconstitutional, invalid, or otherwise ineffective.

338 S.C. at 648, 528 S.E.2d at 654.

5

The uncodified 1991 severability clause, which Plaintiff urges this Court to apply to Act 344, is clearly not worded as strongly as the clauses in *Joytime* and *Pinckney*, and is far weaker evidence of legislative intent. While a valid severability clause is evidence of legislative intent, it strains credulity to suggest that legislators in 2006 declined to include a severability clause in Act 344 on the basis of their reliance on the pre-existing, but uncodified, severability clause passed in the Ethics Act fifteen years prior.

Moreover, even assuming *arguendo* that the 1991 severability clause does apply to Act 344, the appropriate course of action would still be to sever Act 344—in its entirety—from the remainder of the Ethics Act. The 1991 severability clause provides that a finding of unconstitutionality "shall not affect other provisions or applications of the act *which can be given effect without the invalid provision or application*." *See* ECF No. 46 at 7-8 (quoting Ethics, Government Accountability, and Campaign Reform Act § 7, 1991 South Carolina Laws 1st Sp. Sess. Act 248 (H.B. 3743)) (emphasis added). As addressed in Defendants' Motion, the Court's Order renders Act 344 incapable of being administered in accordance with legislative intent because it obfuscates the statutory requirements and restrictions (if any) applicable to the activities of legislative special interest caucuses. Thus, in accordance with the language of the 1991 severability clause, Act 344 must be stricken, while the remainder of the Ethics Act, "which can be given effect without [Act 344]," should remain in place.

Finally, Plaintiff suggests that Defendants' Motion contradicts binding Supreme Court authority which limits judicial review to "the negative power to disregard an unconstitutional enactment." ECF No. 46 at 6. The Ethics Committee did not challenge that the Court appropriately exercised such power in this instance in finding that portions of the challenged statutes were unconstitutional. Yet, that does not end the Court's inquiry – the Court must also analyze the

legislative intent regarding severability. Following a finding of partial unconstitutionality, state law then contemplates an analysis of whether the deemed unconstitutional portion "is so connected with the other [remaining constitutional] parts as that they mutually depend upon each other as conditions and considerations for each other, so as to warrant the belief that the Legislature intended them as a whole…" *Fairway Ford, Inc. v. Timmons*, 281 S.C. 57, 59, 314 S.E.2d 322, 324 (1984); *see also S.C. Tax Comm'n v. United Oil Marketers, Inc.*, 306 S.C. 384, 389, 412 S.E.2d 402, 405 (1991). Because it is clear the legislature intended these limitations to be passed "as a whole" with the definition of legislative special interest caucuses, the whole Act must be voided.

Considering the above, Defendants respectfully submit these principles demonstrate the practical issues that face Defendants in light of the Court's Order and require that since the Court has now struck down portions of Act 344 as unconstitutional, the Court must now strike down *all* of Act 344 – an appropriate solution that will resolve the issues created by the Order.

**II.     The Court's Order creates real uncertainty as to the application and enforcement of the Ethics Act, and absent clarification, will only serve to exacerbate existing issues of interpretation.**

The House Ethics Committee is the entity responsible for enforcing the provisions of the Ethics Act within the House of Representatives. In their Motion, Defendants explained that in the wake of the Court's Order, they are uncertain as to the meaning of the contents of the Ethics Act, as well as their corresponding enforcement obligations. Despite inevitable issues of interpretation, the present lack of clarity as to what is and is not constitutional, and the very real potential for abuse, Plaintiff simply dismisses all of Defendants' uncertainties as hypothetical.

In fact, according to Plaintiff, the following concerns are "irrelevant," "illusory," "frivolous," and even "conspiratorial": (1) uncertainty as to whether legislative special interest caucuses are subject to the same limitations as legislative caucus committees with respect to

7

receiving contributions; (2) uncertainty as to whether legislative special interest caucuses are subject to the same limitations as political parties and legislative caucus committees with respect to giving contributions; (3) uncertainty as to whether *any* contribution and spending limits apply to legislative special interest caucuses; (4) the potential for abuse arising from the fact that there are no limits on the number of legislative special interest caucuses—even if these caucuses are comprised of the same members; (5) the risk, given that "special interest" is undefined, that special interest caucuses might be formed for nefarious purposes as a vehicle to influence elections; and (6) issues of unequal enforcement across the General Assembly arising from the fact that the Senate Ethics Committee, nor the Ethics Commission, are enjoined from enforcing the challenged statutes. Defendants have previously detailed precisely why each issue is genuine, not illusory, and creates real practical problems for the Ethics Committee. *See* ECF No. 43 at 6-14.

However, clear guidance and resolution as to these issues are critical to Defendants' ability to fulfill their duties in enforcing the Ethics Act without running afoul of the Court's Order. And, enforcing the Ethics Act is critical to protecting South Carolina's elections from fraud and abuse. Notwithstanding Plaintiff's efforts to downplay or outright dismiss the significance of Defendants' concerns, such concerns are almost certain to materialize, potentially to the detriment of the democratic process in this state.

Plaintiff acknowledges, and Defendants agree, that "[w]hen a legislature enacts an unconstitutional provision, 'the role of courts under our Constitution is not to fashion a new . . . law to take its place, but to treat the [provision] as a nullity and invite [the legislature] to try again.'" *See* ECF No. 46 at 15 (quoting *United States v. Davis*, 139 S. Ct. 2319, 2323 (2019)). Plaintiff seemingly interprets the issues raised in Defendants' motion as requesting that the Court make such declarations as "legislative special interest caucuses shall be limited in number," or

8

"legislative special interest caucuses shall be subject to the same limitations on giving contributions as political parties." Instead, the Ethics Committee noted the real possibility that legislative special interest caucuses could be unlimited in number (and, therefore, unlimited in fundraising ability), effectively circumventing the intent of the Ethics Act and the Court's Order.

Defendants do not raise these concerns in the hope that the Court will "tidy up" Act 344, *see* ECF No. 46 at 1, but respectfully submit, that as a result of the Court's Order, Act 344 is difficult to interpret and enforce due the language used in the Order. Specifically, the qualifier "to the extent they differ," is problematic as it raises legitimate questions as to what is and is not constitutional following the Order. At every turn, determining whether a particular activity is permissive under the Act will require cross-referencing various subsections of the Act, as well as the Order, and perhaps even the *Krawcheck* decisions. Thus, the Order results in a lack of clarity for all involved, creating more opportunities for possible errors in interpretation and enforcement.

Plaintiff conveniently chalks this up to "'uncertainties' that predated this Court's order and were instead caused by either (1) the Ethics Act itself or (2) the *Krawcheck* decisions (and the General Assembly's failure to address these issues)." *See* ECF No. 46 at 16. Defendants agree that "*Krawcheck* introduced fundamental uncertainty into the law," *id.*, but this only serves to highlight the manner in which a court's redlining of a cohesive statutory regime can result in uncertainty that persists even a decade later.

Now, South Carolina is on the eve of an election year and Defendants will be faced with the task of enforcing the Ethics Act during the 2024 election cycle. Many candidates, donors, and caucus members will undoubtedly have questions regarding the manner in which they may raise funds. Others will not ask—they will simply raise funds based on their interpretation of the Order.

9

As things stand, Defendants lack the necessary clarity to answer the questions that will be posed to them. The guidance which they are able to provide will be by way of reference to the Court's Order. Meanwhile, legislative special interest caucuses will be left largely unburdened by statutory restrictions or oversight. Such a state of affairs is an affront to the legislative intent for the Act in the first place: "to address corruption in the state legislature," by "plac[ing] limits on donations from lobbying firms and regulat[ing] how businesses and organizations employing lobbyists could entertain lawmakers." *See* ECF No. 40 at 3.

In light of the Order, the "state interests in preventing corruption, increasing transparency into the electoral process, and holding candidates, elected officials, and donors accountable," ECF No. 40 at 27, are left largely unprotected with respect to legislative special interest caucuses. Legislative special interest caucuses, including Plaintiff, are almost certainly already raising funds and accepting in-kind gifts. Given that "special interest" is undefined, the number of any special interest legislative caucus is not limited, and the fact that any two members of the House can form their own special interest caucus for any purpose, with a higher fundraising limit than either member could individually—Defendants have every reason to expect the formation of additional special interest caucuses in the immediate future.

Thus, the Order creates legitimate uncertainties regarding the state of the Ethics Act. These uncertainties are directly relevant to the import of the Court's holding. Far from illusory, they create real problems of interpretation, administration, and enforcement that will make South Carolina vulnerable to the influence of corruption in the very near future. Therefore, Defendants respectfully request that the Court amend the Order by striking all of Act 344 in accordance with the legislative intent undergirding the Ethics Act or otherwise clarify the Order.

[*signature page follows*]

Respectfully submitted,

s/ *Mark C. Moore*
Mark C. Moore (Fed. Bar No. 4956)
mmoore@maynardnexsen.com
Susan P. McWilliams (Fed. Bar No. 3351)
smcwilliams@maynardnexsen.com
Michael A. Parente (Fed. Bar No. 13358)
mparente@maynardnexsen.com
MAYNARD NEXSEN PC
1230 Main Street, Suite 700
Columbia, SC 29201
Telephone: 803.771.8900

*Counsel for Defendants Wallace H. Jordan, Jr., J. David Weeks, Beth E. Bernstein, Paula Rawl Calhoon, Micajah P. Caskey, IV, Neal A. Collins, John Richard C. King, Robby Robbins, J. Todd Rutherford, and Leonidas E. Stavrinakis, in their official capacities as members of The House of Representatives Legislative Ethics Committee*

July 28, 2023
Columbia, South Carolina

11